IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

BRAIDWOOD MANAGEMENT, INCORPORATED; JOHN
SCOTT KELLEY; KELLEY ORTHODONTICS; ASHLEY
MAXWELL; ZACH MAXWELL; JOEL STARNES,

Plaintiff-Appellees/Cross-Appellants,

v.

XAVIER BECERRA, SECRETARY, U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES, in his official
capacity as Secretary of Health and Human
Services; UNITED STATES OF AMERICA; JANET
YELLEN, SECRETARY, U.S. DEPARTMENT OF
TREASURY, in her official capacity as Secretary of
the Treasury; JULIE A. SU, ACTING SECRETARY,
U.S. DEPARTMENT OF LABOR, in her official
capacity as Secretary of Labor,

Defendants-Appellants/Cross-
Appellees.

No. 23-10326

---

**MOTION FOR A PARTIAL STAY OF FINAL JUDGMENT
PENDING APPEAL**

The government seeks a partial stay of the final judgment in this case

pending appeal and an administrative stay while the Court considers this

motion. We respectfully request a ruling on this motion by May 18, 2023.[1]

---

[1] A certificate of interested persons is not required, as defendants-
appellees are the United States and government officials sued in their
official capacity. Fifth Cir. R. 27.4, 28.2.1

Plaintiffs allege that they are harmed by a longstanding statutory requirement that health-insurance issuers and plans cover a variety of preventive services at no additional cost. After dismissing certain plaintiffs for lack of standing and rejecting several claims on the merits, the district court ruled for the remaining six plaintiffs on specified claims and entered declaratory and injunctive relief tailored to their asserted injuries. The government does not seek a stay of that portion of the court's remedial order.

The district court, however, went beyond granting relief to the plaintiffs and purported to vacate *all* action taken by the federal government for the last 13 years to implement the statutory requirement that health-insurance insurers and plans cover various preventive services (such as screening for breast and lung cancer, certain colonoscopies, and pre-exposure prophylaxis drugs) without additional cost to patients. And the court further enjoined all federal officers from taking any action to implement the statutory requirement. That extraordinary order has no legal justification and threatens the public health. The court failed to explain why a universal injunction and complete vacatur of more than a decade of federal actions was an appropriate exercise of its equitable discretion when it had already granted plaintiffs complete relief as to their

own alleged injuries.  That portion of the relief ordered by the district court will impose potentially grave public-health costs and create confusion in the health-care and health-insurance markets—with no tangible benefit at all to plaintiffs.  This Court should stay that unwarranted portion of the district court's order pending consideration of the merits on appeal.

This partial stay will not harm the six prevailing plaintiffs, who will retain the benefit of the court's separately entered injunction that is tailored to their asserted injuries.  By contrast, for more than a decade the now-vacated-and-enjoined preventive service coverage requirements have ensured coverage without cost sharing for life-saving preventive services for more than 150 million people.

In district court, plaintiffs made no effort to defend the nationwide injunction.  On the contrary, they "agree[d] with the government that district courts have been far too careless in issuing universal remedies such as nationwide injunctions," ROA.2200, and they made no argument that the nationwide injunction at issue here is an exception.  Plaintiffs' contention that this Court's precedents nonetheless "compel universal vacatur" of agency actions that a district judge believes to be unlawful, ROA.2197—universal relief that has all the same vices as a nationwide injunction—is meritless for the reasons discussed below.

3

## BACKGROUND

The Patient Protection and Affordable Care Act requires that group health plans and health-insurance issuers offering group or individual health coverage provide coverage for certain preventive services without cost sharing.  42 U.S.C. § 300gg-13(a).  Through that provision, covered Americans are assured access to an array of potentially life-saving medical services, such as basic cancer screenings for breast, lung, cervical, and colorectal cancers; vaccinations for diseases like polio and measles; care for pregnant women such as screening for gestational diabetes; and vision screening for children.  *See generally* KFF, *Preventive Services Covered by Private Health Plans under the Affordable Care Act*, https://perma.cc/9V72-VV9Q (Apr. 3, 2023).

