No. 23-10326

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

BRAIDWOOD MANAGEMENT, INC.; JOHN SCOTT KELLEY; KELLEY ORTHODONTICS; ASHLEY MAXWELL; ZACH MAXWELL; JOEL STARNES,

*Plaintiffs-Appellees/Cross-Appellants*,

v.

XAVIER BECERRA, Secretary, U.S. Department of Health and Human Services, in his official capacity as Secretary of Health and Human Services; UNITED STATES OF AMERICA; JANET YELLEN, Secretary, U.S. Department of Treasury, in her official capacity as Secretary of the Treasury; JULIE A. SU, Acting Secretary, U.S. Department of Labor, in her official capacity as Secretary of Labor,

*Defendants-Appellants/Cross-Appellees.*

On Appeal from the United States District Court, Northern District of Texas
Case No. 4:20-cv-00283-O

## BRIEF OF *AMICUS CURIAE* SERVICE EMPLOYEES INTERNATIONAL UNION IN SUPPORT OF DEFENDANTS-APPELLANTS' MOTION FOR A PARTIAL STAY OF FINAL JUDGMENT PENDING APPEAL

Barbara J. Chisholm*
Connie K. Chan
Corinne F. Johnson*
Altshuler Berzon LLP
177 Post St., Ste. 300
San Francisco, CA 94108
(415) 421-7151
cchan@altshulerberzon.com

*Counsel for Proposed Amicus Curiae Service Employees International Union*

*Application for admission to be filed

## **SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Service Employees International Union

Barbara J. Chisholm
Connie K. Chan
Corinne F. Johnson
ALTSHULER BERZON LLP

Dated: April 28, 2023

_s/ Connie K. Chan_
Connie K. Chan
*Counsel for Amicus Curiae SEIU*

i

## TABLE OF CONTENTS

SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS........................i

TABLE OF CONTENTS.......................................................... ii

TABLE OF AUTHORITIES ................................................... iii

STATEMENT OF COMPLIANCE WITH FEDERAL RULE OF
APPELLATE PROCEDURE 29 ..............................................vi

INTERESTS OF AMICUS CURIAE....................................1

SUMMARY OF ARGUMENT ..............................................1

ARGUMENT ...................................................................2

I. The District Court's Decision Contravenes Controlling Case Law
   By Ignoring Governing Legal Standards ...............................2

II. The Public Interest, Equities, And Concerns About Disruption All
    Weigh Against The District Court's Order And Support A Stay........3

III. The District Court's Decision Raises Due Process Concerns ..........10

CONCLUSION................................................................12

CERTIFICATE OF COMPLIANCE.........................................13

CERTIFICATE OF SERVICE ..............................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Freeman v. Lester Coggins Trucking, Inc.*,
  771 F.2d 860 (5th Cir. 1985) ...............................................................11

*Louisiana v. Becerra*,
  20 F.4th 260 (5th Cir. 2021) ...............................................................10

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010)...............................................................................3

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
  734 F.3d 406 (5th Cir. 2013) .................................................................2

*Texas v. Dep't of Labor*,
  929 F.3d 205 (5th Cir. 2019) ...............................................................11

*Texas v. United States*,
  50 F.4th 498 (5th Cir. 2022) ..................................................................2

*Valentine v. Collier*,
  993 F.3d 270 (5th Cir. 2021) ..................................................................2

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)..............................................................................2, 3

**Federal Statutes**

29 U.S.C. §1001...................................................................................10

29 U.S.C. §1132(a)(1)(B) ....................................................................10

29 U.S.C. §1132(a)(3) ..........................................................................10

29 U.S.C. §1185d..................................................................................10

42 U.S.C. §300gg-13(a) .......................................................................10

42 U.S.C. §300gg-13(b) ........................................................................11

**Regulations**

45 C.F.R. §147.130(b) ........................................................................11

**Other Authorities**

American Cancer Society, *Breast Cancer Facts & Figures 2022-2024*,
    https://www.cancer.org/content/dam/cancer-org/research/cancer-
    facts-and-statistics/breast-cancer-facts-and-figures/2022-2024-
    breast-cancer-fact-figures-acs.pdf ...................................................4, 5

