No. 23-10326

# In the United States Court of Appeals for the Fifth Circuit

———————

Braidwood Management, Incorporated; John Scott Kelley; Kelley Orthodontics; Ashley Maxwell; Zach Maxwell; Joel Starnes,

*Plaintiffs-Appellees/Cross-Appellants*,

v.

Xavier Becerra, Secretary, U.S. Department of Health and Human Services, in his official capacity as Secretary of Health and Human Services; United States of America; Janet Yellen, Secretary, U.S. Department of Treasury, in her official capacity as Secretary of the Treasury; Julie A. Su, Acting Secretary, U.S. Department of Labor, in her official capacity as Secretary of Labor,

*Defendants-Appellants/Cross-Appellees*.

———————

On Appeal from the United States District Court
for the Western District of Texas
Case No. 4:20-cv-00283-O

———————

## Response To Motion For A Partial Stay Of Final Judgment Pending Appeal

———————

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiffs-Appellees*

## Certificate of Interested Persons

Counsel of record certifies that the following persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiffs | Plaintiffs' Counsel |
|---|---|
| • Braidwood Management Inc.<br>• Kelley Orthodontics<br>• John Kelley<br>• Joel Starnes<br>• Zach Maxwell<br>• Ashley Maxwell<br>• Gregory Scheideman<br>• Joel Miller | Jonathan F. Mitchell<br>Mitchell Law PLLC<br><br>Gene P. Hamilton<br>America First Legal Foundation<br><br>H. Dustin Fillmore II<br>Charles W. Fillmore<br>The Fillmore Law Firm LLP |

| Defendants | Defendants' Counsel |
|---|---|
| • Xavier Becerra<br>• Janet Yellen<br>• Julie A. Su<br>• United States of America | Christopher M. Lynch<br>Jordan L. Von Bokern<br>Michael S. Raab<br>Alisa Beth Klein<br>Brian Walters Stoltz<br>Daniel J. Aguilar<br><br>U.S. Department of Justice |

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiffs-Appellees*

i

# TABLE OF CONTENTS

Certificate of interested persons................................................................. i

Table of contents...................................................................................... ii

Table of authorities ................................................................................. iii

    I.  The precedent of this court compels universal vacatur of unlawful
       agency actions under section 706 of the APA................................... 1

    II. The government has not shown that the balance of equities favor a
       stay pending appeal ...................................................................... 12

Conclusion .............................................................................................. 17

Certificate of service................................................................................ 18

Certificate of compliance......................................................................... 19

Certificate of electronic compliance ....................................................... 20

## Table of Authorities

**Cases**

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
   988 F.2d 146 (D.C. Cir. 1993) ......................................................................7

*Arizona v. Biden*, 40 F.4th 375 (6th Cir. 2022) ...................................... 7, 10

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) .........................13

California v. Texas, 141 S. Ct. 2104 (2021) ..................................................5

*Citizens United v. Federal Election Comm'n,* 558 U.S. 310 (2010) .............5

*Data Marketing Partnership, LP v. United States Dep't of Labor*,
   45 F.4th 846 (5th Cir. 2022) ................................................................. 1, 7

*Dep't of Homeland Security v. New York*, 140 S. Ct. 599 (2020) ...............10

*Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022) .................. 4

*Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022) ................. 1, 3, 7, 11

*Huss v. Gayden*, 571 F.3d 442 (5th Cir. 2009)...........................................13

*Leal v. Azar*, No. 2:20-CV-185-Z,
   2020 WL 7672177 (N.D. Tex. Dec. 23, 2020)........................................6

*Natural Resources Defense Council v. EPA*,
   489 F.3d 1250 (D.C. Cir. 2007)...............................................................7

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc)........................5

*Professional Association of College Educators v. El Paso County
   Community College District*, 730 F.2d 258 (5th Cir. 1984)....................2

*Sapp v. Renfroe*, 511 F.2d 172 (5th Cir. 1975)........................................4, 5

*Stewart v. Banks*, 397 F.2d 798 (5th Cir. 1968) .........................................4