As relevant here, covered preventive services must include "evidence-based items or services that have in effect a rating of 'A' or 'B' in the current recommendations of the United States Preventive Services Task Force."  42 U.S.C. § 300gg-13(a)(1).[2]  By structuring the preventive-services coverage

---

[2] Congress also provided that required preventive services would include immunizations recommended by the Centers for Disease Control and Prevention's Advisory Committee on Immunization Practices and guidelines issued by the Health Resources and Services Administration.  42 U.S.C. § 300gg-13(a).  The district court rejected plaintiffs' challenges to those requirements.  ROA.1793-1797.  Plaintiffs have filed a cross appeal.

provision to incorporate standards developed by a panel of experts,
Congress ensured that the types of preventive services that are covered
without cost sharing would evolve in light of new medical conditions, new
medical evidence, and other scientific developments.  Services currently
recommended by the Task Force include colonoscopies to screen for colon
cancer for adults aged 45-75, mammograms to screen for breast cancer for
women aged 50-74, gestational diabetes screening for pregnant women,
screening for depression in adolescents, prescribing statins to people at risk
of cardiovascular disease, prescribing preexposure prophylaxis drugs for
people at high risk of HIV infection, and applying eye ointment to
newborns to prevent blindness-causing infections.  U.S. Preventive Services
Task Force, *A & B Recommendations*, https://perma.cc/FC9Y-Y3DN (Apr.
2023).

Plaintiffs are six individuals and two business entities who challenged
Congress's directive that health-insurance insurers and plans generally
must cover this preventive care at no extra cost to the insured.  ROA.219-
220; ROA.891.  In the operative complaint, plaintiffs alleged that this
statutory scheme violated the Constitution's Appointments Clause,
ROA.231-236, the nondelegation doctrine, ROA.236-238, and the
Constitution's Vesting Clause, ROA.238-240, and also alleged that the

requirement for health insurance to cover preexposure prophylaxis drugs unlawfully violated their exercise of religion under the Religious Freedom Restoration Act (RFRA), ROA.243.[3]

The district court dismissed two plaintiffs for lack of standing.  ROA.-2115-2118.  Five of the six remaining plaintiffs "do not currently participate in the health care market," ROA.2113, and raised objections only to a subset of the covered preventive services, ROA.2112.  The district court rejected most of plaintiffs' claims on the merits.  ROA.1793-1797, ROA.1807-1815.  But the court concluded that Task Force members are federal officers whose appointment did not comport with the Appointments Clause, ROA.1797-1806, and further held that the Secretary of Health and Human Services could not remedy that defect by ratifying their recommendations, ROA.1797.  The court also ruled for certain plaintiffs on their RFRA claims. ROA.1815-1820.

After additional briefing, the district court issued a remedial order, ROA.2103-2130, and final judgment, ROA.2131-2132, that provided relief for the six prevailing plaintiffs.  As a remedy for plaintiffs' RFRA claims, the court enjoined all federal employees "from implementing or enforcing" the

---

[3] Plaintiffs also brought a statutory-construction claim, ROA.240-242, that was dismissed on the merits, ROA.478-483.

challenged coverage requirement "as against these plaintiffs." ROA.2120-2121, ROA.2132. On their Appointments Clause claims, the court held that the two business plaintiffs and, to the extent applicable, the individual plaintiffs "need not comply with the preventive care coverage recommendations of the" Task Force issued on or after March 23, 2010, the date of the passage of the Affordable Care Act and the point at which the court concluded that Task Force members began serving as improperly appointed officers. ROA.2130, ROA.2132. The government does not ask for a stay of either of those remedial orders.