American Cancer Society, *Cancer Prevention & Early Detection
    Facts & Figures 2021-2022*,
    https://www.cancer.org/content/dam/cancer-org/research/cancer-
    facts-and-statistics/cancer-prevention-and-early-detection-facts-
    and-figures/2021-cancer-prevention-and-early-detection.pdf............................4

American Cancer Society, *Colorectal Cancer Facts & Figures 2020-
    2022 Colorectal Cancer Facts & Figures 2020-2022*,
    https://www.cancer.org/content/dam/cancer-org/research/cancer-
    facts-and-statistics/colorectal-cancer-facts-and-figures/colorectal-
    cancer-facts-and-figures-2020-2022.pdf ..............................................4

American Lung Association, *Lung Cancer Key Findings* (2022),
    https://www.lung.org/research/state-of-lung-cancer/key-findings......................4

Christine Leopold et al., *The Impact of the Affordable Care Act on
    Cancer Survivorship*, 23 Cancer J. 181, 184 (2017),
    https://journals.lww.com/journalppo/Fulltext/2017/05000/The_Imp
    act_of_the_Affordable_Care_ Act_......................................................5

Jay Asser, HealthLeaders, *Patients Likely to Skip Preventive Care if
    ACA Rulings Holds* (Mar. 17, 2023),
    https://www.healthleadersmedia.com/payer/patients-likely-skip-
    preventive-care-if-aca-ruling-holds ..................................................5

Kaiser Family Foundation, *Understanding the Impact of Medicaid Premiums & Cost-Sharing: Updated Evidence from the Literature and Section 1115 Waivers* (Sept. 9, 2021), https://www.kff.org/medicaid/issue-brief/understanding-the-impact-of-medicaid-premiums-cost-sharing-updated-evidence-from-the-literature-and-section-1115-waivers/ ...................................................5

Kara Gavin, *What happens when preventive care becomes free to patients?* Univ. of Michigan Health Lab (June 28, 2021), https://labblog.uofmhealth.org/industry-dx/what-happens-when-preventive-care-becomes-free-to-patients ...........................................5

Task Force A & B Recommendations, https://www.uspreventiveservicestaskforce.org/uspstf/recommendation-topics/uspstf-a-and-b-recommendations (visited Apr. 25, 2023) ...............................................................................4

*Report to Congress, Annual Report on Self-Insured Group Health Plans*, Secretary of Labor (March 2023), https://www.dol.gov/sites/dolgov/files/EBSA/researchers/statistics/retirement-bulletins/annual-report-on-self-insured-group-health-plans-2023.pdf ........................................................4

## STATEMENT OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 29

No counsel for a party authored any part of this brief.  No party, party's counsel or any person other than the amicus curiae, its members, or its counsel contributed money that was intended to finance the preparation or submission of this brief.

**INTERESTS OF AMICUS CURIAE**

Service Employees International Union ("SEIU") is a labor union of approximately two million working men and women in a range of industries across the United States, many of whom receive health insurance through federally protected health insurance plans that will be affected by the district court's decision. SEIU is also the largest union of healthcare employees in North America. One of SEIU's affiliated local unions is the Committee of Interns and Residents ("CIR"), with more than 24,000 resident physician and fellow members.

**SUMMARY OF ARGUMENT**

SEIU respectfully urges the Court to grant Defendants-Appellants' ("Defendants") motion for a partial stay of the district court's nationwide judgment. That judgment threatens the healthcare of the more than 130 million employees and families with private employment-based insurance plans by enjoining Defendants from taking any action to enforce or implement the requirement that preventive care services recommended by the Preventive Services Task Force ("Task Force") be provided at no cost.