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018)..................................................10

*United Steel v. Mine Safety & Health Admin.*,
   925 F.3d 1279 (D.C. Cir. 2019)................................................................8

*Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016) ..................4

*Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016) ......................4

*Whole Woman's Health v. Jackson*, 141 S. Ct. 2494 (2021) ........................................5

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) ..........................................5

**Statutes**

5 U.S.C. § 706 ............................................................................ 1, 2, 6, 11

26 U.S.C. § 4980D(b)(1) .........................................................................12

42 U.S.C. § 300gg-13(a)(1) ...................................................................... 2

**Rules**

Fed. R. Civ. P. 54(c) ...............................................................................3

**Other Authorities**

Kieran Allsop, et al., *Use of Preventive Care Services Declined Despite Expanded Coverage*, available at bit.ly/3KMrntU ...............................14

Nicholas Bagley, *Remedial Restraint in Administrative Law*, 117 Colum. L. Rev. 253 (2017) ...................................................9

Michael Bretthauer, et al., *Effect of Colonoscopy Screening on Risks of Colorectal Cancer and Related Death*, 387 N. Engl. J. Med. 1547–1556 (2022) ...........................................................................14

John Harrison, *Section 706 of the Administrative Procedure Act Does Not Call for Universal Injunctions or Other Universal Remedies*, 37 Yale J. On Reg. Bull. 37 (2020) ...............................................7

Thomas W. Merrill, *Article III, Agency Adjudication, and the Origins of the Appellate Review Model of Administrative Law*, 111 Colum. L. Rev. 939 (2011) ..................................................9

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933 (2018) ...............................................5, 10

Office of Health Policy, *Access to Preventive Services without Cost-Sharing: Evidence from the Affordable Care Act*, Issue Brief ..................................13

Karen Pollitz, et al., *Coverage of Colonoscopies Under the Affordable Care Act's Prevention Benefit*, Kaiser Family Foundation (August 31, 2022), available at bit.ly/40dNwHe ..................................16

Jeffrey A. Singer and Michael F. Cannon, *Drug Reformation: End Government's Power to Require Prescriptions* (October 20, 2022), available at bit.ly/3mGxvvN ................................................................. 15

Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121 (2020) ....................................................... 9

Jennifer Tolbert, et al., *Key Facts about the Uninsured Population*, Kaiser Family Foundation (December 19, 2022), available at bit.ly/3UNXqyj ...................................................................................... 15

Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2664 (4th ed. 2014) ............................................................................ 4

The defendants claim that the Court's universal remedy is unlikely to survive appellate review, and it argues that balance of equities favors a partial stay because the scope of relief in the Court's judgment could endanger public health by causing people to forgo needed preventive care. Neither argument warrants a stay pending appeal.

## I.    THE PRECEDENT OF THIS COURT COMPELS UNIVERSAL VACATUR OF UNLAWFUL AGENCY ACTIONS UNDER SECTION 706 OF THE APA

The district court's opinion and order of March 30, 2023 (ECF No. 113), and its final judgment (ECF No. 114) correctly hold that section 706 of the APA requires universal vacatur of agency actions that are "not in accordance with law" or "contrary to constitutional [] power"—and that remains the case regardless of whether litigant sues as an individual or class representative. *See* Opinion and Order, ECF No. 113, at 20–21; *see also Data Marketing Partnership, LP v. United States Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022) ("The APA gives courts the power to 'hold unlawful and set aside agency action[s].' 5 U.S.C. § 706(2). Under prevailing precedent, § 706 'extends beyond the mere non-enforcement remedies available to courts that review the constitutionality of legislation, as it empowers courts to "set aside"—*i.e.*, formally nullify and revoke—an unlawful agency action.'" (citation omitted)); *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368, 374–75 (5th Cir. 2022) ("Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation."). The defendants argue that this remedy was unlawful, but none of their arguments have merit.