But the district court also entered injunctive and vacatur orders that swept far beyond plaintiffs. The court vacated "[a]ll agency actions taken to implement or enforce the preventive care coverage requirements in response to an 'A' or 'B' recommendation by the" Task Force on or after March 23, 2010, and enjoined "Defendants and their officers, agents, servants, and employees * * * from implementing or enforcing 42 U.S.C. § 300gg-13(a)(1)'s compulsory coverage requirements in response to an 'A' or 'B' rating from the [Task Force] in the future." ROA.2131-2132; *see also*

ROA.2129.  Those two sweeping forms of relief are the subject of this stay

motion.[4]

## ARGUMENT

The issue before the Court is narrow.  The government is not asking

the Court at this juncture to consider the merits of plaintiffs' claims.  Nor is

the government asking the Court to stay the part of the final judgment that

provides relief directed to the prevailing plaintiffs.  The only issue at this

stage is whether to stay the sweeping relief that enjoins the defendant

agencies from enforcing the challenged coverage requirements nationwide

and vacates universally all agency actions that implemented or enforced

those coverage requirements since March 2010.  *See Trump v.*

*International Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017)

(noting that a court may "tailor a stay so that it operates with respect to

only 'some portion of the proceeding'"); *Louisiana v. Becerra*, 20 F.4th

---

[4] Pursuant to Federal Rule of Appellate Procedure 8(a)(1), the
government moved on April 12 in district court for a partial stay of the final
judgment pending appeal.  ROA.2150-2167.  The district court has not yet
acted on that motion, but stated that "Defendants are within their right" to
seek a stay "from the Fifth Circuit before this Court can resolve the motion
to stay."  ROA.2219.  We have attempted to contact plaintiffs' counsel to
confirm that plaintiffs intend to file an opposition, but we have not received
a response at the time of this filing.

260, 263-64 (5th Cir. 2021) (staying an injunction to the extent that it granted relief beyond the plaintiffs).

In determining whether to grant a stay pending appeal, the Court must consider (1) the appellant's likelihood of success on appeal, (2) whether the appellant will suffer irreparable harm absent a stay, (3) whether a stay will substantially injure third parties, and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). The third and fourth factors merge when the government is a party. *Id.* at 435. As explained below, the stay factors overwhelmingly favor the government.

## I. The Government Is Likely To Succeed On Appeal On The Argument That The District Court Erred In Issuing Nationwide Relief

The government is likely to succeed on appeal regarding the vast scope of the district court's ordered relief. The district court erred in granting universal relief—vacatur and an injunction—that extended far beyond what was necessary to remedy plaintiffs' alleged injuries.

**A.** The district court did not conclude that these universal remedies were appropriate as an exercise of equitable discretion. Instead, the court accepted plaintiffs' argument that under this Court's precedent, the district court was "not only permitted but *required* to issue a universal remed[y] under" the Administrative Procedure Act (APA), 5 U.S.C. § 706, by

9

"vacating unlawful agency actions across the board."  ROA.2198 (emphasis added); *see also* ROA.2055 (plaintiffs' argument that "the Court is obligated to vacate * * * these agency actions under 5 U.S.C. § 706").  That argument misunderstands the nature of this suit and is in any event mistaken on its own terms.

As an initial matter, plaintiffs do not have an APA claim in this case. Plaintiffs' operative complaint does not even invoke the APA, as they affirmatively abandoned their single APA claim when they amended the complaint.  *Compare* ROA.57-58 (original complaint) *with* ROA.231-244 (first amended complaint).  Instead, plaintiffs challenged the constitutionality of a federal statute, and they have conceded that a court cannot vacate a statute—*i.e.*, cannot "delete a previously enacted statute from the law books."  ROA.2059.  Under plaintiffs' own theory, then, the only appropriate relief would be declaratory or injunctive relief preventing the government from enforcing the *statute* against plaintiffs.  And even if plaintiffs could also be understood as challenging regulations and other agency actions implementing the statute, that ancillary relief should also have been limited to an injunction barring enforcement of those measures against plaintiffs.

Permitting plaintiffs to obtain an asserted APA remedy without raising an APA claim created cascading problems, allowing them to evade the APA's procedural strictures to challenge identified final agency action, *e.g.*, 5 U.S.C. § 704, and the statute of limitations for civil actions against the government, 28 U.S.C. § 2401(a). And presumably because the complaint did not challenge agency action, the district court's final judgment failed even to identify with specificity which agency actions were vacated or enjoined. Instead, the court announced that it was vacating "any and all" agency actions taken to implement or enforce the statute's preventive services coverage requirement in response to an "A" or "B" Task Force recommendation since March 23, 2010, without specifically identifying those agency actions. ROA.2131-2132.