As borne out by the experiences of SEIU's physician members, the mandate to make preventive care available at no cost has saved lives, and the district court's decision, by reducing access to that care, will negatively affect millions of Americans' health. Yet the district court, in flagrant disregard of the governing

1

legal standards, failed even to address or acknowledge the significant negative effects its judgment will have on millions of non-parties. The district court's judgment also interferes with the statutory and due process rights of non-party employees and their families.

## ARGUMENT

## I. The District Court's Decision Contravenes Controlling Case Law By Ignoring Governing Legal Standards.

In deciding whether to stay a judgment pending appeal, this Court considers, *inter alia*, whether a stay is needed to protect the public interest. *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013). Similarly, the district court was required by controlling precedent to consider whether an injunction "[would] not disserve the public interest," *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021), and whether the "balance of equities" favored Plaintiffs' requested relief, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008). The district court was also required, again by controlling precedent, to consider the "disruptive consequences of … vacatur" before ordering that as a remedy. *Texas v. United States*, 50 F.4th 498, 529 (5th Cir. 2022).

Yet the district court did not even acknowledge, let alone address, either the injunction or vacatur standards in its remedy order, and its decision must be stayed for that reason alone. The district court provided no findings, conclusions, or

2

discussion whatsoever regarding the balance of the equities or the public interest effects of a nationwide injunction. *See* Second Memorandum Order & Order on Remedies, Dist. Ct. Dkt. No. 113, at 18-27; *cf. Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 158 (2010) (reversing injunction of agency action because district court did not apply the "traditional four-factor test"); *Winter*, 555 U.S. at 26–27 ("assessing the balance of equities and the public interest … in only a cursory fashion" is an abuse of "barely exercised" discretion). Nor did the district court acknowledge or address the highly disruptive consequences vacatur will have on millions of insured employees—disruption that clearly makes vacatur an inappropriate remedy.

## II. The Public Interest, Equities, And Concerns About Disruption All Weigh Against The District Court's Order And Support A Stay.

The district court ignored copious, unrefuted evidence that a nationwide injunction will harm millions of people, evidence that was directly relevant to the equitable factors the court should have considered but did not.[1] The experiences of SEIU's physician members provide additional support for the evidence submitted to the district court.

//

---

[1] *See Amicus Curiae* Brief of American Cancer Society, et al., Dist. Ct. Dkt. No. 107; *Amicus Curiae* Brief of American Medical Association, et al., Dist. Ct. Dkt. No. 108; *Amicus Curiae* Brief of Amici States, Dist. Ct. Dkt. No. 61, at 2-6; *Amicus Curiae* Brief of 20 Health Policy Experts, et al., Dist. Ct. Dkt. No. 68, at 7-9.

The vast majority of the private health insurance plans affected by the district court's judgment are employee plans. More than 130 million employees and their beneficiaries receive health insurance through private employers.[2] Prior to the district court's judgment, most of those employees' health plans were statutorily required to provide dozens of preventive care services at no cost, including colon, lung, breast, and cervical cancer screenings; osteoporosis, tuberculosis, and diabetes screenings; use of statins to lower cholesterol; and depression, suicide risk, fall prevention, intimate partner violence, and alcohol and drug use screenings.[3] Now, however, there is a significant risk that insurance providers will cease covering these key preventive care services at no cost.

Removing no-cost coverage for these services will endanger lives. The services are critically important for detecting and treating dangerous diseases,[4] yet

---

[2] *Report to Congress, Annual Report on Self-Insured Group Health Plans*, Secretary of Labor (March 2023) at 5, https://www.dol.gov/sites/dolgov/files/EBSA/researchers/statistics/retirement-bulletins/annual-report-on-self-insured-group-health-plans-2023.pdf

[3] Task Force A & B Recommendations,https://www.uspreventiveservicestaskforce.org/uspstf/recommendation-topics/uspstf-a-and-b-recommendations (visited Apr. 25, 2023).