First. The defendants are wrong to say that the district court "had already granted the plaintiffs complete relief as to their own alleged injuries" before it "set aside" the disputed agency rules under 5 U.S.C. § 706. *See* Mot. for Stay, ECF No. 30, at 2. The district court was able to grant complete relief only to *one* of the plaintiffs—Braidwood Management Inc.—without vacating the agency rules under section 706. And that is because Braidwood's injuries arose from its inability to determine the coverage in its self-insured plan, an injury that was fully redressed by declaratory and injunctive relief that restrains the defendants from enforcing the unlawful preventive-care coverage mandates against Braidwood.

The individual plaintiffs, on the other hand, were suffering injuries from their inability to purchase health insurance on the market that excludes the objectionable coverage. *See* Second Memorandum Opinion and Order, ECF No. 113, at 8–15 (invoking the doctrine of purchaser standing to find that plaintiffs Kelley, Starnes, the Maxwells, and Kelly Orthodontics are suffering Article III injury in fact). This injury cannot be redressed through relief that restrains the defendants from enforcing the unlawful preventive-care coverage mandates against the named plaintiffs, because the individual plaintiffs' injuries arise from the defendants' enforcement of 42 U.S.C. § 300gg-13(a)(1) against private insurance companies. So the district court *had* to extend relief beyond the named plaintiffs to redress their Article III injuries, and it cannot be faulted for enjoining the enforcement of the preventive-care coverage mandates against non-parties to the litigation. *See Professional Association of College Educators v. El Paso County Community College District*, 730 F.2d 258, 273–74 (5th Cir. 1984) ("An injunction . . . is not necessarily made overbroad by extend-

ing benefit or protection to persons other than prevailing parties in the lawsuit—even if it is not a class action—if such breadth is necessary to give prevailing parties the relief to which they are entitled.").

For the same reasons, the defendants are wrong to say that the district court's remedy "extended far beyond what was necessary to remedy plaintiffs' alleged injuries." Mot. for Stay, ECF No. 30, at 9. That observation is true *only* with respect to Braidwood, whose injuries were fully redressable by declaratory and injunctive relief that restrains the defendants from enforcing the unlawful preventive-care coverage mandates against Braidwood. The district court could *not* have redressed the individual plaintiffs' injuries merely by enjoining the enforcement of the unlawful preventive-care coverage mandates against the named plaintiffs; it needed to issue a broader remedy that would liberate private insurers to offer health insurance that excludes the objectionable coverage.

Second. It does not matter whether the plaintiffs invoked the APA or requested vacatur of agency rules in their complaint. *See* Mot. for Stay, ECF No. 30, at 10 (arguing that the "plaintiffs do not have an APA claim in this case" because the "[p]laintiffs' operative complaint does not even invoke the APA."). At the remedial stage of the litigation, the pleadings melt away and the Court must award the relief to which the plaintiff is entitled, regardless of whether a particular remedy or theory of liability was mentioned or requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("[A] final judgment should grant the relief to which each party is entitled, *even if the party has not demanded that relief in its pleadings*." (emphasis added)); *Franciscan Alliance*, 47 F.4th at 378 ("[E]ven if Appellants are right that Franciscan

3

Alliance's complaint did not seek relief against Section 1557 enforcement, Rule 54(c) allows district courts to grant 'relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.'" (quoting Fed. R. Civ. P. 54(c)); *Sapp v. Renfroe,* 511 F.2d 172, 176 n.3 (5th Cir. 1975) ("A party may be awarded the damages established by the pleadings or the facts proven at trial even though only injunctive relief was demanded in the complaint[.]"); *Stewart v. Banks*, 397 F.2d 798, 799 (5th Cir. 1968) ("[A] final judgment must grant the relief to which the party in whose favor it is rendered is entitled even if the party has not demanded such relief in his pleadings."); 10 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2664 (4th ed. 2014) ("[T]he legal theories set out in the complaint are not binding on plaintiff."). A court is required to award the relief that is supported by the evidence and the law—without regard to whether a litigant asked for that relief in its pleadings. In all events, the plaintiffs' operative complaint asked for "all other relief that the Court deems just, proper, or equitable,"[1] which is all that is needed to preserve claims that go unmentioned in the pleadings. *See Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2307 (2016), *overruled on other grounds* in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022). In *Hellerstedt*, the Supreme Court affirmed a district court ruling that enjoined the enforcement of a hospital admitting-privileges law across the board—even though the plaintiffs in that case had never even *asked* the district court for that relief at *any* stage of the district-court proceedings. *See id.*; *see also*