Even if the district court were correct that it would be appropriate to vacate a specific agency action in an APA case seeking that relief, there is no basis whatsoever for the conclusion that the district court is authorized—let alone required—to issue a vague and sweeping order invalidating unidentified agency actions in a case seeking different relief. That error is reason alone to stay the remedy pending appeal, particularly because that remedy is inconsistent with the well-established rule that courts should avoid retrospective relief that would lead to mass invalidation of past

administrative actions based solely on a defect in appointment. *See Buckley v. Valeo*, 424 U.S. 1, 142 (1976) (declining to grant relief that would "affect the validity" of "past acts" of improperly appointed officers).

Moreover, even in traditional APA cases, plaintiffs' assertion that vacatur is obligatory is mistaken. Plaintiffs invoked this Court's decisions in *Data Marketing Partnership, LP v. U.S. Department of Labor*, 45 F.4th 846 (5th Cir. 2022), and *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022), but those cases stand only for the proposition that vacatur is a *permitted* remedy in an APA case. *See Data Marketing*, 45 F.4th at 859 (stating only that vacatur is the "default rule" and suggesting that the district court had "discretion" not to "follow[] the default rule"); *Franciscan Alliance*, 47 F.4th at 374-375 & n.29 (stating that "[v]acatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation," without suggesting that vacatur is mandatory, and citing a case that acknowledges circumstances where courts "do not vacate the action"). Indeed, this Court has previously declined to enter vacatur in favor of remand. *Central and South West Services, Inc. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000).[5] And, as plaintiffs' counsel has recognized, *see* ROA.2200-

---

[5] The government disputes that the APA permits universal vacatur but recognizes that this Court's precedent allows it.

2201, "[t]he authority to 'set aside' an agency's action also does not resolve whether courts should extend relief beyond the named litigants or issue 'nationwide injunctions' that extend beyond the court's territorial boundaries." Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 1014 (2018). *See also, e.g.,* Nicholas Bagley, *Remedial Restraint in Administrative Law*, 117 Colum. L. Rev. 253, 309 (2017) ("There's nothing to the argument that the APA, by its terms, strips courts of the authority to leave procedurally defective agency rules intact").

Assuming that vacatur is available under the APA, it must be applied pursuant to traditional equitable principles. The APA makes explicit that its authorization of judicial review does not affect "the power or duty of the court to * * * deny relief on any * * * equitable ground." 5 U.S.C. § 702(1). Congress enacted the APA against a background rule that statutory remedies should be construed in accordance with "traditions of equity practice." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944).[6] There is no sound reason to conclude that Congress "meant to upset the bedrock practice of case-by-case judgments with respect to the parties in each case"

---

[6] Indeed, the relief available in an action under the APA is governed not by 5 U.S.C. § 706, but by 5 U.S.C. § 703, which provides for traditional forms of equitable actions and relief, such as "declaratory judgments or writs of prohibitory or mandatory injunction."

by adopting the "unremarkable" "set aside" language in 5 U.S.C. § 706. *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring). Plaintiffs' position would transform every district judge into a miniature Supreme Court. The language in § 706 authorizing a court to set aside agency action is "a wafer-thin reed on which to rest such sweeping power." *Alabama Association of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021).[7]

**B.** When properly understood as (at most) a discretionary equitable remedy, universal vacatur under the APA was plainly inappropriate here.