[4] *See, e.g.*, American Cancer Society ("ACS"), *Colorectal Cancer Facts & Figures 2020-2022* at 19, https://www.cancer.org/content/dam/cancer-org/research/cancer-facts-and-statistics/colorectal-cancer-facts-and-figures/colorectal-cancer-facts-and-figures-2020-2022.pdf (colon cancer screening reduces cancer incidence by 40% and mortality by 60%); American Lung Association, *Lung Cancer Key Findings* (2022), https://www.lung.org/research/state-of-lung-cancer/key-findings (61% five-year survival rate when lung cancer diagnosed at early stage versus 7% at late stage); ACS, *Cancer Prevention & Early Detection Facts & Figures 2021-2022* at 33-34, https://www.cancer.org/content/dam/cancer-org/research/cancer-facts-and-statistics/cancer-prevention-and-early-detection-facts-and-figures/2021-cancer-prevention-and-early-detection.pdf (screening detects and prevents cervical cancer); ACS, *Breast Cancer Facts & Figures 2022-2024* at 5, https://www.cancer.org/content/dam/cancer-org/research/cancer-facts-and-statistics/breast-

are often prohibitively expensive such that, without insurance coverage, many employees cannot afford and are likely to forgo the services.[5]  That is especially the case for low-income workers and their families.[6]

SEIU physician members who work every day on our healthcare system's front lines confirm the public health dangers of removing coverage for these services.[7]  Dr. Yariana Rodríguez-Ortiz is a CIR member and nephrology fellow at Houston Methodist Hospital who describes the fundamental principle that access to preventive care saves lives: "It doesn't matter what specialty you as a physician practice.  We all learn that preventive medicine is extremely important to improve early detection of treatable diseases and to perform preventive measures to reduce

---

cancer-facts-and-figures/2022-2024-breast-cancer-fact-figures-acs.pdf (screening detects and improves treatment options for breast cancer).

[5] *See* Jay Asser, HealthLeaders, *Patients Likely to Skip Preventive Care if ACA Rulings Holds* (Mar. 17, 2023), https://www.healthleadersmedia.com/payer/patients-likely-skip-preventive-care-if-aca-ruling-holds (40% of survey respondents would not pay for most preventive services); Christine Leopold et al., *The Impact of the Affordable Care Act on Cancer Survivorship*, 23 Cancer J. 181, 184 (2017), https://journals.lww.com/journalppo /Fulltext/2017/05000/The_Impact_of_the_Affordable_Care_ Act_on_Cancer.6.aspx (reducing cost-sharing increases use of preventive services).

[6] *See* Kara Gavin, *What happens when preventive care becomes free to patients?*, Univ. of Michigan Health Lab (June 28, 2021), https://labblog.uofmhealth.org/industry-dx/what-happens-when-preventive-care-becomes-free-to-patients (low-socioeconomic status groups benefit the most from eliminating cost sharing); Kaiser Family Foundation, *Understanding the Impact of Medicaid Premiums & Cost-Sharing: Updated Evidence from the Literature and Section 1115 Waivers* (Sept. 9, 2021), https://www.kff.org/medicaid/issue-brief/understanding-the-impact-of-medicaid-premiums-cost-sharing-updated-evidence-from-the-literature-and-section-1115-waivers/ (cost sharing is associated with reduced care and worse outcomes in low-income populations).

[7] Interviews with the physicians quoted in this brief were conducted by counsel and are on file with SEIU.

disease incidence." This is key not only for patients but also for healthcare providers, who "work daily with bodily fluids." As Dr. Rodríguez-Ortiz explained, "if we are not screening for diseases to reduce incidence, and preventing them when possible, then we as providers are exposed to greater risk."