---

1.   First Amended Complaint, ECF No. 14, at ¶ 112(h).

*Citizens United v. Federal Election Comm'n,* 558 U.S. 310, 333 (2010) (in "the exercise of its judicial responsibility" it may be "necessary . . . for the Court to consider the facial validity" of a statute, even though a facial challenge was not brought); *Sapp*, 511 F.2d at 176 n.3 (allowing claim for damages raised for first time on appeal in light of Rule 54(c) and the catchall prayer for relief in plaintiff's complaint).

The defendants are wrong to say that we sued only to "challenge" the constitutionality of a "federal statute." *See* Motion for Stay, ECF No. 121, at 6. Litigants do not "challenge" statutes, as courts lack authority to alter or annul statutes in any way. *See* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933 (2018). A litigant challenges the *behavior* of the *named defendants* that he has sued. *See Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves." (citing *California* v. *Texas*, 141 S. Ct. 2104, 2115–16 (2021)). Even when a litigant attacks the constitutionality of a federal statute, as the plaintiffs have done here, they are still "challenging" the *conduct* of the government officials who act pursuant to that allegedly unconstitutional law, rather than the statute itself. *See California v. Texas*, 141 S. Ct. 2104, 2115 (2021) ("Here, there is no action—actual or threatened—whatsoever. There is only the statute's textually unenforceable language."); *see also id.* at 2120 (2021) (Thomas, J., concurring) ("[T]here is a fundamental problem with the arguments advanced by the plaintiffs in attacking the Act—they have not identified any unlawful action that has injured them."); *see also Okpalobi v. Foster*, 244 F.3d 405, 426 n.34 (5th Cir. 2001) (en banc) ("An injunction enjoins a defendant, not a statute."). And when challenging the

conduct of an agency official, a litigant may obtain not only declaratory and injunctive relief, but also the remedies in the Administrative Procedure Act, which authorizes courts to "set aside," *i.e.*, formally revoke, agency "actions" that are "not in accordance with law" or ""contrary to constitutional [] power." 5 U.S.C. § 706. To the extent that the government is concerned that the district court's final judgment might reach non-final agency actions[2] or agency actions that became final outside the six-year statute of limitations,[3] those concerns should be addressed by tailoring the remedy rather than declaring relief under the APA *per se* unlawful.[4]

Third. The defendants argue that the meaning of "set aside" in section 706 need not be interpreted to compel universal vacatur of unlawful agency actions, and that it might be possible to construe the phrase "set aside" to mean only that the Court should temporarily ignore the unlawful agency action when awarding relief, and limit its remedy to that which is strictly necessary to redress the injuries of the named plaintiffs. *See* Mot. for Stay, ECF No. 13, at 12.[5] But the government cannot

---

2. *See* 5 U.S.C. § 704 (authorizing judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court").

3. The original complaint was filed on March 29, 2020.

4. The government's statute-of-limitations objections are unlikely to prevail on appeal because they were not raised in the remedial briefing, and the statute of limitations does not in any way curtail the plaintiffs' requests for prospective relief against the continued enforcement of the preventive-care coverage mandates. *See, e.g.*, *Leal v. Azar*, No. 2:20-CV-185-Z, 2020 WL 7672177, at *6–*7 (N.D. Tex. Dec. 23, 2020) ("Statutes of limitations are simply inapplicable" to "suits seeking *prospective* relief for *ongoing* injuries").