In portions of the final judgment not at issue in this motion, the district court provided complete relief to the prevailing plaintiffs, ensuring that they do not need to comply with any coverage requirements for services recommended by the Task Force, and enjoining the federal government from taking any actions that would contravene the district court's RFRA holding. ROA.2132. The additional orders vacating more

---

[7] Some judges have mistaken the disproportionate impact of D.C. Circuit precedent as authority for universal vacatur. The decisions of the D.C. Circuit have an outsized precedential impact because the general venue statute, 28 U.S.C. § 1391(b), allows most APA actions to be filed within the D.C. Circuit. By contrast, the D.C. Circuit itself has explained that "agency defeats in other circuits cannot produce as severe an effect" because "venue restrictions would exclude many would-be plaintiffs from access to the invalidating court." *National Mining Association v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409-10 (D.C. Cir. 1998).

than a decade's worth of agency actions and enjoining the federal

government from taking any future action to enforce preventive service

coverage requirements thus contravene the bedrock principle that equitable

relief may not go beyond what is necessary "to redress the injuries

sustained by [the] particular plaintiff[s] in [this] particular lawsuit."

*Department of Homeland Security v. New York*, 140 S. Ct. 599, 600 (2020)

(mem.) (Gorsuch, J., concurring).  Indeed, plaintiffs' district court

opposition brief did not even claim that they would be harmed by a stay

pending appeal of either the universal vacatur or the nationwide injunction.

Faced with similar concerns of overbroad relief, this Court has not

hesitated to circumscribe a district court's judgment that inappropriately

extended relief beyond a tailored cure of plaintiffs' alleged injuries.  *See,*

*e.g.*, *OCA–Greater Houston v. Texas*, 867 F.3d 604, 616 (5th Cir. 2017)

(vacating injunction that "broadly enjoined Texas from enforcing any

[contested] provision of its Election Code," explaining that relief "must be

'narrowly tailor[ed] * * * to remedy the specific action which gives rise to

the order,'" and may not "exceed[] the scope of the [plaintiffs'] harm"); *E.T.*

*v. Paxon*, 19 F.4th 760, 769 (5th Cir. 2021) (granting a stay pending appeal

because the district court's "blanket injunction prohibiting the enforcement

of" a statute was "overbroad" and "could have been tailored to address only

the seven plaintiffs in this action"); *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 272 (5th Cir. 2018) (vacating relief that "goes well beyond what is necessary to achieve constitutional compliance" and "is far from narrowly tailored").

**C.** The district court's universal remedy in this case raises concerns catalogued by various Justices and judges, raised across administrations, and conceded by plaintiffs in this case.

Plaintiffs conceded that "[t]he issue of universal remedies is one of the most contentious and unresolved issues in modern litigation." ROA.1836. And plaintiffs have made no attempt to defend the order that enjoins the defendant agencies from enforcing the challenged coverage requirements nationwide. On the contrary, plaintiffs forthrightly "agree[d] with the government that district courts have been far too careless in issuing universal remedies such as nationwide injunctions," ROA.2200, and they made no argument that the nationwide injunction in this case was an exception. The same problems apply equally to universal vacatur.

Our nation has one Supreme Court, whose decisions establish nationwide precedent. "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v.*

16

*Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 J. Moore et al., *Moore's Federal Practice* § 134.02[1][d], at 134-26 (3d ed. 2011)).  When a district court orders "the government to take (or not take) some action with respect to those who are strangers to the suit, it is hard to see how the court could still be acting in the judicial role of resolving cases and controversies." *New York*, 140 S. Ct. at 600 (Gorsuch, J., concurring).  These constitutional limitations are reinforced by traditional principles of equity, which dictate that relief should, at a minimum, be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *see also Arizona*, 40 F.4th at 397 (Sutton, C.J., concurring).