Dr. Joshua Neff is another physician with significant experience regarding the importance of the Task Force's recommendations. Dr. Neff is a CIR member and UCSF-trained[8] psychiatrist currently practicing across three healthcare systems: San Francisco's safety-net healthcare system, the Veterans Administration hospital system, and an academic medical center where he sees privately insured patients. According to Dr. Neff, routine screening by other healthcare providers for depression in teens and adults and for perinatal depression[9] is often what connects his patients to mental healthcare in the first place, in part due to the stigma surrounding mental health diagnosis and treatment. With his own patients, Dr. Neff routinely screens for depression and suicide risk, and he notes that failure to conduct that screening can have deadly consequences. In conducting such screening with a teen patient recently, Dr. Neff learned that his patient had secretly hidden scissors in their room and was contemplating using them to try to attempt suicide. Dr. Neff described it as "very plausible that this

---

[8] University of California San Francisco.
[9] All of these screenings are included on the Task Force's list of recommended preventive services.

person, who had multiple risk factors for suicide, would have gone on to at least attempt suicide absent this screening."

Dr. Neff has also seen the importance of screening for unhealthy drug use, another Task Force recommendation. He notes that "a growing body of evidence makes the case that heavy cannabis use increases the risk of developing schizophrenia and similar disorders." For Dr. Neff, delivering new diagnoses of schizophrenia to teens, young adults, and their parents is "among the most heartbreaking situations" he has encountered as a physician. He explains, "It's a lifetime diagnosis, and it tends to mean that the person's life is going to unfold very differently than it had previously seemed." Dr. Neff treated one college-student patient, for example, who had recently begun using cannabis heavily after being introduced to it by his roommate, and Dr. Neff describes the patient as "confused and terrified." He could "see the world as he had known it was slipping away from him." "Cannabis use disorder can easily fall through the cracks without screening."

Dr. Mahima Iyengar is another physician and CIR member who believes strongly that Task Force-recommended services must be available cost-free. Dr. Iyengar practices primary adult and pediatric medicine at Los Angeles County's USC Medical Center and has "recommended or done" "almost everything" on the Task Force's list of recommended preventive services. With respect to colorectal

7

cancer screening, for example, she emphasized that, "by the time" a patient has "colorectal cancer" with "severe symptoms that would bring you into the hospital," it is "often too late." Dr. Iyengar "had a patient who wasn't getting screening [and] who finally came into the hospital with pain and blood in their stool." But "when you diagnose cancer that late your treatment options are very limited." In order to avoid this outcome, colorectal cancer screening is "maybe the most common preventative service" Dr. Iyengar performs.

Dr. Iyengar also works in a population where syphilis rates are high but many patients "don't realize [they] have syphilis" because "it is only at a late stage when … very serious symptoms" emerge. Babies who are exposed to syphilis in utero can develop "rashes, liver problems, problems with their vision, … problems with bone growth, anemia, and deafness." At a certain point, "a lot of these become irreversible symptoms." But if pregnant women are screened for syphilis, as the Task Force recommends, newborns can be completely treated at birth and "go on to not have any syphilis complications at all."

Dr. Iyengar notes that the risk of reducing access to preventive care "is not hypothetical." During "the pandemic we saw people putting off preventative care, and we're still seeing the effects of that now …, people coming in at more advanced stages of disease because of a lack of preventative care." If access to preventive care is again reduced, Dr. Iyengar believes we will again see people

8

"coming in with terminal cancer rather than cancer that could have been treated if screened for earlier" or people "coming in with very serious complications of diabetes that could have been prevented with routine access to preventive screening."

Dr. Rodríguez-Ortiz agrees and describes it as inevitable that if the district court's decision goes into effect "these preventive measures will be less accessible to patients who cannot afford [them]," posing a "serious risk to disease control, especially for blood-borne pathogens to which every provider is exposed at work." In Dr. Rodríguez-Ortiz's view, "experts in the field" should make medical decisions like these.  The district court's ruling, by essentially invalidating "the very hard work done by a large number of doctors and researchers over many years … to develop the best recommendations to protect Americans' health, opposes the key principle of evidence-based medicine that guides all physicians in the care of our patients."  "The court unintentionally harms American citizens when, as here, it undermines the recommendations made by professionals who have put years into study in this field."