5. Professor Harrison makes a similar argument in John Harrison, *Section 706 of the Administrative Procedure Act Does Not Call for Universal Injunctions or Other*

show that this Court is "likely" to adopt that interpretation of section 706 on appeal, for two reasons. First, the precedent of this Court rejects the government's proposed interpretation of "set aside," and holds that courts are not only permitted but required to issue a universal remedies under section 706 by vacating unlawful agency actions across the board. *See Data Marketing*, 45 F.4th at 859; *Franciscan Alliance*, 47 F.4th at 374–75. The defendants argue that *Data Marketing* and *Franciscan Alliance* merely permit and do not compel vacatur of unlawful agency action, but that stance is hard to square with the language of *Franciscan Alliance*, which says that "[v]acatur is the *only* statutorily prescribed remedy for a successful APA challenge to a regulation." *Id.* (emphasis added). And the only possible departure from this rule that *Data Marketing* and *Franciscan Alliance* recognize is the D.C. Circuit's controversial and widely criticized[6] practice of "remand without vacatur,"[7] a tactic that has never (to our knowledge) been deployed or endorsed by the Fifth Circuit. *See Data Marketing*, 45 F.4th at 859 ("'[B]y default, remand *with* vacatur is the appropriate remedy.'" (emphasis added) (citation omitted)); *Franciscan Alliance*, 47 F.4th at 375 n.29 ("'The ordinary practice is to vacate unlawful agency action. . . . In rare cases, however, we do not vacate the action but instead remand

---

*Universal Remedies*, 37 Yale J. On Reg. Bull. 37, 37 (2020). Chief Judge Sutton also gestures toward this idea in *Arizona v. Biden*, 40 F.4th 375, 397 (6th Cir. 2022) (Sutton, C.J., concurring).

6. *See Natural Resources Defense Council v. EPA*, 489 F.3d 1250, 1262–64 (D.C. Cir. 2007) (one of Judge Randolph's many opinions criticizing remand without vacatur).

7. *See Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146 (D.C. Cir. 1993) (establishing the remand-without-vacatur remedy).

for the agency to correct its errors.'" (quoting *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019)). The defendants are not requesting remand without vacatur, and they cite nothing from *Data Marketing* or *Franciscan Alliance* (or any other case) that would allow this Court to issue a remedy that fails to vacate (or at least remand) an unlawful agency action, and that merely enjoins the defendants from enforcing the unlawful agency action against the named plaintiffs.

More importantly, the better reading of "set aside" in section 706 is one that requires a universal vacatur rather than a temporary disregard of the disputed agency action. Statutes that authorize reviewing courts to "set aside" unlawful agency actions go as far back as the Hepburn Act of 1906. *See* Act of Jun. 29, 1906, Pub. L. No. 337, ch. 3591, § 4, 34 Stat. 584, 589. Section 4 of the Hepburn Act provided the orders of the Interstate Commerce Commission would be self-executing "unless the same shall be suspended or modified or set aside by the Commission or be suspended or set aside by a court of competent jurisdiction." *Id.* (emphasis added). This gave reviewing courts the same powers that the Commission enjoyed to formally "suspend[]" or "set aside" its orders. Another provision of the Hepburn Act empowered reviewing courts to "enjoin, set aside, annul, or suspend" an order or requirement of the Commission, which clearly indicates a power to formally revoke the Commission's work. *See id.* at 592.

The Federal Trade Commission Act of 1914 also empowered reviewing courts to "set aside" an agency order, and it allowed them to "affirm" or "modify" those orders as well. *See* Act of Sep. 26, 1914, ch. 311, § 5, 38 Stat. 717, 720 ("[T]he court . . . shall have power to make and enter upon the pleadings, testimony, and