Nationwide relief takes a "toll on the federal court system." *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring).  It "undermines the judicial system's goals of allowing the 'airing of competing views' and permitting multiple judges and circuits to weigh in on significant issues." *Florida v. HHS*, 19 F.4th 1271, 1283 (11th Cir. 2021) (quoting *New York*, 140 S. Ct. at 600 (Gorsuch, J., concurring)).  Such relief thus runs counter to the Supreme Court's decision in *United States v. Mendoza*, 464 U.S. 154 (1984), which held that the federal government is not subject to

17

nonmutual offensive collateral estoppel, in part because "[a]llowing only one final adjudication would deprive" the Court "of the benefit it receives from permitting several courts of appeals to explore a difficult question before th[e] Court grants certiorari," *id.* at 160.[8]

Nationwide relief also has the effect of "encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch." *Hawaii*, 138 S. Ct. at 2425 (Thomas, J., concurring). It impedes the government's ability to implement its policies because the government must "prevail in all 94 district courts and all 12 regional courts of appeals" while one plaintiff can derail a nationwide policy with a single victory. *Arizona*, 40 F.4th at 396 (Sutton, C.J., concurring). And it may erode confidence in the Judiciary by creating an impression that it is setting national policy. "All in all, nationwide injunctions have not been good for the rule of law," *id.* at 398, and there is no justification for them here.

## II.    The Balance of Equities and Public Interest Overwhelmingly Favor a Partial Stay Pending Appeal

---

[8] *See also Gun Owners of America, Inc. v. Garland*, 992 F.3d 446, 474 (6th Cir. 2021) (observing that cutting off the development of the law in different jurisdictions eliminates the "value in having legal issues 'percolate' in the lower courts"), *vacated on other grounds,* 19 F.4th 890 (6th Cir. 2021) (en banc); *Holland v. National Mining Association*, 309 F.3d 808, 815 (D.C. Cir. 2002) ("Allowing one circuit's statutory interpretation to foreclose * * * review of the question in another circuit would squelch the circuit disagreements that can lead to Supreme Court review.").

The balance of equities and public interest overwhelmingly favor the requested partial stay.

On the one hand, the six prevailing plaintiffs did not even claim below that the requested partial stay would cause them any harm. Nor could they, since the prevailing plaintiffs will retain on appeal the benefit of the injunction that was specifically directed to their asserted injuries.

By contrast, the public and the United States will face significant harm if the broad and universal relief ordered is not stayed during the pendency of this appeal. "[A]ny time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland* v. *King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). But the harm here is much greater and more far-reaching. The coverage requirements eliminated by the district court's judgment encompass a wide range of preventive measures that are of utmost importance for patient health. *See* ROA.2177-2178, ROA.2180 (declaration of Lisa M. Gomez, Assistant Secretary in the Department of Labor); ROA.2169, ROA.2171 (declaration of Jeff Wu, Deputy Director for Policy at the Centers for Medicare & Medicaid Services). We highlight just a few examples of the numerous coverage requirements encompassed by

the district court's judgment—and the effects it could have for disease detection and treatment.

Some coverage requirements have been wholly invalidated by the district court's decision because the Task Force had no corresponding "A" or "B" rating in place prior to March 23, 2010. For example, the Task Force has recommended annual lung cancer screenings for adults between 50-80 years' old with a significant smoking history, prescription of statins for adults between 40-75 years' old who are at risk of cardiovascular disease, and prescription of preexposure prophylaxis drugs for people at high risk of HIV infection. *See generally* U.S. Preventive Services Task Force, *A & B Recommendations*, https://perma.cc/FC9Y-Y3DN (Apr. 2023). These requirements further significant public health interests. Early detection of lung cancer increases the five-year survival rate from 7% to 61%, and it is estimated that these lung cancer screenings could save 10,000 to 20,000 lives each year. ROA.2174. Statins—medications that reduce cholesterol—reduce the probability of heart attacks and strokes, and increasing costs for statins significantly reduces the likelihood that patients will adhere to a statin regimen. ROA.2175. Preexposure prophylaxis medications can reduce the transmission of HIV by as much as 99%, ROA.1473, and if the drugs had been used more widely between 2015 and 2020, they "could have

prevented an additional 17,000" HIV infections.  ROA.1474; *see also*
ROA.2173.  Through 42 U.S.C. § 300gg-13(a)(1), Congress took steps to
ensure that the covered public will benefit from these critical medications
and services without any cost sharing.  The district court's order prohibits
the United States from carrying out that directive, at significant cost to the
public health and with no identifiable benefit to plaintiffs (who are already
exempt from complying with these coverage requirements by virtue of the
plaintiff-specific injunction).