Even if not all insurance companies immediately stop covering preventive services, the district court's judgment is likely to throw the employment-based insurance industry into chaos, sowing uncertainty with employees as to whether their insurance will cover certain preventive services.  That uncertainty will further

prevent employees from seeking preventive care, leading to all of the health risks

discussed above and others.  "[P]reserving the status quo" of available services

during the course of the litigation "is an important equitable consideration in the

stay decision." *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (quotation

omitted).

Given the vast potential for harm to the public and the clear lack of harm to

Plaintiffs-Appellees, the balance of equities favors a partial stay.

## III. The District Court's Decision Raises Due Process Concerns.

Employee health insurance plans are required by the Employee Retirement

Income Security Act ("ERISA"), 29 U.S.C. §1001 *et seq*., to cover the preventive

care at issue in this case at no cost.  *See* 29 U.S.C. §1185d; 42 U.S.C. §300gg-

13(a).  That requirement can be enforced by employees and their beneficiaries

pursuant to ERISA's enforcement mechanisms, which include a private right of

action.  *See* 29 U.S.C. §1132(a)(1)(B), (3).  This Court has held that when a statute

provides for a "distinct legal dut[y] owed [to] individual employees" that those

employees have a "private right of action to enforce" (as ERISA does here), a

ruling against a federal agency should not be read as constraining affected third-

party employees.  *Texas v. Dep't of Labor*, 929 F.3d 205, 212–13 (5th Cir. 2019)

(quotation omitted); *cf. Freeman v. Lester Coggins Trucking, Inc*., 771 F.2d 860,

865–66 (5th Cir. 1985) ("It is a violation of due process for a judgment to be

binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard.").

The district court's decision violates this principle. While the district court's judgment does not vacate the Task Force's preventive care recommendations themselves, it nonetheless orders vacatur of all other agency action implementing or enforcing the Task Force's recommendations since 2010. *See* Final Judgment, Dist. Ct. Dkt. 114. This includes vacatur of the regulation establishing an effective date of the requirement to provide Task Force-recommended services cost-free. *See* 42 U.S.C. §300gg-13(b) (directing Department of Health and Human Services to establish an effective date); 45 C.F.R. §147.130(b) (cost-free coverage requirement applies to plan years starting one year after the date a recommendation is issued). Thus, by vacating all agency action in furtherance of the Task Force's recommendations, the judgment interferes with employees' ability to enforce their rights to cost-free coverage.

Because the district court failed to acknowledge, let alone evaluate, the significant public harms occasioned by its remedial order, it also wholly failed to grapple with the significant due process implications of a nationwide judgment that undermines the distinct legal rights of non-party employees and their beneficiaries. For this additional reason, this Court should stay the nationwide application of the judgment.

## CONCLUSION

SEIU respectfully requests that the Court grant Defendants' motion to partially stay the judgment.

Dated: April 28, 2023                    Respectfully submitted,

                                          *s/ Connie K. Chan*
                                         Connie K. Chan

                                         Barbara J. Chisholm*
                                         Connie K. Chan
                                         Corinne F. Johnson*
                                         Altshuler Berzon LLP
                                         177 Post St., Ste. 300
                                         San Francisco, CA 94108
                                         (415) 421-7151
                                         cchan@altshulerberzon.com

                                         *Counsel for Amicus Curiae SEIU*

                                         *Application for admission to be filed

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of limitation of Fed. R. App. P. 32(a)(7)(B) and 27(d)(2)(A) because it contains 2,585 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f).  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font, with footnotes in 12-point Times New Roman font, per Fifth Circuit Rule 32.1.

Dated: April 28, 2023              *s/ Connie K. Chan*
                                    Connie K. Chan
                                    *Counsel for Amicus Curiae SEIU*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused the foregoing to be filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on April 28, 2023.  I further certify that the participants in the case are CM/ECF users and that service will be accomplished by using the appellate CM/ECF system.

I further certify that: (1) any required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: April 28, 2023                              *s/ Connie K. Chan*
                                                   Connie K. Chan
                                                   *Counsel for Amicus Curiae SEIU*