proceedings set forth in such transcript a decree affirming, modifying, or setting aside the order of the commission."). This language mirrors the powers of an appellate court when it reviews a district court's judgment or factual findings, and it comprises the same power to formally cancel or nullify the underlying decree. *See also* Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous . . . ." (emphasis added)). The "set aside" language in section 706 — which applies to both agency rules and agency adjudicatory decisions — confers a judicial power to directly act upon and revoke the disputed agency action, in the same way that an appellate court cancels and annuls erroneous district-court judgments or findings of fact when conducting appellate review. *See* Nicholas Bagley, *Remedial Restraint in Administrative Law*, 117 Colum. L. Rev. 253, 258 (2017) ("The APA instructs federal courts to 'hold unlawful and set aside' arbitrary or unlawful agency action. When the APA was enacted in 1946, that instruction reflected a consensus that judicial review of agency action should be modeled on appellate review of trial court judgments . . . . Just as a district court judgment infected with error should be invalidated and returned for reconsideration, so too with agency action."); Thomas W. Merrill, *Article III, Agency Adjudication, and the Origins of the Appellate Review Model of Administrative Law*, 111 Colum. L. Rev. 939, 940 (2011) (explaining how judicial review of agency action is "built on the appellate review model of the relationship between reviewing courts and agencies," which "was borrowed from the understandings that govern the relationship between appeals courts and trial courts in civil litigation"); *see also* Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121 (2020) (de-

fending universal remedies under the APA and responding to Harrison's criticisms). So while the government has made a respectable argument regarding the meaning of "set aside" in section 706 of the APA, and while its argument has at least some scholarly support,[8] it is not an argument that is "likely" to prevail on appeal.

The defendants also critique the isssuance of "nationwide injunctions" and relies on opinions from Justices Thomas and Gorsuch, as well as Chief Judge Sutton, all of whom have penned thoughtful and scholarly criticisms of the practice. *See* Motion for Stay, ECF No. 30, at 16–18 (citing *Trump v. Hawaii*, 138 S. Ct. 2392, 2424–29 (2018) (Thomas, J., concurring); *Dep't of Homeland Security v. New York*, 140 S. Ct. 599, 599–601 (2020) (Gorsuch, J., concurring); *Arizona v. Biden*, 40 F.4th 375, 394–98 (6th Cir. 2022) (Sutton, C.J., concurring). We agree with the defendants that district courts have been far too careless in issuing universal remedies such as nationwide injunctions, which are appropriate only when authorized or required by statute, or when a remedy of that scope is needed to fully redress the injuries to the named litigants or a certified class represented by those litigants. But neither Justice Thomas nor Justice Gorsuch addresses whether the "set aside" language in section 706 authorizes or requires universal vacatur of unlawful agency actions, as this Court has held, and Chief Judge Sutton's concurrence in *Arizona* claims only that the "set aside" language, standing alone, is inconclusive on the issue. *See Arizona v. Biden*, 40 F.4th 375, 397 (6th Cir. 2022)

---

[8.] *See* Harrison, *supra* note 5.

(Sutton, C.J., concurring) ("Use of the 'setting aside' language does not seem to tell us one way or another whether to nullify illegal administrative action or not to enforce it in the case with the named litigants."). None of the stock arguments that have been raised against nationwide injunctions can defeat the district court's reliance on the "set aside" language in section 706 of the APA, or the Fifth Circuit precedents that compel that construction of the statute. Indeed, the government's argument seems to imply that an agency rule should *never* be vacated under the APA, and that stance is exceedingly unlikely to prevail on appeal given the longstanding practice of vacatur under section 706. *See Franciscan Alliance*, 47 F.4th at 375 n.29 ("'The ordinary practice is to vacate unlawful agency action.").[9]

---

9. The defendants are wrong to say: "In [the] district court, plaintiffs made no effort to defend the nationwide injunction." Mot. to Stay, ECF No. 30, at 3. We vigorously defended the propriety of a "universal" (or nationwide) injunction as a concomitant remedy with vacatur under section 706 of the APA. *See* Supp. Br. in Support of Pls.' MSJ, ECF No. 98, at 2 ("Braidwood Is Entitled To A Universal Remedy."); *id.* at 9 ("Braidwood is also entitled to an injunction that restrains the defendants from implementing the agency actions that this Court has vacated or set aside under 5 U.S.C. § 706(2)."); Pls.' Reply Br. in Support of MSJ, ECF No. 111, at 16–25; *id.* at 16 ("The Plaintiffs Are Entitled To A Universal Remedy Under Section 706 Of The Administrative Procedure Act"). Our district-court briefing criticized the *misuse* of nationwide injunctions, but we emphatically argued that a universal remedy was appropriate in this case given the APA's command to "set aside," *i.e.*, vacate across the board, an unlawful agency rule or action.