Collectively, the vacated and enjoined coverage requirements have
ensured that more than 150 million Americans can benefit from the above-
listed and other preventive services without cost sharing.  ROA.2170.
Absent a stay, those people will lose the federally-backed protection that
their health plans must include that coverage, or the ability to have those
services covered without cost sharing.  Available data suggests that more
than a third of group health plans (which, in 2020, covered approximately
14 million participants) may begin new plan years before January 1, 2024.
That includes more than 20% of group health plans (which, in 2020,
covered approximately 6.3 million participants) that may start a new plan
year prior to July 1, 2023.  ROA.2179.  Many additional plans will begin
new plan years in January 2024.  If the nationwide vacatur and injunction

ordered by the district court remain in effect pending appeal, many of these plans could either eliminate coverage of the relevant preventive services or impose cost sharing for those services. *See* ROA.2178-80; ROA.2170-71.

Even if many employers or health-insurance issuers do not change their plans or policies in the immediate future in response to the district court's judgment, some employers and insurers may do so during the course of this appeal. Removing the coverage requirements that have long been in effect would lead to confusion and uncertainty about what services are available without cost sharing, causing some patients to forgo available services and some healthcare providers to not recommend services to eligible patients because of cost concerns. *See* ROA.2170, 2175-2176, ROA.2181. This confusion would be exacerbated due to the lack of time for providers and consumers to determine and understand the effects of the district court's ruling.

In district court, plaintiffs sought to minimize the significance of these statutory coverage protections, asserting that preventive services do not reduce disease and that copayments and other cost barriers do not reduce access to preventive services. *See* ROA.2202-2204. But Congress made the opposite determination, which was Congress's province to make. This Court has recognized in analogous contexts that when the United

States is a party, courts of equity should give "extraordinary weight" to the "public interests in a suit involving more than a mere private dispute." *United States v. Marine Shale Processors*, 81 F.3d 1329, 1359 (5th Cir. 1996). And consistent with those principles, the Court affords "deference" to "the political branches in identifying and protecting the public interest" and to a sovereign's "determination that the activity at issue constitutes a risk of danger to the public." *Id.* By arguing that the coverage required by 42 U.S.C. § 300gg-13(a)(1) is counter to the public interest, plaintiffs would improperly substitute their views for those of the People's representatives.

The district court did not deny the importance of preventive-services coverage. On the contrary, the court directed the government to address whether—despite the court's order—health-insurance issuers and plans would voluntarily continue to provide such coverage without cost sharing, citing a news report of a letter from trade associations to members of Congress. ROA.2218-2219. That letter, however, stated only that it was the trade groups' "sense" that the overwhelming majority of their members did not "anticipate" making changes pending appeal, ROA.2227-2228, implying that at least some members did. The trade groups' expectations do not bind their members future actions and, moreover, the trade groups do not represent all issuers or plans subject to the coverage requirement.

23

ROA.2223.  Only a stay of the district court's universal vacatur and nationwide injunction will ensure that 150 million Americans continue to receive the preventive-services coverage that Congress deemed essential.

## CONCLUSION

The Court should partially stay the district court's judgment, specifically the first paragraph of item 3 in the judgment, ROA.2131-2132, until this Court issues its mandate in this appeal.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*
LEIGHA SIMONTON
  *United States Attorney*
MICHAEL S. RAAB
ALISA B. KLEIN
  */s/ Daniel Aguilar*
DANIEL AGUILAR
(202) 514-5432
  Attorneys, Appellate Staff
  Civil Division
  U.S. Department of Justice
  950 Pennsylvania Avenue, NW
  Washington, DC  20530

APRIL 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2023, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system.  Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Daniel Aguilar*
Daniel Aguilar

**CERTIFICATION OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I hereby certify this motion complies with the requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in 14-point Georgia, a proportionally spaced font, and that it complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A), because it contains 4,870 words, according to the count of Microsoft Word.

*/s/ Daniel Aguilar*
Daniel Aguilar