## II. The Government Has Not Shown That The Balance Of Equities Favor A Stay Pending Appeal

The defendants claim that the final judgment will endanger people's lives and health unless it is stayed pending appeal, but there many problems with their arguments and evidence.

First. It is implausible to believe that health insurers and self-insured plans will suddenly drop or limit coverage of preventive care during the appeal when the district court's ruling could be vacated or reversed at any time. Groups health plans and group and individual market health insurance policies operate on year-long cycles,[10] and insurers seldom make changes to coverage or cost-sharing arrangements mid-cycle because of previous pricing decisions and contractual obligations. *See* Declaration of Jeff Wu ¶ 6 (ROA.2170-2171) ("Plans and issuers do not typically make changes to coverage or cost sharing mid-year because they price their insurance premiums or premium contributions and design their health plans based on coverage for a full year, and issuers have signed contracts with enrollees and with employers stating that they will cover certain services at certain costs through the end of the plan year."). If the district court decision is reversed on appeal, then insurers and employers will be under an *immediate* obligation to provide the preventive-care coverage that had previously been enjoined, and employers with more than 50 employees are subject to draconian penalties ($100 per employee per day) if they fail to provide health insurance that includes the preventive-care coverage mandated by the ACA. *See* 26 U.S.C. § 4980D(b)(1); *see*

---

10. *See* Declaration of Jeff Wu ¶ 5 (ROA.2170).

*also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 720 (2014). No rational insurer or employer can take this risk, especially when they have no way of predicting when the appellate courts will issue their decisions—and the defendants present no evidence or reasons to believe that any insurer or employer will withdraw or limit previously required preventive care while the appeal unfolds.

Second. Even if one were to assume that health insurers and self-insured plans will drop coverage of preventive care or start requiring co-pays, the government has acknowledged that in many cases, the preventive-care mandates imposed by the ACA did *not* lead to increased consumption of the relevant services. The Department of Health and Human Services claims on its website that:

> Studies examining changes in cancer screening among privately insured individuals after the ACA eliminated cost-sharing show an overall increase in colorectal cancer screening tests, while breast cancer screening rates were stable; rates of Pap testing decreased, though this time period coincided with revised cervical cancer screening recommendations that include less frequent testing for many patients. An analysis of 2013–2016 national survey data indicated utilization rates among newly insured immigrants increased for colon cancer screenings but did not change for Pap testing or mammography.

Office of Health Policy, *Access to Preventive Services without Cost-Sharing: Evidence from the Affordable Care Act*, Issue Brief (January 11, 2022), available at bit.ly/40ln3ay (last visited on May 4, 2023). So there is no reason to believe or assume a causal relationship between increases in colorectal screening tests and the preventive-care coverage mandates imposed by the ACA. *See Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009) ("Correlation is not causation."). It could be that other factors caused the increase in screening tests for colorectal cancer and the

declines in Pap testing and mammography—indeed, that seems quite plausible given the otherwise unexplained declines Pap testing and mammography despite the mandates to cover these services at zero marginal cost. *See also* Kieran Allsop, et al., *Use of Preventive Care Services Declined Despite Expanded Coverage*, available at bit.ly/3KMrntU (last visited May 4, 2023).

Third, even if one were to assume that the preventive-care coverage mandates increase *consumption* of the relevant services, there is evidence suggesting that there may be no *benefit*. The evidence most devastating to the government's arguments comes from a large randomized, controlled study of colorectal cancer screening promotion that the *New England Journal of Medicine* published in October 2022. *See* Michael Bretthauer, et al., *Effect of Colonoscopy Screening on Risks of Colorectal Cancer and Related Death*, 387 N. Engl. J. Med. 1547–1556 (2022), available at bit.ly/41AtlnS (last visited on May 4, 2023). The study followed "84,585 participants in Poland, Norway, and Sweden," and investigators randomized one-third of participants to receive an invitation to receive a colonoscopy. The median follow-up was 10 years. The study found *no* statistically discernible impact of colonoscopy promotion on mortality: "[R]isk of death from any cause was 11.03% in the invited group and 11.04% in the usual-care group (risk ratio, 0.99; 95% CI, 0.96 to 1.04)." *Id.* To be sure, this study examined a public-education campaign rather than a coverage mandate, so it does not provide direct evidence of the impact of the preventive-care mandates in the ACA. But it certainly calls into question whether efforts to encourage people to consume preventive services actually confer any benefit at all. The government has no idea—and it certainly cannot prove—

whether patients are actually benefiting from these coverage mandates until it runs a large, reliable trial like this. And the only large-scale trial of this sort that has been done showed no benefit.

Fourth. Mandatory coverage of preventive-care services without cost-sharing can *reduce* access to those services by increasing prices, making it more difficult for the uninsured (or those with grandfathered plans or short-term, limited duration plans exempt for the ACA's coverage mandates) to obtain that care. Mandatory coverage for contraceptives, for example, coincided with large increases in the prices for those items. *See, e.g.*, Jeffrey A. Singer and Michael F. Cannon, *Drug Reformation: End Government's Power to Require Prescriptions* (October 20, 2022), available at bit.ly/3mGxvvN (last visited on May 4, 2023). The government does not even account for this possibility, and assumes that everyone in America carries health insurance subject to the ACA coverage mandates. Many Americans, however, have foregone insurance or repaired to Christian bill-sharing arrangements exempt from the ACA. *See* Jennifer Tolbert, et al., *Key Facts about the Uninsured Population*, Kaiser Family Foundation (December 19, 2022), available at bit.ly/3UNXqyj (last visited on May 4, 2023). Their interests must be included in the balance of equities as well.

Fifth. There is considerable tension between the government's insistence that these preventive-care services are valuable and its simultaneous assumption that people will lose coverage for those services or decline to pay for them if co-pays are added. It presumes that rational people will decline to purchase valuable items or decline to seek them, and it presumes that the market will fail to provide valuable

coverage to consumers of health insurance. Many insurers covered colonoscopy screening and polyp removal, to varying degrees, before the ACA made screening coverage mandatory, suggesting many insurers will continue to do so in the absence of a mandate. *See* Karen Pollitz, et al., *Coverage of Colonoscopies Under the Affordable Care Act's Prevention Benefit*, Kaiser Family Foundation (August 31, 2022), available at bit.ly/40dNwHe (last visited on May 4, 2023).

Sixth. Neither Congress nor the executive branch acts as if these mandates are as critical as the government now maintains. Congress created exemptions from these mandates for grandfathered plans (which consist of 12 percent of the individual market) as well as for short-term, limited duration plans. The executive branch has expanded both exemptions. The executive branch has also unilaterally exempted health insurance in U.S. territories from these coverage mandates, and the government has given no indication that it believes the lack of these mandates is causing any problems in U.S. territories.

In sum, the government's predictions of harm to public health are speculative and unsupported, and in many cases undercut by available evidence. They do not warrant a stay pending appeal.

## Conclusion

The defendants' motion for partial stay pending appeal should be denied.

Respectfully submitted.

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: May 4, 2023                *Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I certify that on May 4, 2023, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Fifth Circuit and served through CM/ECF upon:

MICHAEL S. RAAB
ALISA B. KLEIN
DANIEL AGUILAR
Attorneys, Appellate Staff
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-5432
michael.raab@usdoj.gov
alisa.klein@usdoj.gov
daniel.j.aguilar@usdoj.gov

*Counsel for Defendants-Appellants*

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiffs-Appellees*

# Certificate of Compliance

with type-volume limitation, typeface requirements,
and type-style requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 4,578 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.


                  /s/ Jonathan F. Mitchell
                  Jonathan F. Mitchell
Dated: May 4, 2023        *Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF ELECTRONIC COMPLIANCE

Counsel also certifies that on May 4, 2023, this brief was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, through http://www.pacer.gov.

Counsel further certifies that: (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of VirusTotal and is free of viruses.

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiffs-Appellees*