No. 23-10326

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

BRAIDWOOD MANAGEMENT, INCORPORATED; JOHN SCOTT KELLEY; KELLEY ORTHODONTICS; ASHLEY MAXWELL; ZACH MAXWELL; JOEL STARNES,

Plaintiffs-Appellees/Cross-Appellants,

JOEL MILLER; GREGORY SCHEIDEMAN,

Plaintiffs–Cross-Appellants,

v.

XAVIER BECERRA, SECRETARY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, in his official capacity as Secretary of Health and Human Services; UNITED STATES OF AMERICA; JANET YELLEN, SECRETARY, U.S. DEPARTMENT OF TREASURY, in her official capacity as Secretary of the Treasury; JULIE A. SU, ACTING SECRETARY, U.S. DEPARTMENT OF LABOR, in her official capacity as Secretary of Labor,

Defendants-Appellants/Cross-Appellees.

On Appeal from the United States District Court
for the Northern District of Texas, No. 20-cv-283, Hon. Reed O'Connor

# RECORD EXCERPTS OF THE FEDERAL DEFENDANTS

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*
LEIGHA SIMONTON
  *United States Attorney*
MICHAEL S. RAAB
ALISA B. KLEIN
DANIEL AGUILAR
(202) 514-5432
  Attorneys, Appellate Staff
  Civil Division
  U.S. Department of Justice
  950 Pennsylvania Avenue, NW
  Washington, DC  20530

# TABLE OF CONTENTS

| **Tab** | | **ROA** |
|---|---|---|
| 1 | Docket Sheet | ROA.1 |
| 2 | Notice of Appeal | ROA.2133 |
| 3 | Final Judgment | ROA.2131 |
| 4 | Summary Judgment Order | ROA.1780 |
| 5 | Remedy Order | ROA.2103 |
| 6 | Certificate of Service | |

# TABLE OF CONTENTS

**Tab**                                                                 **ROA**

1    Docket Sheet ...................................................................... ROA.1

2    Notice of Appeal ................................................................ ROA.2133

3    Final Judgment ................................................................. ROA.2131

4    Summary Judgment Order .................................................. ROA.1780

5    Remedy Order ................................................................... ROA.2103

6    Certificate of Service

**TAB 1**

APPEAL,ATTN,CLOSED

# U.S. District Court
# Northern District of Texas (Fort Worth)
# CIVIL DOCKET FOR CASE #: 4:20-cv-00283-O

Braidwood Management Inc. et al. v. Xavier Becerra et al.
Assigned to: Judge Reed C. O'Connor
Case in other court:  United States Court of Appeals 5th Circuit,
                23-10326
                United States Court of Appeals 5th Circuit,
                23-10326
Cause: 28:2201 Declaratory Judgment

Date Filed: 03/29/2020
Date Terminated: 03/30/2023
Jury Demand: None
Nature of Suit: 890 Other Statutes: Other
Statutory Actions
Jurisdiction: Federal Question

**Movant**

**American Cancer Society**

represented by **Adam Cooper**
K&L Gates LLP
1717 Main Street
Suite 2800
Dallas, TX 75201
214-939-4955
Fax: 214-939-5849
Email: adam.cooper@klgates.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Beth Bivans Petronio**
K&L Gates LLP
1717 Main Street, Suite 2800
Dallas, TX 75201
214-939-5500
Fax: 214-939-5849
Email: beth.petronio@klgates.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gretchen P. Mahoney**
K & L Gates LLP
1717 Main Street, Suite 2800
Dallas, TX 75201
214-939-5500
*Bar Status: Admitted/In Good Standing*

**Movant**

**American Cancer Society Cancer Action
Network**

represented by **Adam Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Beth Bivans Petronio**

(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gretchen P. Mahoney**
(See above for address)
*Bar Status: Admitted/In Good Standing*

**Movant**

**American Kidney Fund**                     represented by   **Adam Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Beth Bivans Petronio**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gretchen P. Mahoney**
(See above for address)
*Bar Status: Admitted/In Good Standing*

**Movant**

**American Lung Association**                represented by   **Adam Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Beth Bivans Petronio**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gretchen P. Mahoney**
(See above for address)
*Bar Status: Admitted/In Good Standing*

**Movant**

**Arthritis Foundation**                     represented by   **Adam Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Beth Bivans Petronio**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gretchen P. Mahoney**
(See above for address)
*Bar Status: Admitted/In Good Standing*

**Movant**

**CancerCare**                    represented by **Adam Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Beth Bivans Petronio**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gretchen P. Mahoney**
(See above for address)
*Bar Status: Admitted/In Good Standing*

**Movant**

**Cancer Support Community**          represented by **Adam Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Beth Bivans Petronio**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gretchen P. Mahoney**
(See above for address)
*Bar Status: Admitted/In Good Standing*

**Movant**

**Cystic Fibrosis Foundation**          represented by **Adam Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Beth Bivans Petronio**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gretchen P. Mahoney**
(See above for address)
*Bar Status: Admitted/In Good Standing*

**Movant**

**Epilepsy Foundation**              represented by **Adam Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Beth Bivans Petronio**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gretchen P. Mahoney**
(See above for address)
*Bar Status: Admitted/In Good Standing*

**Movant**

**Hemophilia Federation of America**                represented by **Adam Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Beth Bivans Petronio**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gretchen P. Mahoney**
(See above for address)
*Bar Status: Admitted/In Good Standing*

**Movant**

**Leukemia and Lymphoma Society**                represented by **Adam Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Beth Bivans Petronio**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gretchen P. Mahoney**
(See above for address)
*Bar Status: Admitted/In Good Standing*

**Movant**

**National Minority Quality Forum**                represented by **Adam Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Beth Bivans Petronio**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gretchen P. Mahoney**
(See above for address)

*Bar Status: Admitted/In Good Standing*

**Movant**

**National Multiple Sclerosis Society**     represented by    **Adam Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Beth Bivans Petronio**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gretchen P. Mahoney**
(See above for address)
*Bar Status: Admitted/In Good Standing*

**Movant**

**National Patient Advocate Foundation**     represented by    **Adam Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Beth Bivans Petronio**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gretchen P. Mahoney**
(See above for address)
*Bar Status: Admitted/In Good Standing*

**Movant**

**The AIDS Institute**     represented by    **Adam Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Beth Bivans Petronio**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gretchen P. Mahoney**
(See above for address)
*Bar Status: Admitted/In Good Standing*

**Movant**

**WomenHeart**     represented by    **Adam Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*

*Bar Status: Admitted/In Good Standing*

**Beth Bivans Petronio**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gretchen P. Mahoney**
(See above for address)
*Bar Status: Admitted/In Good Standing*

Amicus

**American Medical Association**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.)*

represented by **John T Lewis**
Democracy Forward Foundation
PO Box 34553
Washington, DC 20043
202-448-9090
Email: jlewis@democracyforward.org
*TERMINATED: 11/30/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

Amicus

**American College of Obstetricians and Gynecologists**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.)*

represented by **John T Lewis**
(See above for address)
*TERMINATED: 11/30/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

Amicus

**Society for Maternal-Fetal Medicine**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.)*

represented by **John T Lewis**
(See above for address)
*TERMINATED: 11/30/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

Amicus

**American Academy of Pediatrics**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.)*

represented by **John T Lewis**
(See above for address)
*TERMINATED: 11/30/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Amicus**

| | | |
|---|---|---|
| **American Medical Womens Association**<br>*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.)* | represented by | **John T Lewis**<br>(See above for address)<br>*TERMINATED: 11/30/2022*<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Not Admitted* |

**Amicus**

| | | |
|---|---|---|
| **American Academy of Family Physicians**<br>*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.)* | represented by | **John T Lewis**<br>(See above for address)<br>*TERMINATED: 11/30/2022*<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Not Admitted* |

**Amicus**

| | | |
|---|---|---|
| **National Medical Association**<br>*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.)* | represented by | **John T Lewis**<br>(See above for address)<br>*TERMINATED: 11/30/2022*<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Not Admitted* |

**Amicus**

| | | |
|---|---|---|
| **Infectious Diseases Society of America**<br>*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.)* | represented by | **John T Lewis**<br>(See above for address)<br>*TERMINATED: 11/30/2022*<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Not Admitted* |

**Plaintiff**

| | | |
|---|---|---|
| **Braidwood Management Inc** | represented by | **Jonathan F Mitchell**<br>111 Congress Avenue<br>Suite 400<br>Austin, TX 78701<br>512-686-3940<br>Fax: 512-686-3941<br>Email: jonathan@mitchell.law<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Admitted/In Good Standing*<br><br>**Charles W Fillmore**<br>The Fillmore Law Firm LLP |

201 Main Street
Suite 801
Fort Worth, TX 76102
817/332-2351
Fax: 817/870-1859
Email: chad@fillmorefirm.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gene Patrick Hamilton**
America First Legal Foundation
611 Pennsylvania Avenue SE
#231
Washington, DC 20003
202-964-3721
Email: gene.hamilton@aflegal.org
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**H Dustin Fillmore, III**
The Fillmore Law Firm LLP
201 Main Street
Suite 801
Fort Worth, TX 76102
817/332-2351
Fax: 817/870-1859
Email: dusty@fillmorefirm.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Plaintiff**

**John Scott Kelley**                    represented by   **Jonathan F Mitchell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Charles W Fillmore**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gene Patrick Hamilton**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**H Dustin Fillmore, III**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Plaintiff**

**Kelley Orthodontics**                    represented by   **Jonathan F Mitchell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Charles W Fillmore**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gene Patrick Hamilton**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**H Dustin Fillmore, III**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Plaintiff**

**Ashley Maxwell**                    represented by   **Jonathan F Mitchell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Charles W Fillmore**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gene Patrick Hamilton**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**H Dustin Fillmore, III**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Plaintiff**

**Zach Maxwell**                    represented by   **Jonathan F Mitchell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Charles W Fillmore**
(See above for address)

*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gene Patrick Hamilton**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**H Dustin Fillmore, III**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Plaintiff**

**Joel Miller**                          represented by   **Jonathan F Mitchell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Charles W Fillmore**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gene Patrick Hamilton**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**H Dustin Fillmore, III**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Plaintiff**

**Donovan Riddle**                      represented by   **Jonathan F Mitchell**
*TERMINATED: 12/02/2021*                                (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Charles W Fillmore**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gene Patrick Hamilton**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**H Dustin Fillmore, III**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Plaintiff**

**Karla Riddle**                          represented by    **Jonathan F Mitchell**
*TERMINATED: 12/02/2021*                                   (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*
                                                           *Bar Status: Admitted/In Good Standing*

                                                           **Charles W Fillmore**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*
                                                           *Bar Status: Admitted/In Good Standing*

                                                           **Gene Patrick Hamilton**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*
                                                           *Bar Status: Admitted/In Good Standing*

                                                           **H Dustin Fillmore, III**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*
                                                           *Bar Status: Admitted/In Good Standing*

**Plaintiff**

**Gregory Scheideman**                    represented by    **Jonathan F Mitchell**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*
                                                           *Bar Status: Admitted/In Good Standing*

                                                           **Charles W Fillmore**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*
                                                           *Bar Status: Admitted/In Good Standing*

                                                           **Gene Patrick Hamilton**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*
                                                           *Bar Status: Admitted/In Good Standing*

                                                           **H Dustin Fillmore, III**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*
                                                           *Bar Status: Admitted/In Good Standing*

**Plaintiff**

**Joel Starnes**                          represented by    **Jonathan F Mitchell**
                                                           (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Charles W Fillmore**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Gene Patrick Hamilton**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**H Dustin Fillmore, III**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

V.

**<u>Defendant</u>**

**Xavier Becerra**                    represented by    **Christopher M Lynch**
*in his official capacity as Secretary of*              US Department of Justice
*Health and Human Services*                             1100 L Street NW
                                                        Washington, DC 20005
                                                        202-353-4537
                                                        Fax: 202-616-8470
                                                        Email: Christopher.M.Lynch@usdoj.gov
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*
                                                        *Bar Status: Not Admitted*

                                                        **Brian Walters Stoltz-DOJ**
                                                        U.S. Attorney's Office
                                                        1100 Commerce Street
                                                        Third Floor
                                                        Dallas, TX 75242
                                                        214-659-8626
                                                        Email: brian.stoltz@usdoj.gov
                                                        *ATTORNEY TO BE NOTICED*
                                                        *Bar Status: Admitted/In Good Standing*

                                                        **Jordan Landrum Von Bokern-DOJ**
                                                        U.S. Department of Justice
                                                        1100 L St
                                                        Washington, DC 20530
                                                        202-305-7919
                                                        Fax: 202-616-8460
                                                        Email: Jordan.L.Von.Bokern2@usdoj.gov
                                                        *TERMINATED: 05/06/2022*
                                                        *Bar Status: Not Admitted*

**Defendant**

**United States of America**                        represented by    **Christopher M Lynch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Brian Walters Stoltz-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Jordan Landrum Von Bokern-DOJ**
(See above for address)
*TERMINATED: 05/06/2022*
*Bar Status: Not Admitted*

**Defendant**

**Janet L Yellen**                        represented by    **Christopher M Lynch**
*in her official capacity as Secretary of the*                    (See above for address)
*Treasury*                                    *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Brian Walters Stoltz-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Jordan Landrum Von Bokern-DOJ**
(See above for address)
*TERMINATED: 05/06/2022*
*Bar Status: Not Admitted*

**Defendant**

**Martin J Walsh**                        represented by    **Christopher M Lynch**
*in his official capacity as Secretary of*                    (See above for address)
*Labor*                                        *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Brian Walters Stoltz-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Jordan Landrum Von Bokern-DOJ**
(See above for address)
*TERMINATED: 05/06/2022*
*Bar Status: Not Admitted*

**Defendant**

**Alex M. Azar II**
*in his official capacity as Secretary of*
*Health and Human Services*
*TERMINATED: 03/23/2021*

represented by **Christopher M Lynch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Brian Walters Stoltz-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Jordan Landrum Von Bokern-DOJ**
(See above for address)
*TERMINATED: 05/06/2022*
*Bar Status: Not Admitted*

**Defendant**

**Steven T Mnuchin**
*in his official capacity as Secretary of the*
*Treasury*
*TERMINATED: 03/23/2021*

represented by **Christopher M Lynch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Brian Walters Stoltz-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Jordan Landrum Von Bokern-DOJ**
(See above for address)
*TERMINATED: 05/06/2022*
*Bar Status: Not Admitted*

**Defendant**

**Eugene Scalia**
*in his official capacity as Secretary of*
*Labor*
*TERMINATED: 03/23/2021*

represented by **Christopher M Lynch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Brian Walters Stoltz-DOJ**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Jordan Landrum Von Bokern-DOJ**
(See above for address)
*TERMINATED: 05/06/2022*
*Bar Status: Not Admitted*

**Amicus**

**State of Illinois**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

represented by **Elizabeth Jordan**
Office of the Attorney General of Illinois
100 West Randolph St., 11th Floor
Chicago, IL 60601
872-276-3629
Email: elizabeth.jordan@ilag.gov
*TERMINATED: 01/28/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Alex Hemmer**
Office of the Illinois Attorney General
100 W Randolph Street
Chicago, IL 60601
312-814-5226
Email: alex.hemmer@ilag.gov
*TERMINATED: 01/28/2022*
*Bar Status: Not Admitted*

**Christopher G. Wells**
Office of the Illinois Attorney General
100 W. Randolph St.
Chicago, IL 60601
312-814-3000
*TERMINATED: 01/28/2022*
*Bar Status: Not Admitted*

**Amicus**

**State of California**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

represented by **Elizabeth Jordan**
(See above for address)
*TERMINATED: 01/28/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Amicus**

**State of Colorado**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

represented by **Elizabeth Jordan**
(See above for address)
*TERMINATED: 01/28/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Amicus**

**State of Connecticut**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

represented by **Elizabeth Jordan**
(See above for address)
*TERMINATED: 01/28/2022*
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Amicus**

**State of Delaware**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

represented by **Elizabeth Jordan**
(See above for address)
*TERMINATED: 01/28/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Amicus**

**The District of Columbia**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

represented by **Elizabeth Jordan**
(See above for address)
*TERMINATED: 01/28/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Amicus**

**State of Hawaii**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

represented by **Elizabeth Jordan**
(See above for address)
*TERMINATED: 01/28/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Amicus**

**State of Maine**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

represented by **Elizabeth Jordan**
(See above for address)
*TERMINATED: 01/28/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Amicus**

**State of Maryland**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

represented by **Elizabeth Jordan**
(See above for address)
*TERMINATED: 01/28/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Amicus**

**State of Michigan**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

represented by **Elizabeth Jordan**
(See above for address)
*TERMINATED: 01/28/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

<u>**Amicus**</u>

**State of Massachusetts**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

represented by **Elizabeth Jordan**
(See above for address)
*TERMINATED: 01/28/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

<u>**Amicus**</u>

**State of Michigan**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

represented by **Elizabeth Jordan**
(See above for address)
*TERMINATED: 01/28/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

<u>**Amicus**</u>

**State of Nevada**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

represented by **Elizabeth Jordan**
(See above for address)
*TERMINATED: 01/28/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

<u>**Amicus**</u>

**State of New Jersey**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

represented by **Elizabeth Jordan**
(See above for address)
*TERMINATED: 01/28/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

<u>**Amicus**</u>

**State of New Mexico**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

represented by **Elizabeth Jordan**
(See above for address)
*TERMINATED: 01/28/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Amicus**

**State of New York**                                  represented by **Elizabeth Jordan**
*Party and attorney are active (attorney has*                    (See above for address)
*been terminated to restrict access to sealed*                   *TERMINATED: 01/28/2022*
*filings.*                                                        *LEAD ATTORNEY*
                                                                 *PRO HAC VICE*
                                                                 *ATTORNEY TO BE NOTICED*
                                                                 *Bar Status: Not Admitted*

**Amicus**

**State of North Carolina**                           represented by **Elizabeth Jordan**
*Party and attorney are active (attorney has*                    (See above for address)
*been terminated to restrict access to sealed*                   *TERMINATED: 01/28/2022*
*filings.*                                                        *LEAD ATTORNEY*
                                                                 *PRO HAC VICE*
                                                                 *ATTORNEY TO BE NOTICED*
                                                                 *Bar Status: Not Admitted*

**Amicus**

**State of Oregon**                                   represented by **Elizabeth Jordan**
*Party and attorney are active (attorney has*                    (See above for address)
*been terminated to restrict access to sealed*                   *TERMINATED: 01/28/2022*
*filings.*                                                        *LEAD ATTORNEY*
                                                                 *PRO HAC VICE*
                                                                 *ATTORNEY TO BE NOTICED*
                                                                 *Bar Status: Not Admitted*

**Amicus**

**State of Pennsylvania**                             represented by **Elizabeth Jordan**
*Party and attorney are active (attorney has*                    (See above for address)
*been terminated to restrict access to sealed*                   *TERMINATED: 01/28/2022*
*filings.*                                                        *LEAD ATTORNEY*
                                                                 *PRO HAC VICE*
                                                                 *ATTORNEY TO BE NOTICED*
                                                                 *Bar Status: Not Admitted*

**Amicus**

**State of Rhode Island**                             represented by **Elizabeth Jordan**
*Party and attorney are active (attorney has*                    (See above for address)
*been terminated to restrict access to sealed*                   *TERMINATED: 01/28/2022*
*filings.*                                                        *LEAD ATTORNEY*
                                                                 *PRO HAC VICE*
                                                                 *ATTORNEY TO BE NOTICED*
                                                                 *Bar Status: Not Admitted*

**Amicus**

                                                      represented by

**State of Vermont**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

**Elizabeth Jordan**
(See above for address)
*TERMINATED: 01/28/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Amicus**

**State of Washington**          represented by    **Elizabeth Jordan**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

(See above for address)
*TERMINATED: 01/28/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Amicus**

**20 Health Policy Experts**          represented by    **Kaylynn Danielle Webb**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

McDermott Will & Emery
2501 North Harwood Street
Suite 1900
Dallas, TX 75201
214-295-8043
Email: kwebb@mwe.com
*TERMINATED: 02/04/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Michael W. Weaver**
McDermott Will & Emery LLP
444 West Lake Street, Suite 4000
Chicago, IL 60660
312-984-5820
*TERMINATED: 02/04/2022*
*Bar Status: Not Admitted*

**Amicus**

**The American Public Health Association**          represented by    **Kaylynn Danielle Webb**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

(See above for address)
*TERMINATED: 02/04/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Michael W. Weaver**
(See above for address)
*TERMINATED: 02/04/2022*
*Bar Status: Not Admitted*

**Amicus**

**The Association of American Medical Colleges**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.*

represented by  **Kaylynn Danielle Webb**
(See above for address)
*TERMINATED: 02/04/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Michael W. Weaver**
(See above for address)
*TERMINATED: 02/04/2022*
*Bar Status: Not Admitted*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/29/2020 | 1 (p.35) | COMPLAINT against All Defendants filed by Kelley Orthodontics, Joel Starnes, Braidwood Management Inc., John Kelley. (Filing fee $400; Receipt number 0539-10733398) Clerk to issue summons(es). In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.35) Exhibit(s), # 2 (p.101) Exhibit(s), # 3 (p.103) Exhibit(s), # 4 (p.105) Exhibit(s), # 5 (p.129) Exhibit(s), # 6 (p.153) Exhibit(s), # 7 (p.156) Cover Sheet) (Mitchell, Jonathan) (Entered: 03/29/2020) |
| 03/29/2020 | 2 (p.101) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Braidwood Management Inc., John Kelley, Kelley Orthodontics, Joel Starnes. (Mitchell, Jonathan) (Entered: 03/29/2020) |
| 03/29/2020 |  | Case Reassigned to Judge Reed C. O'Connor. Senior Judge John McBryde no longer assigned to the case. (pef) (Entered: 03/30/2020) |
| 03/29/2020 | 3 (p.103) | New Case Notes: A filing fee has been paid. File to: Judge O'Connor. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge. Clerk to provide copy to plaintiff if not received electronically. Attorneys are further reminded that, if necessary, they must comply with Local Rule 83.10(a) within 14 days or risk the possible dismissal of this case without prejudice or without further notice. (pef) (Entered: 03/30/2020) |
| 03/30/2020 | 4 (p.105) | Summons issued as to Alex M. Azar II, Steven T. Mnuchin, Eugene Scalia, United States of America, U.S. Attorney, and U.S. Attorney General. (pef) (Entered: 03/30/2020) |
| 04/14/2020 | 5 (p.129) | SUMMONS Returned Executed: U.S. Attorney served on 04/03/2020 on behalf of all defendants; U.S. Attorney General served on 04/07/2020 on behalf of all defendants. (Fillmore, H) Modified docket text on 4/15/2020 (pef). (Entered: 04/14/2020) |
| 05/19/2020 | 6 (p.153) | NOTICE of Attorney Appearance by Jordan Landrum Von Bokern-DOJ on behalf of Alex M. Azar II, Steven T. Mnuchin, Eugene Scalia, United States of America. |

| | | |
|---|---|---|
| | | (Filer confirms contact info in ECF is current.) (Von Bokern-DOJ, Jordan) (Entered: 05/19/2020) |
| 05/19/2020 | 7 (p.156) | NOTICE of Attorney Appearance by Christopher M Lynch on behalf of Alex M. Azar II, Steven T. Mnuchin, Eugene Scalia, United States of America. (Filer confirms contact info in ECF is current.) (Lynch, Christopher) (Entered: 05/19/2020) |
| 05/20/2020 | 8 (p.159) | Unopposed Motion for Extension of Time to File Answer filed by Alex M. Azar II, Steven T. Mnuchin, Eugene Scalia, United States of America with Brief/Memorandum in Support. (Von Bokern-DOJ, Jordan) (Entered: 05/20/2020) |
| 05/20/2020 | 9 (p.162) | ORDER: Before the Court is Defendant's Unopposed Motion for Extension of Time to File Answer (Motion) (ECF No. 8 (p.159) ), filed May 20, 2020. Having considered the unopposed Motion, the Court finds that it should be and is hereby GRANTED. It is hereby ORDERED that Defendants may respond to Plaintiff's Complaint on or before June 29, 2020. (Ordered by Judge Reed C. O'Connor on 5/20/2020) (pef) (Entered: 05/20/2020) |
| 06/26/2020 | 10 (p.163) | MOTION Extension of Page Limitation filed by Alex M. Azar II, Steven T. Mnuchin, Eugene Scalia, United States of America (Attachments: # 1 (p.35) Proposed Order) (Lynch, Christopher) (Entered: 06/26/2020) |
| 06/29/2020 | 11 (p.167) | ORDER: Before the Court is Defendants' Unopposed Motion for Extension of Page Limitation (Motion) (ECF No. 10 (p.163) ), filed June 26, 2020. Having considered the unopposed Motion, the Court finds that it should be and is hereby GRANTED. Therefore, it is hereby ORDERED that Defendants may file a motion to dismiss not to exceed 40 pages. (Ordered by Judge Reed C. O'Connor on 6/29/2020) (pef) (Entered: 06/29/2020) |
| 06/29/2020 | 12 (p.168) | MOTION to Dismiss for Lack of Jurisdiction , Motion to Dismiss for Failure to State a Claim() filed by Alex M. Azar II, Steven T. Mnuchin, Eugene Scalia, United States of America with Brief/Memorandum in Support. (Lynch, Christopher) (Entered: 06/29/2020) |
| 06/30/2020 | 13 | ***VACATED PER 16 (p.280) ORDER*** ORDER REQUIRING SCHEDULING CONFERENCE AND REPORT FOR CONTENTS OF SCHEDULING ORDER: The Joint Report shall be filed on or before July 28, 2020. (Ordered by Judge Reed C. O'Connor on 6/30/2020) (pef) Modified on 7/27/2020 (chmb). (Entered: 06/30/2020) |
| 07/20/2020 | 14 (p.219) | AMENDED COMPLAINT (FIRST) against Alex M. Azar II, Steven T. Mnuchin, Eugene Scalia, United States of America filed by Kelley Orthodontics, Joel Starnes, Braidwood Management Inc., John Kelley, Gregory Scheideman, Donovan Riddle, Karla Riddle, Zach Maxwell, Ashley Maxwell, Joel Miller. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.35) Exhibit(s), # 2 (p.101) Exhibit(s), # 3 (p.103) Exhibit(s), # 4 (p.105) Exhibit(s), # 5 (p.129) Exhibit(s), # 6 (p.153) Exhibit(s)) (Mitchell, Jonathan) (Entered: 07/20/2020) |
| 07/24/2020 | 15 (p.273) | Joint MOTION to Vacate 13 Order for Scheduling Order Proposal filed by Alex M. Azar II, Steven T. Mnuchin, Eugene Scalia, United States of America (Attachments: # 1 (p.35) Proposed Order) (Lynch, Christopher) (Entered: 07/24/2020) |

| | | |
|---|---|---|
| 07/27/2020 | 16 (p.280) | ORDER granting 15 (p.273) Joint Motion to Vacate. This Court's order of June 30, 2020, ECF No. 13 , is hereby vacated. Defendants may file their Motion to Dismiss on or before August 7, 2020. (Ordered by Judge Reed C. O'Connor on 7/27/2020) (chmb) (Entered: 07/27/2020) |
| 08/06/2020 | 17 (p.281) | MOTION Extension of Page Limitation filed by Alex M. Azar II, Steven T. Mnuchin, Eugene Scalia, United States of America (Attachments: # 1 (p.35) Proposed Order) (Lynch, Christopher) (Entered: 08/06/2020) |
| 08/07/2020 | 18 | ELECTRONIC ORDER finding as moot 12 (p.168) Motion to Dismiss for Lack of Jurisdiction. ; finding as moot 12 (p.168) Motion to Dismiss for Failure to State a Claim (Ordered by Judge Reed C. O'Connor on 8/7/2020) (chmb) (Entered: 08/07/2020) |
| 08/07/2020 | 19 (p.285) | ORDER granting 17 (p.281) Motion... Defendants may file a motion to dismiss not to exceed 35 pages. (Ordered by Judge Reed C. O'Connor on 8/7/2020) (wrb) (Entered: 08/07/2020) |
| 08/07/2020 | 20 (p.286) | MOTION to Dismiss for Lack of Jurisdiction *First Amended Complaint*, Motion to Dismiss for Failure to State a Claim() filed by Alex M. Azar II, Steven T. Mnuchin, Eugene Scalia, United States of America with Brief/Memorandum in Support. (Lynch, Christopher) (Entered: 08/07/2020) |
| 08/12/2020 | 21 (p.330) | Unopposed MOTION to Extend Time of time to respond to motion to dismiss filed by Braidwood Management Inc., John Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Donovan Riddle, Karla Riddle, Gregory Scheideman, Joel Starnes (Attachments: # 1 (p.35) Proposed Order) (Mitchell, Jonathan) (Entered: 08/12/2020) |
| 08/13/2020 | 22 (p.336) | ORDER: Having considered the 21 (p.330) Unopposed Motion, the Court finds that it should be and is hereby GRANTED. Therefore, it is hereby ORDERED that Plaintiffs may file a response on or before September 11, 2020. (Ordered by Judge Reed C. O'Connor on 8/13/2020) (pef) (Entered: 08/13/2020) |
| 09/12/2020 | 23 (p.337) | MOTION Extend Page Limits for Plaintiffs' Response to Defendants' Motion to Dismiss filed by Braidwood Management Inc., John Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Donovan Riddle, Karla Riddle, Gregory Scheideman, Joel Starnes (Attachments: # 1 (p.35) Proposed Order) (Mitchell, Jonathan) (Entered: 09/12/2020) |
| 09/12/2020 | 24 (p.342) | BRIEF filed by Braidwood Management Inc., John Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Donovan Riddle, Karla Riddle, Gregory Scheideman, Joel Starnes re: 20 (p.286) MOTION to Dismiss for Lack of Jurisdiction *First Amended Complaint*Motion to Dismiss for Failure to State a Claim (Mitchell, Jonathan) Modified on 9/14/2020 (wrb). (Entered: 09/12/2020) |
| 09/14/2020 | 25 | ELECTRONIC ORDER granting 23 (p.337) Motion. (Ordered by Judge Reed C. O'Connor on 9/14/2020) (chmb) (Entered: 09/14/2020) |
| 09/14/2020 | 26 (p.381) | Unopposed MOTION for Extension of Time to File Response to Motion to Dismiss, Nunc Pro Tunc filed by Braidwood Management Inc., John Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Donovan Riddle, Karla Riddle, Gregory Scheideman, Joel Starnes (Attachments: # 1 (p.35) Proposed Order) (Mitchell, Jonathan) (Entered: 09/14/2020) |
| 09/16/2020 | | |

| | 27 (p.386) | NOTICE of Change of Address for Attorney H Dustin Fillmore, III on behalf of Braidwood Management Inc., John Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Donovan Riddle, Karla Riddle, Gregory Scheideman, Joel Starnes. (Filer confirms contact info in ECF is current.) (Fillmore, H) (Entered: 09/16/2020) |
|---|---|---|
| 09/24/2020 | 28 (p.388) | MOTION for Extension of Time to File Response/Reply to 24 (p.342) Response/Objection, filed by Alex M. Azar II, Steven T. Mnuchin, Eugene Scalia, United States of America (Attachments: # 1 (p.35) Proposed Order) (Lynch, Christopher) (Entered: 09/24/2020) |
| 09/25/2020 | 29 | ELECTRONIC ORDER granting 26 (p.381) Motion for Extension of Time to File. (Ordered by Judge Reed C. O'Connor on 9/25/2020) (chmb) (Entered: 09/25/2020) |
| 09/25/2020 | 30 | ELECTRONIC ORDER granting 28 (p.388) Defendants' Motion to Extend Time to File Reply.The deadline for Defendants to file their Reply is hereby extended to October 5, 2020. (Ordered by Judge Reed C. O'Connor on 9/25/2020) (chmb) (Entered: 09/25/2020) |
| 10/05/2020 | 31 (p.392) | MOTION Extension of Page Limitation filed by Alex M. Azar II, Steven T. Mnuchin, Eugene Scalia, United States of America (Attachments: # 1 (p.35) Proposed Order) (Lynch, Christopher) (Entered: 10/05/2020) |
| 10/05/2020 | 32 (p.396) | REPLY filed by Alex M. Azar II, Steven T. Mnuchin, Eugene Scalia, United States of America re: 20 (p.286) MOTION to Dismiss for Lack of Jurisdiction *First Amended Complaint*Motion to Dismiss for Failure to State a Claim (Lynch, Christopher) (Entered: 10/05/2020) |
| 10/06/2020 | 33 | ELECTRONIC ORDER granting 31 (p.392) Motion (Ordered by Judge Reed C. O'Connor on 10/6/2020) (chmb) (Entered: 10/06/2020) |
| 12/28/2020 | 34 (p.416) | NOTICE of *Supplemental Authority* filed by Braidwood Management Inc., John Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Donovan Riddle, Karla Riddle, Gregory Scheideman, Joel Starnes (Attachments: # 1 (p.35) Exhibit(s)) (Mitchell, Jonathan) (Entered: 12/28/2020) |
| 02/25/2021 | 35 (p.461) | ORDER: Defendants' Motion to Dismiss (ECF No. 20 (p.286) ) is GRANTED in part and DENIED in part. Specifically, Defendants' Motion to Dismiss is GRANTED as to Plaintiffs' statutory-interpretation claim and the Religious-Objector Plaintiffs' Contraceptive Mandate claim. Those claims are hereby dismissed with prejudice. All other requested relief in Defendants' Motion to Dismiss is DENIED. (Ordered by Judge Reed C. O'Connor on 2/25/2021) (pef) (Entered: 02/25/2021) |
| 02/25/2021 | 36 (p.497) | ORDER: The parties are ORDERED to meet and confer regarding a discovery timeline, a proposed briefing schedule on any remaining dispositive motions, the need for a trial setting, and any other matters the parties feel necessary to bring to the Court's attention. The parties are directed to provide the Court with a status report on these matters by March 22, 2021. (Ordered by Judge Reed C. O'Connor on 2/25/2021) (pef) (Entered: 02/25/2021) |
| 03/11/2021 | 37 (p.498) | ANSWER to 14 (p.219) Amended Complaint,,, filed by Alex M. Azar II, Steven T Mnuchin, Eugene Scalia, United States of America. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here:  Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk |

| | | |
|---|---|---|
| | | will notify the presiding judge. Attorneys are further reminded that, if necessary, they must comply with Local Rule 83.10(a) within 14 days or risk the possible dismissal of this case without prejudice or without further notice. (Von Bokern-DOJ, Jordan) (Entered: 03/11/2021) |
| 03/12/2021 | 38 (p.514) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Alex M. Azar II, Steven T Mnuchin, Eugene Scalia, United States of America. (Von Bokern-DOJ, Jordan) (Entered: 03/12/2021) |
| 03/22/2021 | 39 (p.517) | Joint STATUS REPORT filed by Alex M. Azar II, Steven T Mnuchin, Eugene Scalia, United States of America. (Lynch, Christopher) (Entered: 03/22/2021) |
| 03/23/2021 | 40 (p.520) | SCHEDULING ORDER: Joinder of Parties due by 7/1/2021. Amended Pleadings due by 7/1/2021. Discovery due by 10/1/2021. Plaintiffs' Motion for Summary Judgment due by 11/1/2021. (See order for further specifics) (Ordered by Judge Reed C. O'Connor on 3/23/2021) (pef) (Entered: 03/23/2021) |
| 06/11/2021 | 41 (p.522) | NOTICE of Attorney Appearance by Gene Patrick Hamilton on behalf of Braidwood Management Inc., John Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Donovan Riddle, Karla Riddle, Gregory Scheideman, Joel Starnes. (Filer confirms contact info in ECF is current.) (Hamilton, Gene) (Entered: 06/11/2021) |
| 10/26/2021 | 42 (p.524) | Agreed MOTION to Extend Time Briefing Schedule filed by Xavier Becerra, United States of America, Martin J. Walsh, Janet L. Yellen (Attachments: # 1 (p.35) Proposed Order) (Lynch, Christopher) (Entered: 10/26/2021) |
| 10/26/2021 | 43 (p.528) | SCHEDULING ORDER: The Court GRANTS the parties' 42 (p.524) Motion. The Court ORDERS the following: Plaintiffs' Motion for Summary Judgment is due on or before November 15. Defendants' Combined Response & Cross Motion for Summary Judgment is due December 29. Plaintiffs' Combined Reply & Response to Cross-Motion for Summary Judgment is due January 28, 2022. Defendants' Reply to Cross-Motion for Summary Judgment is due February 18. (Ordered by Judge Reed C. O'Connor on 10/26/2021) (pef) (Entered: 10/26/2021) |
| 11/15/2021 | 44 (p.529) | MOTION for Summary Judgment filed by Braidwood Management Inc., John Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Gregory Scheideman, Joel Starnes (Mitchell, Jonathan) (Entered: 11/15/2021) |
| 11/15/2021 | 45 (p.533) | Brief/Memorandum in Support filed by Braidwood Management Inc., John Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Gregory Scheideman, Joel Starnes re 44 (p.529) MOTION for Summary Judgment (Mitchell, Jonathan) (Entered: 11/15/2021) |
| 11/15/2021 | 46 (p.577) | Appendix in Support filed by Braidwood Management Inc., John Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Gregory Scheideman, Joel Starnes re 44 (p.529) MOTION for Summary Judgment (Mitchell, Jonathan) (Entered: 11/16/2021) |
| 12/02/2021 | 47 (p.891) | Joint STIPULATION OF DISMISSAL *of Claims Asserted by Donovan Riddle and Karla Riddle* by Donovan Riddle, Karla Riddle. (Mitchell, Jonathan) (Entered: 12/02/2021) |
| 12/20/2021 | 48 (p.894) | Agreed MOTION to Extend Time Amend Scheduling Order filed by Xavier Becerra, United States of America, Martin J. Walsh, Janet L. Yellen (Attachments: # 1 (p.35) Proposed Order) (Lynch, Christopher) (Entered: 12/20/2021) |

| | | |
|---|---|---|
| 12/21/2021 | 49 (p.898) | ORDER: Before the Court is the parties' second 48 (p.894) Agreed Motion to Amend Briefing Schedule. The Court GRANTS the parties' Motion. (see order) (Ordered by Judge Reed C. O'Connor on 12/21/2021) (mmw) (Entered: 12/21/2021) |
| 12/22/2021 | 50 (p.899) | NOTICE of *Supplemental Authority* filed by Braidwood Management Inc., John Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Gregory Scheideman, Joel Starnes (Attachments: # 1 (p.35) Exhibit(s) Fifth Circuit panel opinion in DeOtte v. Nevada, No. 19-10754) (Mitchell, Jonathan) (Entered: 12/22/2021) |
| 01/07/2022 | 51 (p.925) | Consent MOTION for Extension of Time to File Summary Judgment Briefing/Amend Scheduling Order filed by Xavier Becerra, United States of America, Martin J. Walsh, Janet L. Yellen (Attachments: # 1 (p.35) Proposed Order) (Lynch, Christopher) (Entered: 01/07/2022) |
| 01/07/2022 | 52 (p.929) | ORDER: Before the Court is the parties' 51 (p.925) Consent Motion to Amend Briefing Schedule. The Court GRANTS the Motion. (see order) (Ordered by Judge Reed C. O'Connor on 1/7/2022) (mmw) (Entered: 01/07/2022) |
| 01/27/2022 | 53 (p.930) | MOTION Extension of Page Limitation filed by Xavier Becerra, United States of America, Martin J. Walsh, Janet L. Yellen (Attachments: # 1 (p.35) Proposed Order) (Lynch, Christopher) (Entered: 01/27/2022) |
| 01/28/2022 | 54 (p.934) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number 0539-12560141) filed by State of Illinois (Attachments: # 1 (p.35) Exhibit(s) Cert of Good Standing - E Jordan)Attorney Elizabeth Jordan added to party State of Illinois(pty:am) (Jordan, Elizabeth) (Entered: 01/28/2022) |
| 01/28/2022 | 55 (p.938) | MOTION Appear without Local Counsel re 54 (p.934) Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number 0539-12560141) filed by State of Illinois (Jordan, Elizabeth) Modified filers per PDF on 1/31/2022 (mmw). (Entered: 01/28/2022) |
| 01/28/2022 | 56 (p.945) | MOTION for Leave to File Brief of Amici States in Support of the Defendants' Motion for Summary Judgment Pursuant to Local Rule 7.2(b) filed by State of Illinois with Brief/Memorandum in Support. (Attachments: # 1 (p.35) Exhibit(s) Amicus Brief) (Jordan, Elizabeth) Modified filers per PDF on 1/31/2022 (mmw). (Entered: 01/28/2022) |
| 01/28/2022 | 57 | ELECTRONIC ORDER granting 54 (p.934) Application for Admission Pro Hac Vice of Elizabeth H. Jordan. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 1/28/2022) (chmb) (Entered: 01/28/2022) |
| 01/28/2022 | 58 (p.979) | ORDER: Before the Court is Defendants' Unopposed 53 (p.930) Motion for Extension of Page Limit. The Court GRANTS the motion and ORDERS that Defendants' Brief in Response to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment shall be no longer than 60 pages. (Ordered by Judge Reed C. O'Connor on 1/28/2022) (mmw) (Entered: 01/28/2022) |
| 01/28/2022 | 59 (p.980) | ORDER: Before the Court is the Amici States' 55 (p.938) Motion to Appear Without Local Counsel. The Court GRANTS the motion and ORDERS that counsel for the parties is required to fulfill all local counsel requirements and abide by all local rules of this Court. (Ordered by Judge Reed C. O'Connor on 1/28/2022) (mmw) (Entered: 01/28/2022) |

| | | |
|---|---|---|
| 01/28/2022 | 60 (p.981) | ORDER: Before the Court is the Amici States' 56 (p.945) Unopposed Motion for Leave to File Brief Amici Curiae in Support of the Defendants' Motion for Summary Judgment. The Court GRANTS the motion and DIRECTS the Clerk of Court to file the document attached to the motion (ECF No. 56-1) as the amici brief. (Ordered by Judge Reed C. O'Connor on 1/28/2022) (mmw) (Entered: 01/28/2022) |
| 01/28/2022 | 61 (p.982) | Brief of Amici States in Support of Defendants' Motion for Summary Judgment filed by State of California, State of Colorado, State of Connecticut, State of Delaware, State of Hawaii, State of Illinois, State of Maine, State of Maryland, State of Massachusetts, State of Michigan, State of Nevada, State of New Jersey, State of New Mexico, State of New York, State of North Carolina, State of Oregon, State of Pennsylvania, State of Rhode Island, State of Vermont, State of Washington, The District of Columbia re 20 (p.286) MOTION to Dismiss for Lack of Jurisdiction *First Amended Complaint*Motion to Dismiss for Failure to State a Claim, 12 (p.168) MOTION to Dismiss for Lack of Jurisdiction Motion to Dismiss for Failure to State a Claim (mmw) (Entered: 01/28/2022) |
| 01/28/2022 | 62 (p.1009) | MOTION for Summary Judgment filed by Xavier Becerra, United States of America, Martin J. Walsh, Janet L. Yellen (Lynch, Christopher) (Entered: 01/28/2022) |
| 01/28/2022 | 63 (p.1012) | RESPONSE filed by Xavier Becerra, United States of America, Martin J. Walsh, Janet L. Yellen re: 44 (p.529) MOTION for Summary Judgment (Lynch, Christopher) (Entered: 01/28/2022) |
| 01/28/2022 | 64 (p.1015) | Brief/Memorandum in Support filed by Xavier Becerra, United States of America, Martin J. Walsh, Janet L. Yellen re 63 (p.1012) Response/Objection, 62 (p.1009) MOTION for Summary Judgment (Attachments: # 1 (p.35) Proposed Order) (Lynch, Christopher) (Entered: 01/28/2022) |
| 01/28/2022 | 65 (p.1089) | Appendix in Support filed by Xavier Becerra, United States of America, Martin J. Walsh, Janet L. Yellen re 63 (p.1012) Response/Objection, 62 (p.1009) MOTION for Summary Judgment , 64 (p.1015) Brief/Memorandum in Support of Motion, (Lynch, Christopher) (Entered: 01/28/2022) |
| 02/04/2022 | 66 (p.1547) | Unopposed MOTION for Leave to File AMICI CURIAE BRIEF IN SUPPORT OF DEFENDANTS filed by 20 Health Policy Experts (Attachments: # 1 (p.35) Proposed Order, # 2 (p.101) Exhibit(s) Amici Curiae Brief, # 3 (p.103) Exhibit(s) Appendix to Amici Curiae Brief. Party 20 Health Policy Experts, the APHA, and the AAMC added.Attorney Kaylynn Danielle Webb added to party 20 Health Policy Experts(pty:am) (Webb, Kaylynn) (Entered: 02/04/2022) |
| 02/07/2022 | 67 (p.1583) | ORDER: The Court GRANTS the 66 (p.1547) motion and DIRECTS the Clerk of Court to file Exhibit 2 (ECF No. 66-2) as the amici brief and Exhibit 3 (ECF No. 66-3) as the appendix to the amici brief. (Ordered by Judge Reed C. O'Connor on 2/7/2022) (mmw) (Entered: 02/07/2022) |
| 02/07/2022 | 68 (p.1584) | AMICUS BRIEF in Support of Defendants' 62 (p.1009) Motion for Summary Judgment filed by 20 Health Policy Experts, The American Public Health Association, The Association of American Medical Colleges (mmw) (Entered: 02/07/2022) |
| 02/07/2022 | 69 (p.1611) | Appendix in Support filed by 20 Health Policy Experts, The American Public Health Association, The Association of American Medical Colleges re 68 (p.1584) Amicus Brief (mmw) (Entered: 02/07/2022) |

| | | |
|---|---|---|
| 02/25/2022 | 70 (p.1614) | MOTION for Extension of Time to File Response/Reply to 44 (p.529) MOTION for Summary Judgment , 62 (p.1009) MOTION for Summary Judgment filed by Braidwood Management Inc, John Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Gregory Scheideman, Joel Starnes (Attachments: # 1 (p.35) Proposed Order) (Mitchell, Jonathan) (Entered: 02/25/2022) |
| 02/26/2022 | 71 (p.1619) | ORDER granting 70 (p.1614) Motion to Extend Time to File Response/Reply. Plaintiffs shall file their combined reply and response brief no later than Monday, March 14, 2022. Defendants shall file their reply brief in support of their cross-motion for summary judgment no later than April 4, 2022. (Ordered by Judge Reed C. O'Connor on 2/26/2022) (chmb) (Entered: 02/26/2022) |
| 03/13/2022 | 72 (p.1620) | MOTION for Extension of Time to File Response/Reply to 44 (p.529) MOTION for Summary Judgment , 62 (p.1009) MOTION for Summary Judgment filed by Braidwood Management Inc, John Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Gregory Scheideman, Joel Starnes (Attachments: # 1 (p.35) Proposed Order) (Mitchell, Jonathan) (Entered: 03/13/2022) |
| 03/14/2022 | 73 (p.1625) | ORDER: Before the Court is Plaintiffs' 72 (p.1620) Motion for Extension of Time for Plaintiffs to File Reply Brief in Support of Motion for Summary Judgment. The Court GRANTS the motion. (see order) (Ordered by Judge Reed C. O'Connor on 3/14/2022) (mmw) (Entered: 03/14/2022) |
| 03/28/2022 | 74 (p.1626) | RESPONSE filed by Braidwood Management Inc, John Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Gregory Scheideman, Joel Starnes re: 62 (p.1009) MOTION for Summary Judgment (Attachments: # 1 (p.35) Exhibit(s)) (Mitchell, Jonathan) (Entered: 03/29/2022) |
| 03/30/2022 | 75 (p.1681) | MOTION for Extension of Time to File Response/Reply to 74 (p.1626) Response/Objection, 73 (p.1625) Order Setting Deadline/Hearing,, Terminate Motions, filed by Xavier Becerra, United States of America, Martin J Walsh, Janet L. Yellen (Attachments: # 1 (p.35) Proposed Order) (Lynch, Christopher) (Entered: 03/30/2022) |
| 03/31/2022 | 76 (p.1684) | ORDER granting 75 (p.1681) ...Before the Court is Defendants Consent Motion to Amend Briefing Schedule (ECF No. 75 (p.1681) ), filed March 30, 2022. Noting the motion is unopposed, the Court GRANTS the motion and ORDERS that Defendants shall file their reply brief in support of their cross- motion for summary judgment no later than May 6, 2022. (Ordered by Judge Reed C. O'Connor on 3/31/2022) (wxc) (Entered: 03/31/2022) |
| 05/03/2022 | 77 (p.1685) | MOTION for Extension of Time to File Response/Reply to 76 (p.1684) Order on Motion to Extend Time to File Response/Reply, filed by Xavier Becerra, United States of America, Martin J Walsh, Janet L. Yellen (Attachments: # 1 (p.35) Proposed Order) (Lynch, Christopher) (Entered: 05/03/2022) |
| 05/04/2022 | 78 (p.1688) | ORDER: Before the Court is the 77 (p.1685) Consent Motion to Amend Briefing Schedule. The Court GRANTS the motion and ORDERS that Defendants' reply is due May 26, 2022. (Ordered by Judge Reed C. O'Connor on 5/4/2022) (mmw) (Entered: 05/04/2022) |
| 05/05/2022 | 79 (p.1689) | Unopposed MOTION to Withdraw as Attorney filed by Alex M. Azar II, Xavier Becerra, Steven T Mnuchin, Eugene Scalia, United States of America, Martin J Walsh, Janet L. Yellen with Brief/Memorandum in Support. (Attachments: # 1 (p.35) Proposed Order) (Von Bokern-DOJ, Jordan) (Entered: 05/05/2022) |

| | | |
|---|---|---|
| 05/06/2022 | 80 (p.1694) | ORDER: Before the Court is Defendants' Unopposed Motion to Withdraw (ECF No. 79 (p.1689) ), filed May 5, 2022. The Court GRANTS the motion and DIRECTS the Clerk of Court to terminate Jordan L. Von Bokern of the United States Department of Justice as counsel for Defendants. (Ordered by Judge Reed C. O'Connor on 5/6/2022) (mmw) (Entered: 05/06/2022) |
| 05/25/2022 | 81 (p.1695) | MOTION Extension of Page Limitation for Reply in Support of Cross Motion for Summary Judgment filed by Xavier Becerra, United States of America, Martin J Walsh, Janet L. Yellen (Attachments: # 1 (p.35) Proposed Order) (Lynch, Christopher) (Entered: 05/25/2022) |
| 05/25/2022 | 82 (p.1699) | ORDER: Before the Court is Defendants' Unopposed Motion for Extension of Page Limit for Defendants Reply (ECF No. 81 (p.1695) ), filed May 25, 2022. Noting the motion is unopposed, the Court GRANTS the motion and ORDERS that Defendants' reply brief shall be no longer than 35 pages. (Ordered by Judge Reed C. O'Connor on 5/25/2022) (mmw) (Entered: 05/25/2022) |
| 05/26/2022 | 83 (p.1700) | REPLY filed by Xavier Becerra, United States of America, Martin J Walsh, Janet L. Yellen re: 62 (p.1009) MOTION for Summary Judgment (Lynch, Christopher) (Entered: 05/26/2022) |
| 07/07/2022 | 84 (p.1743) | ORDER...Before the Court are Plaintiffs Motion for Summary Judgment (ECF No. 44 (p.529) ), filed November 15, 2021; and Defendants Cross-Motion for Summary Judgment (ECF No. 62 (p.1009) ), filed January 28, 2022. The Court ORDERS a motions hearing to take place on Tuesday, July 26, 2022, at 9:00 AM in the Second Floor Courtroom of the Federal Courthouse in Fort Worth, Texas. (Ordered by Judge Reed C. O'Connor on 7/7/2022) (wxc) (Entered: 07/07/2022) |
| 07/26/2022 | 85 | ELECTRONIC Minute Entry for proceedings held before Judge Reed C. O'Connor: Motion Hearing held on 7/26/2022 re 44 (p.529) Motion for Summary Judgment filed by Gregory Scheideman, John Scott Kelley, Joel Miller, Kelley Orthodontics, Joel Starnes, Ashley Maxwell, Braidwood Management Inc, Zach Maxwell, 62 (p.1009) Motion for Summary Judgment filed by Martin J Walsh, United States of America, Xavier Becerra, Janet L Yellen. Attorney Appearances: Plaintiff - Jonathan Mitchell; Defense - Christopher Lynch, Brian Stoltz. (Court Reporter: Zoie Williams) (No exhibits) Time in Court - 1:40. (chmb) (Entered: 07/26/2022) |
| 08/02/2022 | 86 (p.1744) | Supplemental Document by Xavier Becerra, United States of America, Martin J Walsh, Janet L Yellen as to 63 (p.1012) Response/Objection, 62 (p.1009) MOTION for Summary Judgment . (Lynch, Christopher) (Entered: 08/02/2022) |
| 08/03/2022 | 87 (p.1753) | NOTICE of *Supplemental Authority* filed by Braidwood Management Inc, John Scott Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Donovan Riddle, Karla Riddle, Gregory Scheideman, Joel Starnes (Attachments: # 1 (p.35) Exhibit(s)) (Mitchell, Jonathan) (Entered: 08/03/2022) |
| 08/05/2022 | 88 (p.1765) | NOTICE of *Errata or Clarification* re: 86 (p.1744) Supplemental Document filed by Xavier Becerra, United States of America, Martin J Walsh, Janet L Yellen (Lynch, Christopher) (Entered: 08/05/2022) |
| 08/10/2022 | 89 (p.1768) | MOTION to Amend Caption filed by Braidwood Management Inc, John Scott Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Gregory Scheideman, Joel Starnes (Attachments: # 1 (p.35) Proposed Order) (Mitchell, Jonathan) (Entered: 08/10/2022) |
| 08/11/2022 | | |

| | 90 (p.1773) | ORDER Before the Court is Plaintiffs Unopposed Motion to Amend Caption 89 (p.1768) , filed August 10, 2022. Noting the motion is unopposed, the Court GRANTS the motion and DIRECTS the Clerk of Court to update the case caption as reflected in this order (Ordered by Judge Reed C. O'Connor on 8/11/2022) (jgg) (Entered: 08/11/2022) |
|---|---|---|
| 08/23/2022 | 91 (p.1774) | NOTICE of *Supplemental Authority* filed by Braidwood Management Inc, John Scott Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Gregory Scheideman, Joel Starnes (Attachments: # 1 (p.35) Exhibit(s)) (Mitchell, Jonathan) (Entered: 08/23/2022) |
| 09/07/2022 | 92 (p.1780) | MEMORANDUM OPINION & ORDER: The Court ORDERS that motions are GRANTED in part and DENIED in part 44 (p.529) 62 (p.1009) .The parties shall file a joint status report by September 9, 2022, outlining the remaining issues to be decided and proposing a schedule for the remaining briefing. (Ordered by Judge Reed C. O'Connor on 9/7/2022) (jgg) (Entered: 09/07/2022) |
| 09/08/2022 | 93 (p.1822) | Consent MOTION for Extension of Time to File Joint Status Report*to September 16, 2022* filed by Xavier Becerra, United States of America, Martin J Walsh, Janet L Yellen (Attachments: # 1 (p.35) Proposed Order) (Lynch, Christopher) (Entered: 09/08/2022) |
| 09/08/2022 | 94 (p.1825) | ORDER granting 93 (p.1822) Motion for Extension of Time to File Joint Status Report. Status Report due by 9/16/2022. (Ordered by Judge Reed C. O'Connor on 9/8/2022) (chmb) (Entered: 09/08/2022) |
| 09/16/2022 | 95 (p.1826) | Joint STATUS REPORT filed by Xavier Becerra, United States of America, Martin J Walsh, Janet L Yellen. (Lynch, Christopher) (Entered: 09/16/2022) |
| 09/22/2022 | 96 (p.2229) | Notice of Filing of Official Electronic Transcript of Motion Hearing Proceedings held on 7.26.22 before Judge Reed C. O'Connor. Court Reporter/Transcriber Zoie Williams, Telephone number 817.850.6630. Parties are notified of their duty to review the transcript. A copy may be purchased from the court reporter or viewed at the clerk's office. If the transcript contains personal identifiers that must be redacted under MO 61, Fed.R.Civ.P. 5.2 or Fed.R.Crim.P. 49.1, or if the transcript contains the name of a minor child victim or a minor child witness that must be redacted under 18 U.S.C. § 3509, file a Redaction Request - Transcript within 21 days. If no action is taken, the entire transcript will be made available through PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. (111 pages) Redaction Request due 10/13/2022. Redacted Transcript Deadline set for 10/24/2022. Release of Transcript Restriction set for 12/21/2022. (zow) (Entered: 09/22/2022) |
| 09/28/2022 | 97 (p.1828) | SCHEDULING ORDER ON SUPPLEMENTAL BRIEFING: Deadline for plaintiffs to file their supplemental motion for summary judgment: October 24, 2022. Deadline for defendants to file combined response to plaintiffs supplemental motion for summary judgment and defendants supplemental cross-motion for summary judgment: 30 days after plaintiff files supplemental motion for summary judgment. Deadline for plaintiffs to file combined response to defendants supplemental motion for summary judgment and reply brief in support of plaintiffs supplemental motion for summary judgment: 30 days after defendants file cross-motion for summary judgment. Deadline for defendants to file reply brief in support of defendants supplemental motion for summary judgment: 21 days after plaintiffs file combined response to defendants supplemental motion for summary judgment and reply brief in support of plaintiffs supplemental motion for summary judgment. (Ordered by |

| | | Judge Reed C. O'Connor on 9/28/2022) (jgg) (Entered: 09/28/2022) |
|---|---|---|
| 10/24/2022 | 98 (p.1830) | Brief/Memorandum in Support filed by Braidwood Management Inc, John Scott Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Gregory Scheideman, Joel Starnes re 97 (p.1828) Order Setting Deadline/Hearing,,,, (Mitchell, Jonathan) (Entered: 10/24/2022) |
| 11/23/2022 | 99 (p.1854) | RESPONSE filed by Xavier Becerra, United States of America, Martin J Walsh, Janet L Yellen re: 98 (p.1830) Brief/Memorandum in Support of Motion, (Lynch, Christopher) (Entered: 11/23/2022) |
| 11/23/2022 | 100 (p.1885) | Supplemental Document by Xavier Becerra, United States of America, Martin J Walsh, Janet L Yellen as to 99 (p.1854) Response/Objection *SUPPLEMENTAL APPENDIX*. (Lynch, Christopher) (Entered: 11/23/2022) |
| 11/29/2022 | 101 (p.1889) | Consent MOTION to Extend Time Briefing Schedule filed by Xavier Becerra, United States of America, Martin J Walsh, Janet L Yellen (Attachments: # 1 (p.35) Proposed Order) (Lynch, Christopher) (Entered: 11/29/2022) |
| 11/30/2022 | 102 (p.1892) | SECOND ORDER ON SUPPLEMENTAL BRIEFING Before the Court is Defendants Consent Motion to Amend Briefing Schedule 101 (p.1889) , filed November 29, 2022. Having reviewed the motion and finding good cause to amend, and noting the agreement of the parties, the Court ORDERS the following amended briefing schedule: Plaintiffs Combined Supplemental Reply & Response to Supplemental Cross-Motion for Summary Judgment January 6, 2023 Defendants Reply in Support of Supplemental Cross- Motion for Summary Judgment January 27, 2023 (Ordered by Judge Reed C. O'Connor on 11/30/2022) (jgg) (Entered: 11/30/2022) |
| 11/30/2022 | 103 (p.1893) | MOTION for Leave to File Amici Curiae Brief Supporting Defendants*Motion* filed by AMERICAN CANCER SOCIETY, AMERICAN CANCER SOCIETY CANCER ACTION NETWORK, American Kidney Fund, AMERICAN LUNG ASSOCIATION, Arthritis Foundation, CanerCare, Cancer Support Community, Cystic Fibrosis Foundation, Epilepsy Foundation, Hemophilia Federation of America, Leukemia and Lymphoma Society, National Minority Quality Forum, NATIONAL MULTIPLE SCLEROSIS SOCIETY, National Patient Advocate Foundation, The AIDS Institute, WomenHeart (Attachments: # 1 (p.35) Proposed Order, # 2 (p.101) Exhibit(s))Attorney Beth Bivans Petronio added to party AMERICAN CANCER SOCIETY(pty:mov), Attorney Beth Bivans Petronio added to party AMERICAN CANCER SOCIETY CANCER ACTION NETWORK(pty:mov), Attorney Beth Bivans Petronio added to party American Kidney Fund(pty:mov), Attorney Beth Bivans Petronio added to party AMERICAN LUNG ASSOCIATION(pty:mov), Attorney Beth Bivans Petronio added to party Arthritis Foundation(pty:mov), Attorney Beth Bivans Petronio added to party CanerCare(pty:mov), Attorney Beth Bivans Petronio added to party Cancer Support Community(pty:mov), Attorney Beth Bivans Petronio added to party Cystic Fibrosis Foundation(pty:mov), Attorney Beth Bivans Petronio added to party Epilepsy Foundation(pty:mov), Attorney Beth Bivans Petronio added to party Hemophilia Federation of America(pty:mov), Attorney Beth Bivans Petronio added to party Leukemia and Lymphoma Society(pty:mov), Attorney Beth Bivans Petronio added to party National Minority Quality Forum(pty:mov), Attorney Beth Bivans Petronio added to party NATIONAL MULTIPLE SCLEROSIS SOCIETY(pty:mov), Attorney Beth Bivans Petronio added to party National Patient Advocate Foundation(pty:mov), Attorney Beth Bivans Petronio added to party The AIDS Institute(pty:mov), Attorney Beth Bivans Petronio added to party |

| | | WomenHeart(pty:mov) (Petronio, Beth) (Entered: 11/30/2022) |
|---|---|---|
| 11/30/2022 | 104 (p.1928) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-13336540) filed by American Medical Association, American College of Obstetricians and Gynecologists, Society for Maternal-Fetal Medicine, American Academy of Pediatrics, American Medical Womens Association, American Academy of Family Physicians, National Medical Association, Infectious Diseases Society of America. Party Amici Curiae American Medical Association, the American College of Obstetricians and Gynecologists, the Society for Maternal-Fetal Medicine, the American Academy of Pediatrics, the American Medical Womens Association, the American Academy of Family Physicians, the National Medical Association, and the Infectious Diseases Society of America added.Attorney John T Lewis added to party American Medical Association(pty:am), Attorney John T Lewis added to party American College of Obstetricians and Gynecologists(pty:am), Attorney John T Lewis added to party Society for Maternal-Fetal Medicine(pty:am), Attorney John T Lewis added to party American Academy of Pediatrics(pty:am), Attorney John T Lewis added to party American Medical Womens Association(pty:am), Attorney John T Lewis added to party American Academy of Family Physicians(pty:am), Attorney John T Lewis added to party National Medical Association(pty:am), Attorney John T Lewis added to party Infectious Diseases Society of America(pty:am) (Lewis, John) (Entered: 11/30/2022) |
| 11/30/2022 | 105 (p.1933) | MOTION for Leave to File Amici Curiae Brief filed by American Academy of Family Physicians, American Academy of Pediatrics, American College of Obstetricians and Gynecologists, American Medical Association, American Medical Womens Association, Infectious Diseases Society of America, National Medical Association, Society for Maternal-Fetal Medicine with Brief/Memorandum in Support. (Attachments: # 1 (p.35) Proposed Amici Brief, # 2 (p.101) Proposed Order) (Lewis, John) (Entered: 11/30/2022) |
| 12/01/2022 | 106 (p.1970) | ORDER Before the Court is the Application for Admission Pro Hac Vice of John T. Lewis 104 (p.1928) filed November 30, 2022. The Court GRANTS the application and directs the Clerk to add Mr. Lewis as counsel of record for Amici. Also before the Court are the Motions for Leave to File Brief Amici Curiae 103 (p.1893) , 105 (p.1933) . Having considered the motions and applicable law, the Court GRANTS the motions and directs the Clerk to docket the proposed amicus brief attached to each motion. (Ordered by Judge Reed C. O'Connor on 12/1/2022) (jgg) (Entered: 12/01/2022) |
| 12/01/2022 | 107 (p.1971) | Brief/Memorandum in Support filed by American Cancer Society, American Cancer Society Cancer Action Network, American Kidney Fund, American Lung Association, Arthritis Foundation, Cancer Support Community, CancerCare, Cystic Fibrosis Foundation, Epilepsy Foundation, Hemophilia Federation of America, Leukemia and Lymphoma Society, National Minority Quality Forum, National Multiple Sclerosis Society, National Patient Advocate Foundation, The AIDS Institute, WomenHeart re 44 (p.529) MOTION for Summary Judgment (jgg) (Entered: 12/02/2022) |
| 12/01/2022 | 108 (p.2000) | Brief/Memorandum in Support filed by American Academy of Family Physicians, American Academy of Pediatrics, American College of Obstetricians and Gynecologists, American Medical Association, American Medical Womens Association, Infectious Diseases Society of America, National Medical Association, Society for Maternal-Fetal Medicine re 44 (p.529) MOTION for Summary Judgment |

| | | |
|---|---|---|
| | | (jgg) (Entered: 12/02/2022) |
| 12/05/2022 | 109 (p.2029) | MOTION to Amend/Correct 104 (p.1928) Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-13336540) filed by American Academy of Family Physicians, American Academy of Pediatrics, American College of Obstetricians and Gynecologists, American Medical Association, American Medical Womens Association, Infectious Diseases Society of America, National Medical Association, Society for Maternal-Fetal Medicine (Attachments: # 1 (p.35) Amended PHV Application) (Lewis, John) (Entered: 12/05/2022) |
| 12/06/2022 | 110 | ELECTRONIC ORDER granting 109 (p.2029) Motion to Amend/Correct. The Court GRANTS the motion to amend/correct application and directs the Clerk to ensure Mr. Lewis is added as counsel of record for Amici. (Ordered by Judge Reed C. O'Connor on 12/6/2022) (chmb) (Entered: 12/06/2022) |
| 01/06/2023 | 111 (p.2035) | REPLY filed by Braidwood Management Inc, John Scott Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Gregory Scheideman, Joel Starnes re: 44 (p.529) MOTION for Summary Judgment (Attachments: # 1 (p.35) Declaration(s), # 2 (p.101) Declaration(s), # 3 (p.103) Declaration(s)) (Mitchell, Jonathan) (Entered: 01/06/2023) |
| 01/27/2023 | 112 (p.2072) | REPLY filed by Xavier Becerra, United States of America, Martin J Walsh, Janet L Yellen re: 111 (p.2035) Reply, (Lynch, Christopher) (Entered: 01/27/2023) |
| 03/30/2023 | 113 (p.2103) | SECOND MEMORANDUM OPINION & ORDER ON REMEDIES IN RELATION TO PLAINTIFFS MOTION FOR SUMMARY JUDGMENT The Court DISMISSES with prejudice the religious objector Plaintiffs, including Braidwood Management Inc.s, contraceptive mandate claims. The non-religious objector Plaintiffs contraceptive mandate claims are DISMISSED without prejudice for lack of subject matter jurisdiction. The parties cross-motions for summary judgment are GRANTED in part and DENIED in part. For the reasons discussed, the remaining Plaintiffs have shown they are entitled to declaratory and injunctive relief as to their RFRA claims and to declaratory and injunctive relief and to a universal remedy with respect to their Appointments Clause claim as it relates to PSTF. (Ordered by Judge Reed C. O'Connor on 3/30/2023) (jgg) (Main Document 113 replaced on 4/4/2023) (jgg). (Entered: 03/30/2023) |
| 03/30/2023 | 114 (p.2131) | FINAL JUDGMENT This action came on for consideration by the Court, and the issues having been duly considered and a decision duly rendered in the Courts orders partially granting and partially denying the parties motions for summary judgment. (See order for details) (Ordered by Judge Reed C. O'Connor on 3/30/2023) (jgg) (Entered: 03/30/2023) |
| 03/31/2023 | 115 (p.2133) | NOTICE OF APPEAL as to 113 (p.2103) Memorandum Opinion and Order, 114 (p.2131) Judgment, 92 (p.1780) Memorandum Opinion and Order,, Order Setting Deadline/Hearing, to the Fifth Circuit by Xavier Becerra, United States of America, Martin J Walsh, Janet L Yellen. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner |

| | | litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Lynch, Christopher) (Entered: 03/31/2023) |
|---|---|---|
| 04/04/2023 | 116 (p.2136) | NOTICE OF DOCUMENT REPLACEMENT The Court docketed its Second Memorandum Opinion and Order on Remedies 113 (p.2103) on March 30, 2023. The Clerk of Court is directed to replace the original document to correct grammatical errors found on pages 14 and 17. (Ordered by Judge Reed C. O'Connor on 4/4/2023) (jgg) (Entered: 04/04/2023) |
| 04/05/2023 | 117 (p.2137) | USCA Case Number 23-10326 in United States Court of Appeals 5th Circuit for 115 (p.2133) Notice of Appeal, filed by Xavier Becerra, Martin J Walsh, Janet L Yellen, United States of America. (tle) (Entered: 04/05/2023) |
| 04/06/2023 | 118 (p.2141) | NOTICE OF APPEAL as to 114 (p.2131) Judgment, to the Fifth Circuit by Braidwood Management Inc, John Scott Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Gregory Scheideman, Joel Starnes. Filing fee $505, receipt number ATXNDC-13645476. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Mitchell, Jonathan) (Entered: 04/06/2023) |
| 04/10/2023 | 119 (p.2144) | Transcript Order Form: re 115 (p.2133) Notice of Appeal, transcript not requested Reminder: If the transcript is ordered for an appeal, Appellant must also file a copy of the order form with the appeals court. (Lynch, Christopher) (Entered: 04/10/2023) |
| 04/11/2023 | 120 (p.2146) | Joint MOTION for Extension of Time to File Application for Costs and Attorneys' Fees filed by Braidwood Management Inc, John Scott Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Gregory Scheideman, Joel Starnes (Attachments: # 1 (p.35) Proposed Order) (Mitchell, Jonathan) (Entered: 04/11/2023) |
| 04/12/2023 | 121 (p.2150) | MOTION to Stay re 114 (p.2131) Judgment, *Motion for Partial Stay of Judgment Pending Appeal* filed by Xavier Becerra, United States of America, Martin J Walsh, Janet L Yellen with Brief/Memorandum in Support. (Attachments: # 1 (p.35) Declaration(s) of Jeff Wu, # 2 (p.101) Declaration(s) of Lisa M. Gomez, # 3 (p.103) Proposed Order) (Lynch, Christopher) (Entered: 04/12/2023) |
| 04/13/2023 | 122 (p.2183) | ORDER Before the Court is Defendants Motion for Partial Stay of Judgment Pending Appeal 121 (p.2150) , filed April 12, 2023. To expedite consideration of the same before the Defendants requested date of Aril 20, 2023, the Court ORDERS Plaintiffs to respond no later than April 17, 2023 at 5:00 p.m. CST. Defendants may file their reply no later than April 18, 2023. (Ordered by Judge Reed C. O'Connor on 4/13/2023) (jgg) (Entered: 04/13/2023) |
| 04/13/2023 | 123 (p.2184) | ORDER Before the Court is the parties Joint Motion to Extend Deadline for Filing Application for Attorneys Fees 120 (p.2146) , filed April 11, 2023. Having considered the motion and finding good cause, the Court GRANTS the motion and |

| | | |
|---|---|---|
| | | ORDERS Plaintiffs to submit their application for costs and fees no later than 14 days after the conclusion of direct appeals. (Ordered by Judge Reed C. O'Connor on 4/13/2023) (jgg) (Entered: 04/13/2023) |
| 04/17/2023 | 124 (p.2185) | MOTION for Extension of Time to File Response/Reply to 121 (p.2150) MOTION to Stay re 114 (p.2131) Judgment, *Motion for Partial Stay of Judgment Pending Appeal* filed by Braidwood Management Inc, John Scott Kelley, Kelley Orthodontics, Ashley Maxwell, Zach Maxwell, Joel Miller, Gregory Scheideman, Joel Starnes (Attachments: # 1 (p.35) Proposed Order) (Mitchell, Jonathan) (Entered: 04/17/2023) |
| 04/17/2023 | 125 (p.2190) | ORDER Having considered the motion 124 (p.2185) , the Court finds good cause to GRANT Plaintiffs reasonable request for a brief extension. The Court therefore ORDERS Plaintiffs to respond no later than 11:59 p.m. CST on April 18, 2023. The Government may reply no later than April 19, 2023. (Ordered by Judge Reed C. O'Connor on 4/17/2023) (jgg) (Entered: 04/17/2023) |
| 04/17/2023 | 126 (p.2192) | USCA Case Number 23-10326 in United States Court of Appeals 5th Circuit for 118 (p.2141) Notice of Appeal, filed by Gregory Scheideman, John Scott Kelley, Joel Miller, Kelley Orthodontics, Joel Starnes, Ashley Maxwell, Braidwood Management Inc, Zach Maxwell. (tle) (Entered: 04/17/2023) |
| 04/18/2023 | 127 (p.2196) | RESPONSE filed by Braidwood Management Inc re: 121 (p.2150) MOTION to Stay re 114 (p.2131) Judgment, *Motion for Partial Stay of Judgment Pending Appeal* (Mitchell, Jonathan) (Entered: 04/18/2023) |
| 04/19/2023 | 128 (p.2208) | REPLY filed by Xavier Becerra, United States of America, Martin J Walsh, Janet L Yellen re: 121 (p.2150) MOTION to Stay re 114 (p.2131) Judgment, *Motion for Partial Stay of Judgment Pending Appeal* (Lynch, Christopher) (Entered: 04/19/2023) |
| 04/20/2023 | 129 (p.2218) | ORDER: The Court DEFERS ruling on Defendants motion while the Court considers the parties briefing on the merits. The Court ORDERS Defendantsas soon as practicalto (1) address their commitment to the assertions that, absent an emergency stay pending appeal, more than 150 million Americans preventive care services coverage will be disrupted; and (2) explain what evidence they have that insureds will lose their coverage as suggested in Defendants briefing. The Court will take this information into consideration when evaluating the merits of Defendants request for emergency relief and whether they have carried their burden to justify this Courts discretionary imposition of a stay pending appeal. (Ordered by Judge Reed C. O'Connor on 4/20/2023) (jgg) (Entered: 04/20/2023) |
| 04/21/2023 | 130 (p.2220) | REPLY filed by Xavier Becerra, United States of America, Martin J Walsh, Janet L Yellen re: 129 (p.2218) Order,,, (Attachments: # 1 (p.35) Exhibit(s) Ex. A Letter to Certain Members of Congress) (Lynch, Christopher) (Entered: 04/21/2023) |

**TAB 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

BRAIDWOOD MANAGEMENT, INC., *et al.*,

     Plaintiffs,

v.

XAVIER BECERRA, *et al.*,

     Defendants.

Civil Action No. 4:20-cv-00283-O

## DEFENDANTS' NOTICE OF APPEAL

Please take notice that all Defendants in the above-named case appeal to the United States Court of Appeals for the Fifth Circuit from this Court's Final Judgment, ECF No. 114, entered in this action on March 30, 2023, as well as all prior orders and decisions that merge into the judgment, including the Court's March 30, 2023 Second Memorandum Opinion and Order on Remedies in Relation to Plaintiffs' Motion for Summary Judgment, ECF No. 113, and the Court's September 7, 2022 Memorandum Opinion and Order, ECF No. 92.

LEIGHA SIMONTON
United States Attorney

*/s/ Brian W. Stoltz*
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:    214-659-8626
Facsimile:    214-659-8807
brian.stoltz@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

*/s/ Christopher M. Lynch*
CHRISTOPHER M. LYNCH
(D.C. Bar # 1049152)
Trial Attorney
U.S. Department of Justice
Civil Division
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 353-4537

**Defendants' Notice of Appeal – Page 1**

Fax: (202) 616-8470
Email: Christopher.M.Lynch@usdoj.gov

Attorneys for Defendants Xavier Becerra,
Janet L. Yellen, Julie A. Su, and the United States

**<u>Certificate of Service</u>**

On March 31, 2023, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties who have appeared in the case electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Christopher M. Lynch*
Christopher M. Lynch

**TAB 3**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **BRAIDWOOD MANAGEMENT INC., et al.,** | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:20-cv-00283-O** |
| | § | |
| **XAVIER BECERRA, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## FINAL JUDGMENT

This Judgment is issued pursuant to Fed. R. Civ. P. 58(a).

This action came on for consideration by the Court, and the issues having been duly considered and a decision duly rendered in the Court's orders partially granting and partially denying the parties' motions for summary judgment.

It is therefore **ORDERED**, **ADJUDGED**, and **DECREED** that:

1) All claims of Joel Miller and Gregory Scheideman in the above-entitled and numbered cause are hereby **DISMISSED without prejudice** for lack of subject matter jurisdiction.

2) The Advisory Committee on Immunization Practices (ACIP) and the Health Resources and Services Administration (HRSA) do not, on the record in this case, violate Article II's Appointments clause. Therefore, Braidwood Management Inc., Kelley Orthodontics, John Kelley, Joel Starnes, Zach Maxwell, and Ashley Maxwell's (remaining Plaintiffs) **Claim No. 1** as it pertains to ACIP and HRSA is **DISMISSED with prejudice** to the re-filing of same or any part thereof.

3) The U.S. Preventive Services Task Force's (PSTF) recommendations operating in conjunction with 42 U.S.C. § 300gg-13(a)(1) violate Article II's Appointments Clause and are therefore unlawful. Therefore, any and all agency actions taken to implement or enforce the preventive care coverage requirements in response to an "A" or "B" recommendation by the PSTF on or after March 23, 2010 are **VACATED** and Defendants and their officers, agents, servants, and employees are **ENJOINED** from implementing or enforcing 42 U.S.C. § 300gg-13(a)(1)'s

compulsory coverage requirements in response to an "A" or "B" rating from PSTF in the future.

Further, any and all agency action taken to implement or enforce the preventive care mandates in response to an "A" or "B" recommendation by PSTF on or after March 23, 2010 and made compulsory under 42 U.S.C. § 300gg-13(a)(1) are **DECLARED** unlawful as violative of the Appointments Clause. Therefore, Braidwood Management Inc. and Kelley Orthodontics, and to the extent applicable, individual Plaintiffs need not comply with the preventive care coverage recommendations of PSTF issued on or after March 23, 2010, because the members of the Task Force have not been appointed in a manner consistent with Article II's Appointments Clause. Accordingly, the Court **ENJOINS** Defendants and their officers, agents, servants, and employees from implementing or enforcing the same against these Plaintiffs.

4) 42 U.S.C. § 300gg-13(a)(1)–(a)(4) do not violate the nondelegation doctrine. Therefore, remaining Plaintiffs' **Claim No. 2** is **DISMISSED with prejudice** to the re-filing of same or any part thereof.

5) The operation of 42 U.S.C. § 300gg-13(a)(1) does not violate Article II's Vesting Clause. Therefore, remaining Plaintiffs' **Claim No. 3** is **DISMISSED with prejudice** to the re-filing of same or any part thereof.

6) Remaining Plaintiffs' **Claim No. 4** is **DISMISSED with prejudice** to the re-filing of same or any part thereof for failure to state a claim upon which relief may be granted.

7) The PrEP mandate violates remaining Plaintiffs' rights under the Religious Freedom Restoration Act and is therefore **DECLARED** unlawful. As such, remaining Plaintiffs need not comply with the preventive care coverage recommendations of PSTF issued on or after March 23, 2010 and the Court **ENJOINS** Defendants and their officers, agents, servants, and employees from implementing or enforcing the PrEP mandate as against these Plaintiffs.

8) All costs shall be paid by the party incurring the same.

9) All relief not expressly granted herein is denied.

The Clerk of Court is **DIRECTED** to close the above-captioned case.

**SO ORDERED** on this **30th day** of **March, 2023**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

**TAB 4**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| **BRAIDWOOD MANAGEMENT INC. et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **Civil Action No. 4:20-cv-00283-O** |
| | § | |
| **XAVIER BECERRA et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Plaintiffs' Motion for Summary Judgment (ECF Nos. 44–46), filed November 15, 2021; Defendants' Combined Response and Cross-Motion for Summary Judgment (ECF Nos. 62–65), filed January 28, 2022; Plaintiffs' Combined Response and Reply (ECF No. 74), filed March 28, 2022; and Defendants' Reply (ECF No. 83), filed May 26, 2022. The Court held a hearing on the motions on July 26, 2022. Having considered the motions, arguments, and applicable law, the Court **ORDERS** that motions are **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND

### A.  The Law

The Patient Protection and Affordable Care Act ("ACA") requires most private health insurance to cover certain "preventive care." 42 U.S.C. § 300gg-13. Specifically, group health plans and health insurance issuers must "provide coverage for and shall not impose any cost sharing requirements for" four categories of preventive care. *Id.* The ACA empowers three agencies affiliated with the Department of Health and Human Services ("HHS") to determine what services fall within those four categories. *Id.*

First, the U.S. Preventive Services Task Force ("PSTF") recommends "evidence-based items or services that have in effect a rating of 'A' or 'B.'" *Id.* § 300gg-13(a)(1). Second, the Advisory Committee on Immunization Practices ("ACIP") recommends certain immunizations. *Id.* § 300gg-13(a)(2). Third, the Health Resources and Services Administration ("HRSA") issues "comprehensive guidelines" with respect to infants, children, and adolescents for "evidence-informed preventive care and screenings." *Id.* § 300gg-13(a)(3). And fourth, HRSA issues "comprehensive guidelines" with respect to women for "such additional preventive care and screenings" not covered under § 300gg-13(a)(1). *Id.* § 300gg-13(a)(4). Private health insurance must cover the services identified by the three agencies under these categories.[1] *Id.* § 300gg-13(a).

### 1. PSTF

PSTF is a body of volunteers "with appropriate expertise" to make healthcare recommendations. 42 U.S.C. § 299b-4(a)(1). The Director of the Agency for Healthcare Research and Quality ("AHRQ"), an agency within HHS, "convene[s]" PSTF. *Id.* The purpose of PSTF is to "review the scientific evidence related to the effectiveness, appropriateness, and cost-effectiveness of clinical preventive services for the purpose of developing recommendations for the health care community, and updating previous clinical preventive recommendations." *Id.* By statute, PSTF and its members "shall be independent and, to the extent practicable, not subject to political pressure." *Id.* § 299b-4(a)(6).

In 2019, PSTF recommended pre-exposure prophylaxis ("PrEP") drugs to prevent HIV infection. *See* Defs.' App. 385, ECF No. 65. PSTF issued an "A" recommendation for PrEP drugs for individuals who are at high risk of HIV acquisition, which meant that health insurance plans must cover PrEP drugs under 42 U.S.C. § 300gg-13(a)(1). *See* Pls.' App. 12, ECF No. 46. The

---

[1] The Court refers to § 300gg-13(a)(1) through (a)(4) collectively as the "preventive-care mandates."

23-10326.1781

regulations delayed implementation of the coverage until June 2020. *See* 45 C.F.R. § 147.130(b)(1).

### 2. ACIP

The HHS Secretary created ACIP as an advisory council under 42 U.S.C. § 217a(a) to provide guidance to HHS on vaccines. *See* Defs.' App. 152, ECF No. 65. ACIP reports to the Director of the Centers for Disease Control and Prevention ("CDC"), who exercises delegated authority from the HHS Secretary. *See id.* (first citing 42 U.S.C. § 243; and then citing *id.* § 247b). A vaccine recommendation from ACIP "is considered in effect after it has been adopted by the Director of the [CDC]." 45 C.F.R. § 147.130(a)(1)(ii). Once the CDC Director adopts a vaccine recommendation, ACIP publishes the recommendation in a weekly report. *See* Defs.' App. 152, ECF No. 65.

ACIP recommends the HPV vaccine to prevent new HPV infections and HPV-associated diseases, including some cancers. In 2007, ACIP began recommending the HPV vaccine for females ages eleven to twelve. *See* CDC, *Quadrivalent Human Papillomavirus Vaccine: Recommendations of the Advisory Committee on Immunization Practices (ACIP)* (Mar. 23, 2007), https://www.cdc.gov/mmwr/PDF/rr/rr5602.pdf. ACIP currently recommends the HPV vaccine for all children ages eleven to twelve, plus various catch-up vaccination plans for older populations. *See* Elissa Meites et al., *Human Papillomavirus Vaccination for Adults: Updated Recommendations of the Advisory Committee on Immunization Practices* (Aug. 16, 2019), https://www.cdc.gov/mmwr/volumes/68/wr/pdfs/mm6832a3-H.pdf. Health insurance plans must cover the HPV vaccine under 42 U.S.C. § 300gg-13(a)(2).

### 3. HRSA

The HHS Secretary created HRSA to provide direction to programs and activities within HHS. *See* Health Resources and Services Administration; Statement of Organization, Functions,

3

and Delegations of Authority, 47 Fed. Reg. 38,409 (Aug. 31, 1982). HRSA is directed by an Administrator who reports to the Assistant Secretary of HHS. *Id.* at 38,410. The HRSA Administrator, like the CDC Director, is a non-career political appointee whose employment may be terminated by the agency at any time. *See* 5 C.F.R. § 317.605; Defs.' App. 42, ECF No. 65.

In 2010, HRSA promulgated a series of comprehensive guidelines for infants, children, and adolescents. The guidelines include counseling for alcohol abuse, screening and behavioral counseling for sexually transmitted infections, screening and behavior interventions for obesity, and counseling for tobacco use. *See Interim Final Rules for Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act*, 75 Fed. Reg. 41,726, 47,740–55 (July 19, 2010). "[A] recommendation or guideline in the comprehensive guidelines supported by HRSA is considered to be issued on the date on which it is accepted by the Administrator of HRSA or, if applicable, adopted by the Secretary of HHS." *Coverage of Certain Preventive Services Under the Affordable Care Act*, 80 Fed. Reg. 41,318, 41,322 (July 14, 2015).

In 2011, HRSA promulgated additional guidelines requiring nonexempt employers to cover "[a]ll Food and Drug Administration [(FDA)] approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity." RIN 1545-BJ60, 77 Fed. Reg. 8,725, 8,725 & n.1 (Feb. 15, 2012) (citation and internal quotation marks omitted). Those guidelines became known as the contraceptive mandate. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). Health insurance plans must cover the services recommended by HRSA under 42 U.S.C. § 300gg-13(a)(3) and (a)(4).

### B.  The Parties

Plaintiffs are six individuals and two businesses who challenge the legality of the preventive-care mandates under the Constitution and the Religious Freedom Restoration Act ("RFRA"). Each Plaintiff wishes to obtain or provide health insurance that excludes or limits coverage currently required by the preventive-care mandates. They object to the services required by the preventive-care mandates for a mixture of religious and economic reasons.

Plaintiffs John Kelley, Joel Starnes, Zach Maxwell, and Ashley Maxwell provide health coverage for themselves and their families. They want the option to purchase health insurance that excludes or limits coverage of PrEP drugs, contraception, the HPV vaccine, and the screenings and behavioral counseling for STDs and drug use. *See* Pls.' App. 35–37, 41–43, 52–54, 58–60, ECF No. 46. They say neither they nor their families require such preventive care. *Id.* They also claim that compulsory coverage for those services violates their religious beliefs by making them complicit in facilitating homosexual behavior, drug use, and sexual activity outside of marriage between one man and one woman. *Id.* at 38, 44, 53, 59.

Plaintiff Joel Miller likewise provides health coverage for himself and his family. Like the other Plaintiffs, Miller wants the option to purchase health insurance that excludes or limits coverage of preventive care that "he does not want or need." *Id.* at 66–67. Miller's wife "is past her childbearing years," and neither he nor his family members "engage in the behaviors that makes [sic] this preventive treatment necessary." *Id.* at 67.

Plaintiff Gregory Scheideman provides health coverage for himself, his family, and the employees of his company, Fort Worth Oral Surgery. Scheideman wants the option to purchase health insurance that excludes or limits coverage of services currently required by the preventive-care mandates. *Id.* at 47–49. Scheideman says neither he nor his family members require such

preventive care. *Id.* at 48–50. In addition, Scheideman and his business partners do not want to cover such care for their employees. *Id.*

Plaintiff Kelley Orthodontics provides health insurance for its employees. Kelley Orthodontics is a Christian professional association that wishes to provide health insurance for its employees that excludes coverage of preventive care such as contraceptives and PrEP drugs. *Id.* at 39. Plaintiff John Kelley, the owner of Kelley Orthodontics, says that providing such coverage violates his religious beliefs. *Id.*

Plaintiff Braidwood Management Inc. is a Christian for-profit corporation owned by Steven Hotze. *Id.* at 69. Braidwood provides health insurance to its approximately seventy employees through a self-insured plan, and Hotze wishes to provide health insurance for Braidwood's employees that excludes coverage of preventive care such as contraceptives and PrEP drugs. *Id.* at 70–71. Hotze, like Plaintiffs Kelley, Starnes, and the Maxwells, objects to coverage of those services on religious grounds. *Id.* at 72–73. Hotze also wants the option to impose copays or deductibles for preventive care in Braidwood's self-insured plan. *Id.* at 70, 73. Plaintiffs argue that Defendants' enforcement of the preventive-care mandates limits their ability to obtain or provide insurance that excludes their unwanted coverage.

Defendants are the Secretary of HHS, Xavier Becerra; the Secretary of the Treasury, Janet Yellen; the Secretary of Labor, Martin Walsh; and the United States. The three individual Defendants are sued in their official capacities for their roles in enforcing the preventive-care mandates.

### C.  The Litigation

Plaintiffs' First Amended Complaint asserts five claims. Plaintiffs allege that (1) the preventive-care mandates violate the Appointments Clause; (2) the preventive-care mandates

violate the nondelegation doctrine; (3) 42 U.S.C. § 300gg-13(a)(1) violates the Vesting Clause; (4) the preventive-care mandates, as a matter of statutory interpretation, apply only to ratings, recommendations, or guidelines in place at the time Congress passed the ACA; and (5) the PrEP mandate violates RFRA. *See* 1st Am. Compl., ECF No. 14. The Court dismissed Plaintiffs' statutory interpretation claim for failure to state a claim, and it dismissed Plaintiffs' religious objections to the contraceptive mandate as barred by res judicata.[2] *See* Order, ECF No. 35.

Plaintiffs moved for summary judgment on the remaining claims. *See* Pls.' Summ. J. Mot., ECF No. 44. Defendants responded and cross-moved for summary judgment. *See* ECF Nos. 62, 63. Defendants argue the Court should dismiss the amended complaint because Plaintiffs lack standing and, alternatively, because Defendants prevail on the merits. *See* Defs.' Summ. J. Br., ECF No. 64. The parties exchanged briefs, and the Court held a hearing on July 26, 2022. The motions are ripe for review.

In sum, the issues before the Court are (1) whether Plaintiffs have standing; (2) whether PSTF, ACIP, and HRSA violate the Appointments Clause; (3) whether PSTF members have removal protections that violate Article II's Vesting Clause; (4) whether PSTF, ACIP, and HRSA violate the nondelegation doctrine; and (5) whether the PrEP mandate violates RFRA.

## II.    LEGAL STANDARD

Summary judgment is appropriate only where the pleadings and evidence show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut, but rather

---

[2] Plaintiffs' lawsuit in *DeOtte v. Nevada*, No. 4:18-cv-00825, barred their claims against the contraceptive mandate in this case. *See* Order 12–16, ECF No. 35. On August 31, 2022, the Court dismissed *DeOtte* as moot in accordance with the Fifth Circuit's mandate issued that day. *See* Order, ECF No. 118, Case No. 4:18-cv-00825. In light of the judgment in *DeOtte*, Plaintiffs now wish to pursue their claims against the contraceptive mandate in this case. *See* Not. of Supp. Authority, ECF No. 91.

. . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant must inform the court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323.

The court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.* And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250.

The opposing party must "identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the court must grant summary judgment. *Celotex*, 477 U.S. at 322. In that situation, no genuine dispute of material fact can exist, as the failure to establish an essential element of the claim "necessarily renders all other facts immaterial." *Id.* at 323.

## III.   ANALYSIS

### A.  Standing

The U.S. Constitution limits the jurisdiction of federal courts to "Cases" and

23-10326.1787

"Controversies." U.S. Const., art. III, § 2. The case-or-controversy limitation requires plaintiffs seeking relief in federal court to show they have constitutional standing to pursue their claims. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "Constitutional standing has three elements: (1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009) (quoting *Lujan*, 504 U.S. at 560). At the summary judgment stage, a plaintiff "must 'set forth' by affidavit or other evidence 'specific facts,'" establishing the elements of standing. *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)).

As Plaintiffs point out, Braidwood presents the easiest case for standing. *See* Pls.' Resp. 10, ECF No. 74. Braidwood self-insures its seventy employees and must therefore provide ACA-compliant health insurance. *See* 26 U.S.C. § 4980H(c)(2). Through the preventive-care mandates, ACA insurance policies must cover, among other things, PrEP drugs, the HPV vaccine, and screenings and behavioral counseling for STDs and drug use. Hotze objects to those services on both religious and non-religious grounds, claiming they facilitate and encourage homosexual behavior, intravenous drug use, and sexual activity outside of marriage between one man and one woman. *See* Pls.' App. 72, ECF No. 46. Hotze says that providing this coverage in Braidwood's self-insured plan violates his religious beliefs by making him complicit in encouraging those behaviors. *Id.*

Braidwood has demonstrated several Article III injuries. First, the mandates deprive Braidwood of the ability to choose whether and to what extent its insurance plan covers preventive care. When a plaintiff is the object of the challenged government action, "there is ordinarily little question" that the action has caused injury. *Lujan*, 504 U.S. at 561–62. The ACA requires

Braidwood to cover the preventive services mandated under § 300gg-13. *See* 26 U.S.C. § 4980H(c)(2). Braidwood is also prohibited from imposing cost-sharing arrangements, such as deductibles or co-pays, for those services. *See* 42 U.S.C. § 300gg-13(a). Hotze wants Braidwood's plan to exclude or limit coverage for the preventive-care services mandated under § 300gg-13, but Braidwood cannot exclude coverage for those services without violating the law. *See* Pls.' App. 70–72, ECF No. 46.

Second, the mandates force Braidwood to underwrite coverage for services to which it holds sincere religious objections. This injury is distinct from the pocketbook injury Braidwood would incur in paying for the objectionable services. Because Braidwood self-insures, Hotze believes that offering coverage is itself a tacit endorsement of the behaviors that he believes the services encourage. *See* Pls.' App. 72, ECF No. 46. Many courts have already addressed this type of injury, recognizing that the contraceptive mandate caused an injury in fact because it rendered plaintiffs "complicit in a scheme aimed at providing coverage to which they have a religious objection." *Archdiocese of St. Louis v. Burwell*, 28 F. Supp. 3d 944, 951 (E.D. Mo. 2014) (citation and internal quotation marks omitted) (collecting cases). Indeed, "it is beyond question" that religious employers have Article III standing to challenge a government mandate that infringes on their religious liberties "by requiring them to lend what their religion teaches to be an impermissible degree of assistance to the commission of what their religion teaches to be a moral wrong." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1154 (10th Cir. 2013) (Gorsuch, J., concurring), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). Hotze's declaration establishes that the preventive-care mandates compel behavior that violates his religious beliefs, which is sufficient evidence of an injury in fact. *See Lujan*, 504 U.S. at 561.

10

Third, Braidwood faces a penalty for failing to comply with the mandates. Because Braidwood has more than fifty employees, it faces a tax of $100 per day for each employee not covered in accordance with the ACA. *See* 26 U.S.C. §§ 4980D, 4980H. Requiring religious employers to choose between complying with a service coverage mandate and paying a penalty imposes a substantial burden on religious freedom, and an injury in fact. *See Hobby Lobby Stores*, 573 U.S. at 719–20.

Defendants' counterarguments are unpersuasive. Defendants claim that Plaintiffs limited their religious objections to the PrEP mandate. They argue that the Court should thus consider only alleged injuries pertaining to the PrEP mandate. *See* Defs.' Cross Summ. J. Br. 31–32, ECF No. 64. Plaintiffs concede that their RFRA claims are limited to the PrEP mandate.[3] But Plaintiffs still suffer *injury* based on their religious objections to the other mandates. Plaintiffs claim that the various preventive-care mandates violate the Appointments Clause, the Vesting Clause, and the nondelegation doctrine. Braidwood's standing to assert those claims is based on the injuries discussed: in sum, that § 300gg-13 requires Braidwood to cover services it does not wish to cover for both religious and non-religious reasons. That Braidwood limited its RFRA claim to the PrEP mandate does not mean that it waived all claims of injury based on its religious objections. Even as to its non-RFRA claims, Braidwood's religious objections are "legally protected interest[s]."

---

[3] Plaintiffs' initial complaint asserted RFRA claims against compulsory coverage of the various services Plaintiffs found objectionable, including PrEP drugs, contraception, the HPV vaccine, and screenings and behavioral counseling for STDs and drug use. *See* Compl. 27–31, ECF No. 1. Plaintiffs' amended complaint drops all but one of those RFRA claims, challenging only the PrEP mandate. *See* 1st Am. Compl., ECF No. 14. Plaintiffs nevertheless moved for summary judgment on their claims that compulsory coverage of PrEP drugs, the HPV vaccine, and the screenings and behavioral counseling for STDs and drug use violates RFRA. *See* Pls.' Summ. J. Br. 35–42, ECF No. 45. Defendants argue that Plaintiffs are bound by their amended complaint, and thus the Court may consider Plaintiffs' RFRA challenges only as to the PrEP mandate. *See* Defs.' Cross Summ. J. Br. 31–32, ECF No. 64. The parties disputed that point in the briefing, but at the hearing Plaintiffs conceded that their RFRA challenges are limited to the PrEP mandate. *See* H. Trans. 24–25 (Rough Draft).

*Lujan*, 504 U.S. at 560. Braidwood has established by competent evidence that § 300gg-13 invades those interests. Those invasions are "concrete and particularized" and "actual or imminent," which means that Braidwood has suffered an injury in fact. *Id.*

Defendants' remaining arguments against Braidwood's standing proceed on the incorrect premise that Braidwood's injuries must pertain to covering PrEP drugs. Even adopting that incorrect premise, however, Defendants' arguments are unpersuasive. Defendants point out that Braidwood has not provided evidence that it has paid for or will likely pay for PrEP drugs. In Defendants' view, that makes Braidwood's injury hypothetical. Until Braidwood is faced with paying for PrEP drugs, it "operates only under a legal obligation to cover PrEP if such a claim is submitted, and an abstract legal obligation is insufficient to establish standing." *See* Defs.' Cross Summ. J. Br. 34, ECF No. 64 (citing *Barber v. Bryant*, 860 F.3d 345, 357 (5th Cir. 2017)).

Defendants misunderstand Braidwood's injury. Braidwood is not merely alleging a traditional "pocketbook injury." *California v. Texas*, 141 S. Ct. 2104, 2114 (2021). Distinct from his risk of pecuniary harm, Hotze asserts an ongoing dignitary harm, claiming that merely "*providing this coverage* in Braidwood's self-insured plan would make [him] complicit" in behaviors that violate his religious beliefs. Pls.' App. 72, ECF No. 46. Therefore, Braidwood faces not only a potential future injury in the form of paying for preventive care, but also a current injury in the form of underwriting services that violate Hotze's religious beliefs. Braidwood's numerous injuries are of the kind that courts have consistently found appropriate for Article III adjudication.

The next two standing requirements—causation and redressability—are even more straightforward. Braidwood "must satisfy the 'causation' and 'redressability' prongs of the Art. III minima by showing that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Again,

when a plaintiff suffers injury as the object of the challenged government action, "there is ordinarily little question that the action . . . has caused him injury, and that a judgment preventing . . . the action will redress it." *Lujan*, 504 U.S. at 561–62. Section 300gg-13 prohibits Braidwood from excluding coverage and imposing cost-sharing arrangements for various services to which it objects. And Braidwood faces a significant tax for not complying with the law. *See* 26 U.S.C. §§ 4980D, 4980H. Braidwood seeks declaratory and injunctive relief to prevent Defendants from enforcing the preventive-care mandates against it. There is no doubt that Braidwood's injuries are fairly traceable to Defendants' enforcement of the preventive-care mandates and that granting Braidwood's requested relief would likely redress its injuries. Indeed, Defendants conceded at oral argument that assuming Braidwood has suffered an injury (which Defendants contest), that injury is traceable and redressable. Braidwood has standing to pursue its claims.

Plaintiffs argue that because Braidwood has standing, the Court need not inquire into the standing of the other Plaintiffs. *See* Pls.' Resp. 10, ECF No. 74. For purposes of resolving these summary judgment motions, Plaintiffs are correct. As previously discussed, Braidwood has standing for all its claims. And because all Plaintiffs bring the same claims as Braidwood, the Court may address the merits of each claim. *See Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650–51 (2017) ("At least one plaintiff must have standing to seek each form of relief requested in the complaint."). But when it comes to granting relief, each Plaintiff must show it has standing to obtain the relief sought. *See id.* at 1650; *Arizona v. Biden*, 31 F.4th 469, 483 (6th Cir. 2022) (Sutton, C.J., concurring) ("A valid Article III remedy operates with respect to specific parties, not with respect to law in the abstract," which "is why courts generally grant relief in a party-specific and injury-focused manner." (cleaned up)). For the remaining Plaintiffs to show standing, "much more is needed," because, unlike Braidwood, their asserted injuries "arise[] from

the government's allegedly unlawful regulation (or lack of regulation) of someone else." *Lujan*, 504 U.S. at 562. The parties offered to file supplemental briefs addressing the scope of relief and standing for the remaining Plaintiffs. For now, the Court proceeds to the merits.

### B. Appointments Clause

The Appointments Clause lays out the permissible methods of appointing "Officers of the United States." U.S. Const. art. II, § 2, cl. 2. Principal officers must be nominated by the President and confirmed by the Senate. *Id.* But Congress can authorize the appointment of "inferior Officers" by the President alone, the courts, or "the Heads of Departments." *Id.*

Plaintiffs argue that the members of PSTF, ACIP, and HRSA are principal officers who must be appointed by the President and confirmed by the Senate. *See* Pls.' Summ. J. Br. 24–25, ECF No. 45. At the very least, Plaintiffs say, those agencies are comprised of inferior officers whose appointments may be vested in an agency head. *See id.* at 25–27. Regardless, Plaintiffs argue that the appointment process for members of all three agencies does not satisfy either constitutional method for appointing officers of the United States. *See id.* at 24–27. Defendants dispute all those claims. According to Defendants, the appointment processes for members of PSTF, ACIP, and HRSA are constitutionally permissible. *See* Defs.' Summ. J. Br., ECF No. 64. In any event, Defendants argue, the HHS Secretary's ratification of the challenged provisions nullifies Plaintiffs' Appointments Clause challenges. *Id.* at 38–45. The Court begins by addressing ratification, which narrows the issues.

### 1. The HHS Secretary ratified the directives of ACIP and HRSA, but not of PSTF.

Several circuits have held that a properly appointed official can ratify an improperly appointed official's action. The D.C. Circuit has "repeatedly held that a properly appointed official's ratification of an allegedly improper official's prior action, rather than mooting a claim,

resolves the claim on the merits by 'remedying the defect' (if any) from the initial appointment."

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 13 (D.C. Cir. 2019)

(cleaned up). The Second, Third, and Ninth Circuits agree. *See NLRB v. Newark Elec. Corp.*, 14

F.4th 152, 160–63 (2d Cir. 2021); *Kajmowicz v. Whitaker*, 42 F.4th 138, 152 (3d Cir. 2022); *CFPB*

*v. Gordon*, 819 F.3d 1179, 1191 (9th Cir. 2016).

Questions of ratification are "at least presumptively governed by principles of agency law."

*FEC v. NRA Pol. Victory Fund*, 513 U.S. 88, 98 (1994). One basic principle is that "for a

ratification to be effective, 'it is essential that the party ratifying should be able not merely to do

the act ratified at the time the act was done, *but also at the time the ratification was made*.'"

*Gordon*, 819 F.3d at 1191 (quoting *NRA Pol. Victory Fund*, 513 U.S. at 98). At the very least, the

party ratifying must have "the capacity to act at the time of ratification." *Id.* (citing Restatement

on Agency (Third) § 4.04 cmt. b). Those principles resolve the ratification issues presented here.

First, the Secretary ratified the ACIP recommendations that Plaintiffs challenge. ACIP, as

part of the Public Health Service, is "under the supervision and direction of the Secretary." 42

U.S.C. § 202. ACIP reports to the CDC Director, who exercises delegated authority from the

Secretary. *See* 42 U.S.C. §§ 243, 247b. "'The power to superintend,' [Alexander Hamilton]

explained, 'must imply a right to judge and direct,' thereby ensuring that 'the responsibility for a

wrong construction rests with the head of the department, when it proceeds from him.'" *United*

*States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1983 (2021) (quoting 3 *The Works of Alexander Hamilton*

559 (J. Hamilton ed. 1850)). In recognition of that principle, Defendants claim that "the Secretary

is empowered to direct ACIP's recommendation of specific vaccines." Defs.' Supp. Filing 2, ECF

No. 86. And because a vaccine recommendation from ACIP "is considered in effect after it has

been adopted by the Director of the [CDC]," the Secretary has authority over what vaccines are

covered under § 300gg-13(a)(2). 45 C.F.R. § 147.130(a)(1)(ii). The Secretary ratified ACIP's recommendations that Plaintiffs challenge.[4] *See* Defs.' App. 6, ECF No. 65. Because he has authority to require, reject, or alter ACIP's recommendations, the Secretary's ratification of the challenged ACIP provisions remedies any appointment defects of ACIP regarding those recommendations. *See Guedes*, 920 F.3d at 13.

Likewise, the Secretary ratified the HRSA guidelines that Plaintiffs challenge. Like ACIP, HRSA is part of the Public Health Service and thus "under the supervision and direction of the Secretary." 42 U.S.C. § 202. HRSA is directed by an Administrator who, like the CDC Director, is answerable to the Secretary. *See* 47 Fed. Reg. at 38,410. The Secretary is thus "empowered to direct HRSA to include particular care and screenings in the guidelines they support under 42 U.S.C. § 300gg-13(a)(3) and (a)(4)," as Defendants admit. Defs.' Supp. Filing 1, ECF No. 86. The Secretary ratified the HRSA guidelines that Plaintiffs challenge,[5] which remedies any appointment defects of HRSA regarding those guidelines. *See Guedes*, 920 F.3d at 13.

Plaintiffs raise several counterarguments. First, Plaintiffs argue that the Secretary has no authority to ratify the agencies' actions because § 300gg-13(a) "compels" the Secretary to implement the agencies' decisions. Pls.' Resp. Br. 19–21, ECF No. 74. Plaintiffs are correct that the Secretary "shall" enforce insurance coverage for the services identified by the three agencies. *See* 42 U.S.C. § 300gg-13. But § 300gg-13(a) contains no language removing or modifying the Secretary's background authority over ACIP and HRSA as to the services themselves. Indeed, Congress recognized that it was legislating against that background structure by referring to "recommendations" and "guidelines." ACIP has authority (given to it by the Secretary) to provide vaccine recommendations, which are subject to the absolute control of the Secretary. So, too, with

---

[4] The parties do not dispute that Secretary Xavier Becerra is a constitutionally appointed principal officer.
[5] Defs.' App. 6, ECF No. 65.

HRSA. If Congress intends to alter the fundamental details of a regulatory scheme, courts "expect it to speak with the requisite clarity to place that intent beyond dispute." *U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*, 140 S. Ct. 1837, 1849 (2020) (quoting *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626–27 (2018)). Section 300gg-13(a) is devoid of any clear statement stripping the Secretary of his authority over ACIP and HRSA.

Second, Plaintiffs argue that even if the Secretary has ratified the challenged actions, § 300gg-13(a) would still violate the Appointments Clause because ACIP's and HRSA's actions are effective even before a constitutionally appointed officer ratifies them. Pls.' Summ. J. Br. 29, ECF No. 45. In other words, Plaintiffs say that ratification cannot cure the appointment problems because ACIP and HRSA are still exercising "significant authority pursuant to the laws of the United States" until their decisions are ratified. *Lucia v. SEC*, 138 S. Ct. 2044, 2049 (2018) (holding that the SEC's administrative law judges are "officers of the United States," even though their decisions are subject to review by the SEC itself). But Article III standing principles do not permit Plaintiffs to challenge an unlawful appointment generally, or to challenge future exercises of unlawful authority. Plaintiffs' injuries must be traceable to government *action*. And the Secretary has ratified the particular actions of ACIP and HRSA that Plaintiffs complain of.

Plaintiffs' argument attacks the very principle of ratification. If Plaintiffs are correct, post hoc approval by an appropriate government actor cannot retroactively cure an earlier exercise of authority that was constitutionally defective. But the circuits have so far unanimously agreed that ratification may cure Appointment Clause problems, and Plaintiffs do not present a compelling reason to deviate from the consensus. The Secretary effectively ratified the ACIP and HRSA actions that Plaintiffs challenge, so the Court need not address the Appointments Clause issues regarding those two agencies. The Court thus **GRANTS** partial summary judgment in favor of

Defendants on Claim 1 of the Amended Complaint as to 42 U.S.C. § 300gg-13(a)(2), (a)(3), and (a)(4).

PSTF is different. According to Defendants, the Secretary may not direct PSTF to "give a specific preventive service an 'A' or 'B' rating, such that it would be covered pursuant to 42 U.S.C. § 300gg-13(a)(1)." Defs.' Suppl. Filing 3, ECF No. 86. That is because all PSTF members "and any recommendations made by such members, shall be independent and, to the extent practicable, not subject to political pressure." 42 U.S.C. § 299b-4(a)(6). The Secretary, a political actor, thus does not have authority to direct what services are covered under § 300gg-13(a)(1). Arguably, the phrase "to the extent practicable" permits some level of direction by the Secretary. *Id.* But whatever that phrase means, it does not provide an exception for the Secretary to decree recommendations unilaterally. That exception would swallow the rule that "recommendations" must be "independent" and "not subject to political pressure." *Id.* Because the Secretary lacks authority to determine or direct what services receive an "A" or "B" rating, he cannot ratify PSTF's decisions on that subject. *See Gordon*, 819 F.3d at 1191. Defendants implicitly recognize as much by arguing that only the ACIP and HRSA ratifications were effective—not PSTF. *See* Defs.' Summ. J. Br. 39–43, ECF No. 64. The Court must therefore address the Appointments Clause challenge to PSTF.

### 2.  The members of PSTF are officers of the United States.

A person is an officer of the United States if he (1) occupies a "'continuing' position established by law" and (2) exercises "significant authority pursuant to the laws of the United States." *Lucia*, 138 S. Ct. at 2051 (internal quotation marks and citations omitted). The members of PSTF satisfy both criteria.

First, PSTF members occupy a continuing position established by law. Congress requires the Director of AHRQ to "convene" PSTF by assembling a group of "individuals with appropriate

expertise." 42 U.S.C. § 299b-4(a)(1). Congress described the purpose of PSTF, assigned its duties, authorized appropriations for its activities, and insulated it from political pressure. *See id.* § 299b-4. Regulations lay out extensive qualifications for the members, who serve four-year terms. *See Solicitation for Nominations for Members of the U.S. Preventive Services Task Force (USPSTF)*, 87 Fed. Reg. 2436, 2436–37 (Jan. 14, 2022). These positions will continue until Congress amends or repeals the statute creating them. They are "public station[s], or employment, conferred by the appointment of government." *United States v. Hartwell*, 73 U.S. 385, 393 (1867).

The PSTF positions are "continuing and permanent" rather than "occasional or temporary." *Lucia*, 138 S. Ct. at 2051. Among other things, PSTF must submit yearly reports to Congress and other agencies identifying gaps in research and recommending areas for further examination. 42 U.S.C. § 299b-4(a)(2)(F). At least once every five years, PSTF must review interventions and update recommendations. *Id.* These congressionally created duties are regular, not occasional. *Cf. United States v. Germain*e, 99 U.S. 508, 511–12 (1878) (holding that a civil surgeon tasked with assisting the Commissioner of Pensions was not an officer in part because he was "only to act when called on by the Commissioner of Pensions in some special case"); *Auffmordt v. Hedden*, 137 U.S. 310, 326–27 (1890) (holding that a merchant appraiser valuing goods for the customs service was not an officer of the United States because he had "no general functions, nor any employment which ha[d] any duration as to time, or which extend[ed] over any case further than as he [was] selected to act in that particular case").

Defendants argue that PSTF members are not officers because their work is "part-time." Defs.' Summ. J. Br. 64, ECF No. 64. But the difference between a temporary position and a permanent position has more to do with "ideas of tenure and duration" than with the relative workload of the job. *Lucia*, 138 S. Ct. at 2051 (cleaned up). PSTF members serve four-year terms

in a statutorily created position to carry out regular duties assigned by Congress. That role is nothing short of "a continuing and formalized relationship of employment with the United States Government." *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 757 (5th Cir. 2001) (en banc). Regardless, to the extent courts consider the relative workload a position requires, the duties of PSTF members cannot be brushed aside as minimal. PSTF applicants must have "adequate time to contribute substantively to the work products of [PSTF]." 87 Fed. Reg. at 2437. The members meet three times a year for two days in Washington, D.C. (paid for by the taxpayer). *Id.* But a "significant portion" of their work occurs between meetings. *Id.* Members must expect frequent emails, "multiple conference calls each month," and interaction with stakeholders. *Id.* Indeed, "members devote approximately 200 hours a year outside of in-person meetings" to carrying out their duties. *Id.* The part-time nature of the PSTF positions, even if relevant, does not indicate that the positions are occasional or temporary.

Defendants also argue that PSTF members are not officers because they do not receive compensation for their service. *See* Defs.' Summ. J. Br. 53, ECF No. 64. In *Riley*, the Fifth Circuit observed that "Supreme Court precedent has established that the constitutional definition of an 'officer' encompasses, at a minimum, a continuing and formalized relationship of employment with the United States Government." *Riley*, 252 F.3d at 757 (first citing *Auffmordt*, 137 U.S. at 327; and then citing *Germaine*, 99 U.S. at 511–12). Defendants argue that by "employment," the Fifth Circuit means *paid* employment. But neither the word "employment" nor the surrounding context in *Riley* implies that compensation is a necessary element of an office. The merchant in *Auffmordt* was not an officer *in part* because he was paid on a case-by-case basis and received no "continuing emolument." *Auffmordt*, 137 U.S. at 327. The surgeon in *Germaine* was not an officer *in part* because his payment was by commission prescribed by regulation, not "regular

appropriation." *Germaine*, 99 U.S. at 511. And the qui tam plaintiffs in *Riley* were not officers because, "[f]or instance," they did "not draw a government salary." *Riley*, 252 F.3d at 757.

The cases demonstrate that monetary compensation is one aspect among many relevant to determining whether a position is "continuing and formalized." *Id.* But employment positions take many forms, offering different terms, hours, compensation, and responsibilities. *See Germaine*, 99 U.S. at 511 ("[T]he term embraces the ideas of tenure, duration, emolument, and duties."). To be sure, the absence of a regular salary makes the PSTF positions appear less "continuing and formalized" than a salaried position, other things being equal. *Riley*, 252 F.3d at 757. But it is not dispositive, particularly when the members receive at least some compensation for travel to meetings and trainings. *See* 87 Fed. Reg. at 2437.

The Supreme Court and Fifth Circuit have not set a minimum-hours requirement for officers of the United States. Nor have they forbidden an officer from holding other employment. Nor have they required a particular form of compensation. Rather, courts consider various characteristics to determine whether the nature of the position is continuing and formalized. *See Lucia*, 138 S. Ct. at 2051; *Riley*, 252 F.3d at 757. Congress created PSTF, assigned it various duties, and requires its regular employment. The positions are fixed by statute and will continue indefinitely. Members must be specially qualified, and they are selected in a competitive process. They serve four-year terms that require meetings, research, drafting, and many other responsibilities. They receive compensation in support of their travel for in-person meetings, which they hold three times a year. These qualities indicate that PSTF members occupy a "'continuing' position established by law." *Lucia*, 138 S. Ct. at 2051.

Second, PSTF members exercise significant authority pursuant to the laws of the United States. This second step "focuse[s] on the extent of power an individual wields in carrying out his

23-10326.1800

assigned functions." *Lucia*, 138 S. Ct. at 2051. PSTF has authority to determine what preventive-care services receive an "A" or "B" rating. Private insurers must cover all services with an "A" or "B" rating. 42 U.S.C. § 300gg-13(a)(1). Therefore, PSTF has authority to determine what preventive-care services private insurers must cover. That includes the authority to determine the scope of any religious or nonreligious exemptions. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2380 (2020) (holding that § 300gg-13(a)(4) gives HRSA the authority to determine "the ability to identify and create exemptions from its own Guidelines").

PSTF's authority over insurance policies is significant. Just as special trial judges of the U.S. Tax Court can issue the final decision in "comparatively narrow and minor matters" before them, PSTF exercises final authority over its narrow domain. *Lucia*, 138 S. Ct. at 2052 (internal quotation marks omitted) (quoting *Freytag v. Commissioner*, 501 U.S. 868, 873 (1991)). Whether insurance providers must cover PrEP drugs and countless other preventive services depends entirely on whether PSTF recommends them. PSTF wields a power to compel private action that resembles legislative authority. At the very least, it is on par with agency actions subject to approval by an agency head, which typically proceed through notice and comment procedures. But PSTF, unencumbered by the Administrative Procedure Act, "exercise[s] significant discretion" in determining what services insurance providers must cover. *Freytag*, 501 U.S. at 882. That degree of authority is "so 'significant' that it [is] inconsistent with the classifications of 'lesser functionaries' or employees." *Id.* at 881 (quoting *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 352 (1931)). PSTF thus exercises "significant authority pursuant to the laws of the United States." *Lucia*, 138 S. Ct. at 2051.

23-10326.1801

Defendants try to avoid that conclusion by insisting that PSTF makes "recommendations," not law. "PSTF's recommendations," Defendants argue, "are not exercises of the Executive or Legislative Power. They are 'evidence-based' scientific recommendations about the contemporary standard of care in preventive medicine." Defs.' Summ. J. Br. 56, ECF No. 64. But Defendants rely on a false dichotomy. That PSTF makes "scientific recommendations" says nothing about whether it exercises legislative power. Before Congress enacted the ACA, PSTF's recommendations were *merely* recommendations. Now, those recommendations have the force and effect of law. What PSTF "recommends" will bind insurance providers as forcefully as any law or regulation. And as the Supreme Court said of HRSA, PSTF "has virtually unbridled discretion to decide what counts as preventive care." *Little Sisters of the Poor*, 140 S. Ct. at 2380.

Defendants also point out that PSTF is tasked with determining the rating of individual preventive services, not decreeing what ratings are covered by insurance. Congress made the decision to give PSTF's recommendations the *effect* of required coverage. In other words, what matters are PSTF's "purposes," not the "incidental" effects of PSTF carrying out those purposes. Defs.' Summ. J. Br. 56, ECF No. 64. *Lucia* says otherwise. What matters is "the extent of *power* an individual *wields* in carrying out his assigned functions." *Lucia*, 138 S. Ct. at 2051 (emphases added). Whatever PSTF's assigned functions are (or whatever PSTF *thinks* its assigned functions are) is secondary to the power it wields in carrying out those functions.[6] And that power is nothing short of dictating what preventive services insurance providers *must* cover. It is more troubling,

---

[6] It is also "beside the point" that PSTF's decisions serve other non-significant functions. *Freytag v. Commissioner*, 501 U.S. 868, 882 (1991). "The fact that an inferior officer on occasion performs duties that may be performed by an employee not subject to the Appointments Clause does not transform his status under the Constitution." *Id.*

23-10326.1802

not less, that Defendants insist the agency wielding that power is apparently not even cognizant of doing so.[7] An officer is no less an officer because he is oblivious to the power he wields.

Defendants also argue § 300gg-13(a) is no different than the numerous other times Congress has incorporated materials by reference into law. But the organizations involved in all Defendants' examples are private, state, or foreign entities.[8] None of the organizations occupy a "'continuing' position established by law" in the federal government. *Lucia*, 138 S. Ct. at 2051. Defendants' examples do not present Appointments Clause problems, then, because none pass even the first part of the *Lucia* test. PSTF members, in contrast, serve in an agency created by federal law. And, perhaps more importantly, § 300gg-13(a) differs from Defendants' examples in its "capacious grant of authority" to the agencies "to make these determinations," while leaving their "discretion equally unchecked in other areas." *Little Sisters of the Poor*, 140 S. Ct. at 2380. In short, Defendants' argument "ignores the significance of the duties and discretion" of PSTF. *Freytag*, 501 U.S. at 881.

PSTF members occupy a continuing position established by law and exercise significant authority pursuant to the laws of the United States. *See Lucia*, 138 S. Ct. at 2051. They are therefore officers of the United States.

---

[7] *See* Defs.' Reply Br. 34, ECF No. 83 ("True, the PSTF's recommendations may be used for important purposes, including, as Congress has decided, being incorporated within certain insurance coverage. But PSTF members themselves are not tasked with considering what is appropriate about insurance at all, nor are they tasked with making discretionary decisions about insurance . . . .").

[8] *See* 4 U.S.C. § 119(a)(2) (requiring electronic databases established by states to "be provided in a format approved by the American National Standards Institute's Accredited Standards Committee X12"); 16 U.S.C. § 3372(a)(2)(A) (rendering unlawful the importation "any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State or in violation of any foreign law"); 18 U.S.C. § 13(a) (criminalizing certain acts that "although not made punishable by any enactment of Congress, would be punishable if committed . . . within the jurisdiction of the State . . . by the laws thereof in force at the time of such act"); 42 U.S.C. § 6293(b)(8) (requiring test procedures for water closets and urinals to comply with standards set by the American Society of Mechanical Engineers).

### 3. The members of PSTF are unconstitutionally appointed.

Because PSTF members are officers of the United States, their appointments must comply with Article II. Principal officers must be nominated by the President and confirmed by the Senate, while inferior officers may be appointed by the President alone, the courts, or the heads of departments, if Congress permits. U.S. Const. art. II, § 2, cl. 2.

"Whether one is an 'inferior' officer depends on whether he has a superior." *Edmond v. United States*, 520 U.S. 651, 662 (1997). In other words, the difference between principal and inferior officers is one of relationship, not of authority. *See id.* ("The exercise of 'significant authority pursuant to the laws of the United States' marks, not the line between principal and inferior officer for Appointments Clause purposes, but rather . . . the line between officer and nonofficer."). Inferior officers, then, are "officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Id.* at 663.

PSTF members are principal officers. The AHRQ Director "convene[s]" PSTF, but he is not necessarily part of PSTF, whose members are otherwise "independent." 42 U.S.C. § 299b-4(a)(1), (a)(6). In that regard, PSTF is different from ACIP and HRSA, which are subject to the Secretary's control. *See supra* Section III.B.1. PSTF is not even part of HHS, or any other agency. *See* Defs.' Summ. J. Br. 51, ECF No. 64. AHRQ has no oversight or supervision role over PSTF, and AHRQ's function is merely to "provide ongoing administrative, research, and technical support." 42 U.S.C. § 299b-4(a)(3). The AHRQ Director is appointed by the Secretary, but he neither directs nor supervises PSTF or its members. *See id.* § 299(a). PSTF members are thus not inferior officers because they are not "directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Edmond*, 520

23-10326.1804

U.S. at 663. PSTF members have no superior, so they are principal officers under Article II. *Id.* at 662.

Because PSTF members are principal officers, they must be appointed by the President and confirmed by the Senate. *See* U.S. Const. art. II, § 2, cl. 2. The PSTF members indisputably fail that constitutional requirement. The members are "convene[d]" by the AHRQ Director. 42 U.S.C. § 299b-4(a)(1). Defendants point to no other statute or regulation governing their selection. Presumably, the AHRQ Director selects new members or delegates the task to other AHRQ employees. *See* 87 Fed. Reg. at 2437 ("Nominated individuals will be selected for [PSTF] on the basis of how well they meet the required qualifications and the current expertise needs of [PSTF]."). Regardless, PSTF members are not presidentially appointed.

Even if PSTF members were inferior officers, their selection would still violate the Appointments Clause. Congress can vest the appointment of inferior officers by the President alone, the courts, or the heads of departments. U.S. Const. art. II, § 2, cl. 2. If the power to "convene" PSTF is commensurate with the power to appoint its members, then Congress arguably vested the appointment of PSTF members in the AHRQ Director. *See* 42 U.S.C. § 299b-4(a)(1). The AHRQ Director is not the President or an officer of the courts, so the only question is whether he is one of the "Heads of Departments" mentioned in Article II. He is not. "[T]he term 'Department' refers only to a part or division of the executive government, as the Department of State, or of the Treasury, expressly created and given the name of a department by Congress." *Freytag*, 501 U.S. at 886 (cleaned up). Defendants do not dispute that the AHRQ Director is not a head of a department as understood in Article II.

Regardless of whether PSTF members are principal or inferior officers, they are unconstitutionally appointed. Defendants dispute that PSTF members are officers of the United

States, but they do not resist the conclusion that the selection of PSTF members does not comply with the Appointments Clause procedures.

*       *       *

In dressing up legal directives as expert recommendations, Defendants overlook the constitutional importance of the power those recommendations wield. Congress may create agencies to recommend healthcare services to public and private entities. Doing so rarely poses constitutional problems because the recommendations do not bind American citizens. Under Defendants' theory, Congress may then backfill those recommendations with the force and effect of law, complete with hefty penalties for noncompliance. Not only that, but Congress can also mandate that all *future* recommendations have the force and effect of law, and it can make those recommendations unreviewable by anyone else. Perhaps Congress may do those things consistent with the Constitution. But when it does, Congress confers *power* on those who, before, were making mere recommendations. The Constitution says that individuals exercising that kind of power must be appointed by politically accountable officers. "[T]he Appointments Clause of Article II is more than a matter of 'etiquette or protocol'; it is among the significant structural safeguards of the constitutional scheme." *Edmond*, 520 U.S. at 659. PSTF's appointment process deviates from Article II's requirements, so the Court **GRANTS** partial summary judgment in favor of Plaintiffs on Claim 1 of the Amended Complaint as to 42 U.S.C. § 300gg-13(a)(1).

The Court will take further briefing on the appropriate remedy, but one point is worth resolving here. Defendants say the proper remedy, if PSTF members are unconstitutionally appointed, is to allow the Secretary to ratify the actions of PSTF. *See* Defs.' Summ. J. Br. 57–58, ECF No. 64. But Defendants have disclaimed that the Secretary has any authority over PSTF. And without authority, there can be no ratification. *See Gordon*, 819 F.3d at 1191. Defendants'

argument would make sense, for example, in the context of an ACIP recommendation that the Secretary *could* ratify but had *not yet* ratified. But as for PSTF, the Secretary's ratification is meaningless. *See supra* Section III.B.1. A second ratification would be equally meaningless.

### C. Removal

Article II vests the "executive Power" in the President, who must "take Care that the Laws be faithfully executed." U.S. Const. art. II, §§ 1, 3. "The entire 'executive Power' belongs to the President alone." *Seila L. LLC v. CFPB*, 140 S. Ct. 2183, 2197 (2020). Because it would be impossible for the President to carry out the vast responsibility of the office by himself, Article II implies that the President may appoint lesser executive officers to assist him in his duties. *Id.* "That power, in turn, generally includes the ability to remove executive officials, for it is 'only the authority that can remove' such officials that they 'must fear and, in the performance of [their] functions, obey.'" *Id.* (alteration in original) (quoting *Bowsher v. Synar*, 478 U.S. 714, 726 (1986)).

Congress may restrict the President's removal power over certain executive officers, to an extent. Inferior officers, for example, "may retain some amount of for-cause protection from firing." *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022) (citing *Morrison v. Olson*, 487 U.S. 654, 691–92 (1988)). "Likewise, even principal officers may retain for-cause protection when they act as part of an expert board." *Id.* (citing *Seila L.*, 140 S. Ct. at 2192).

Plaintiffs' removal claim fails because they do not identify any removal restrictions on PSTF members. Plaintiffs point to the provision requiring that all PSTF members "and any recommendations made by such members, shall be independent and, to the extent practicable, not subject to political pressure." 42 U.S.C. § 299b-4(a)(6). But that language does not provide PSTF members tenure or insulate them from removal. Plaintiffs provide no persuasive argument as to why the provision should be construed in the direction of a constitutional violation. *See Clark v.*

23-10326.1807

*Martinez*, 543 U.S. 371, 381 (2005) (discussing the canon of constitutional avoidance). Quite simply, no statute forbids the President, Secretary, or AHRQ Director from firing any member of PSTF. And without any removal restrictions, there is no removal problem under Article II.

That conclusion might appear to be in tension with the Court's earlier conclusion that the Secretary lacks authority to ratify PSTF decisions. Recall that the Secretary does not have authority to direct what services are covered under § 300gg-13(a)(1), in part because of the political-insulation language in § 299b-4(a)(6). *See supra* III.B.1. The phrase "to the extent practicable" arguably permits the Secretary some amount of control, but the Court did not construe the phrase to permit the Secretary to direct what services are covered. The political-insulation language thus prohibits the Secretary from directing what services are covered under § 300gg-13(a)(1), but it does not prohibit the Secretary or the President from removing PSTF members. Those interpretations are consistent for at least two reasons.

First, the statute grants PSTF unilateral authority, but not indefinite tenure. Congress granted PSTF complete discretion to make its decisions. AHRQ's role is merely to provide administrative, research, and technical support for PSTF. Even without the political-insulation language, it is not clear that the Secretary would have the authority to direct what services are covered under § 300gg-13(a)(1). In contrast, Article II vests the President with the background authority to remove executive officials. Unless Congress strips that authority for a particular officer (and does so in a constitutionally permissible manner), the President retains removal authority over that officer. The Court's interpretation of § 299b-4(a)(6) is thus consistent with the statutory context (which gives PSTF authority over covered services) and consistent with the constitutional background (which gives the President authority to remove executive officers).

23-10326.1808

Second, no party advanced a construction of the political-insulation language that would permit the Secretary to decree covered services under § 300gg-13(a)(1). Defendants concede that the "Secretary may not, consistent with § 299b-4(a)(6), direct that the PSTF give a specific preventive service an 'A' or 'B' rating, such that it would be covered pursuant to 42 U.S.C. § 300gg-13(a)(1)." Defs.' Suppl. Filing 3, ECF No. 86. The canon of constitutional avoidance "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts." *Clark*, 543 U.S. at 381. All parties' interpretations of the Secretary's authority over PSTF invite Appointments Clause problems. In contrast, the parties do offer competing interpretations of the political-insulation language as it relates to the removal issue.

The removal analysis is unnecessarily complicated by the fact that the members of the PSTF are unconstitutionally appointed. As a general rule, officers are subject to removal by the same actor who appointed them, subject to any other restrictions imposed by Congress. *See, e.g.*, *Seila L.*, 140 S. Ct. at 2197. If the PSTF members had been properly appointed by the President as principal officers, or properly appointed by the Secretary of Health and Human Services as inferior officers, then the Court's conclusion that they could be removed by those same appointing actors would be more readily apparent, even when factoring in the political-insulation language of § 299b-4(a)(6). It is unsurprising that Congress's novel regulatory scheme produces novel legal problems.

In sum, PSTF members do not have statutory tenure. They are removable at will. The Court thus **GRANTS** summary judgment in favor of Defendants as to Claim 3 of Plaintiffs' Amended Complaint.

### D.  Nondelegation

The Constitution vests "[a]ll legislative Powers herein granted . . . in a Congress of the United States." U.S. Const. art. 1, § 1. The text "permits no delegation of those powers" to the other two branches of government. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001). Under the doctrine of nondelegation, "when Congress confers decisionmaking authority upon agencies Congress must 'lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform.'" *Id.* (alteration in original) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928). A conferral of decisionmaking authority is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946). "Given that standard, a nondelegation inquiry always begins (and often almost ends) with statutory interpretation." *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (plurality opinion). That process requires courts to evaluate the statute's text, context, purpose, and factual background. *Am. Power & Light*, 329 U.S. at 104.

Plaintiffs argue that the preventive-care mandates violate the nondelegation doctrine. Plaintiffs say that PSTF, ACIP, and HRSA are all exercising decisionmaking authority with no "intelligible principle" to guide them. Pls.' Summ. J. Br. 29–32, ECF No. 45. Section 300gg-13(a) compels coverage of certain "evidence-based items and services" identified by PSTF, "immunizations" recommended by ACIP, and "evidence-informed preventive care and screenings" designated by HRSA. 42 U.S.C. § 300gg-13(a). Plaintiffs argue that the statute provides no standards guiding the agencies' decisions as to which items, services, immunizations, care, and screenings they can recommend. The statute confers authority on the agencies to decide

what preventive services are covered, but it lacks, Plaintiffs say, any principle guiding their decisionmaking—let alone an intelligent one.

At least as to HRSA, the Supreme Court has hinted that it may agree with Plaintiffs. The Court recognized that § 300gg-13(a)(4) "grants sweeping authority to HRSA to craft a set of standards defining the preventive care that applicable health plans must cover." *Little Sisters of the Poor*, 140 S. Ct. at 2380. "But the statute is completely silent as to what those 'comprehensive guidelines' must contain, or how HRSA must go about creating them. The statute does not, as Congress has done in other statutes, provide an exhaustive or illustrative list of the preventive care and screenings that must be included." *Id.* (quoting 42 U.S.C. § 300gg-13(a)(4)). Nor does the statute "set forth any criteria or standards to guide HRSA's selections." *Id.* The Court pointed out that even some of the other subsections of § 300gg-13(a) at least require "evidence-based" or "evidence informed" determinations. *Id.*; *see* 42 U.S.C. § 300gg-13(a)(1), (a)(3). Additionally, the ACA does not "require that HRSA consult with or refrain from consulting with any party in the formulation of the Guidelines." *Little Sisters of the Poor*, 140 S. Ct. at 2380. Taken together, "[t]his means that HRSA has virtually unbridled discretion to decide what counts as preventive care and screenings." *Id.* The Supreme Court thus concluded "that the ACA gives HRSA broad discretion to define preventive care and screenings and to create the religious and moral exemptions." *Id.* at 2381. The Supreme Court ultimately did not address whether HRSA violates the nondelegation doctrine, noting that no party raised the issue. *Id.* at 2382.

Plaintiffs rely on the Supreme Court's observations in *Little Sisters of the Poor*, but they overlook binding Fifth Circuit precedent. In *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436 (5th Cir. 2020), the Fifth Circuit addressed a nondelegation challenge to the Family Smoking and Tobacco Control Act. Congress delegated to the Secretary of the Food and Drug Administration the power

23-10326.1811

to "deem" which tobacco products should be subject to the Act's mandates. 21 U.S.C. § 387a(b).

The plaintiffs in *Big Time Vapes* argued that "Congress didn't provide 'any parameters or guidance whatsoever' to guide the Secretary's exercise of that discretion." *Big Time Vapes*, 963 F.3d at 443. The panel disagreed, holding that Congress had delineated (1) "its general policy" in the statute, (2) the public agency that is to apply that policy, and (3) the boundaries of the delegated authority. *Id.* at 444–45. The same is true here. Congress has delineated its general policy with respect to the preventive-care mandates, the public agencies applying the preventive-care mandates, and the boundaries of the delegated authority.

First, Congress has delineated a general policy to expand insurance coverage for various preventive services. The preventive-services provision outlines the "minimum" level of coverage that insurance plans must offer. 42 U.S.C. § 300gg-13(a). Congress then chose to incorporate the directives of existing agencies—PSTF, ACIP, and HRSA—to set the baseline services that insurance policies must cover. Because the agencies preexisted the ACA, Congress had already outlined an express purpose for each agency. PSTF exists for "the purpose of developing recommendations for the health care community, and updating previous clinical preventive recommendations, to be published in the Guide to Clinical Preventive Services . . . , for individuals and organizations delivering clinical services." 42 U.S.C. § 299b-4(a)(1). ACIP exists "for the purpose of advising" the HHS Secretary on his role to "assist States and their political subdivisions in the prevention and suppression of communicable diseases." *Id.* §§ 217a(a), 243(a), 1396s(e). HRSA's history is more complicated, but it can be traced to Title V of the Social Security Act of 1935, passed for "the purpose of enabling each State to extend and improve, as far as practicable under the conditions in such State, services for promoting the health of mothers and children,

23-10326.1812

especially in rural areas and in areas suffering from severe economic distress." 49 Stat. 620, 629 (1935).[9]

The parties' briefs do not discuss Congress's policy in any notable detail. But the statute's text, context, and relevant factual background indicate a general policy to expand preventive-services coverage for a variety of medical services. Generally, "Congress's purpose in this section was to mandate coverage of certain health insurance items." *Leal v. Azar*, No. 2:20-cv-185, 2020 WL 7672177, at *16 (N.D. Tex. Dec. 23, 2020) (ruling that § 300gg-13(a)(4) does not violate the nondelegation doctrine), *vacated sub nom. on other grounds Leal v. Becerra*, No. 21-10302, 2022 WL 2981427 (5th Cir. July 27, 2022). The evidence shows that Congress delineated a general policy to guide the agency action.

Second, Congress has clearly delineated the public agencies to apply that policy. The statute explicitly names the agency responsible for each type of directive: PSTF recommends preventive services that have an "A" or "B" rating; ACIP recommends immunizations; HRSA recommends preventive care and screenings for infants, children, and adolescents; and HRSA also recommends additional preventive care and screenings for women. 42 U.S.C. § 300gg-13(a). No party disputes that Congress clearly identified the agency responsible for the decisionmaking.

---

[9] Over the years, Congress and the President organized and reorganized the agencies responsible for implementing various Congressional health programs. In 1973, exercising authority under those reorganization plans, the Secretary of Health, Education, and Welfare (later to become the HHS Secretary) created the Health Services Administration ("HSA") and the Health Resources Administration ("HRA"). *See* Public Health Service, 38 Fed. Reg. 18,261 (July 9, 1973). HSA's purpose was to "provide a national focus for programs and health services for all people of the United States with emphasis on achieving the integration of service delivery and public and private financing systems to assure their responsiveness to the needs of individuals and families in all levels of society." Health Services Administration, 39 Fed. Reg. 10,463 (Mar. 20, 1974). HRA's purpose was to "provide[] leadership with respect to the identification, deployment and utilization of personnel, educational, physical, financial and organizational resources in the achievement of optimal health services for the people of the United States." Health Resources Administration, 39 Fed. Reg. 1,456 (Jan. 9, 1974). In 1982, the HHS Secretary consolidated HSA and HRA into the modern HRSA. *See* Health Resources and Services Administration; Statement of Organization, Functions, and Delegations of Authority, 47 Fed. Reg. 38,409 (Aug. 31, 1982).

Third, Congress limited the authority it delegated. Start with PSTF. Section 300gg-13(a)(1) requires that the "items or services" be "evidence-based" and "have in effect a rating of 'A' or 'B' in the current recommendations of [PSTF]." Congress provided further instructions on how PSTF is to develop its recommendations: the agency must "review the scientific evidence related to the effectiveness, appropriateness, and cost-effectiveness of clinical preventive services." *Id.* § 299b-4(a)(1). Likewise, ACIP's authority is limited to "immunizations." *Id.* § 300gg-13(a)(2). HRSA's authority is split into two categories: First, "with respect to infants, children, and adolescents," HRSA's "preventive care and screenings" must be "evidence-informed" and provided for in their "comprehensive guidelines." *Id.* § 300gg-13(a)(3). Second, "with respect to women," HRSA's "preventive care and screenings" not covered by PSTF must also be provided for in their "comprehensive guidelines." *Id.* § 300gg-13(a)(4). Congress has demarcated the boundaries of agency decisionmaking in the statute.

Plaintiffs recognize that the agencies' discretion is bounded, but they argue that Congress did not provide an intelligible principle within those boundaries. "Limiting the scope of HRSA's powers to 'preventive care and screenings,' for example, does nothing to provide guidance when HRSA is deciding *which* 'preventive care' and *which* 'screenings' will be covered." Pls.' Summ. J. Br. 31, ECF No. 45. But the Fifth Circuit has all but foreclosed the distinction between boundaries and principles, upholding even a delegation of the power to "deem" which tobacco products should be subject to various mandates because Congress had cabined the delegation to narrow categories. *Big Time Vapes*, 963 F.3d at 443–45. Plaintiffs do not address *Big Time Vapes*.

A brief note is appropriate on *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), which the Fifth Circuit released during the parties' briefing. The panel in *Jarkesy* held that Congress violated the nondelegation doctrine when it gave the Securities and Exchange Commission unfettered authority

to choose whether to bring enforcement actions in Article III courts or within the agency. *Id.* at 459. The panel held that the decision to bring an action in an agency tribunal instead of in an Article III court is legislative in nature. *Id.* at 461–62 (citing *Crowell v. Benson*, 285 U.S. 22, 50 (1932)). The panel then held that Congress's delegation of that legislative authority lacked an intelligible principle because "Congress offered *no guidance* whatsoever." *Id.* at 462. Even the agency agreed that Congress had "given it exclusive authority and absolute discretion to decide whether to bring securities fraud enforcement actions within the agency instead of in an Article III court." *Id.* at 462. This case, however, is not one in which Congress has offered "no guidance." Congress's guidance may be minimal, and the power conferred may be significant. But the authority granted to the agencies falls within the constitutional parameters outlined by the Supreme Court and the Fifth Circuit.

Plaintiffs' nondelegation argument relies almost entirely on the majority's reflections on HRSA in *Little Sisters of the Poor*. "The Court might well decide—perhaps soon—to reexamine or revive the nondelegation doctrine. But we are not supposed to read tea leaves to predict where it might end up." *Big Time Vapes*, 963 F.3d at 447 (cleaned up). The Court thus **GRANTS** summary judgment in favor of Defendants as to Claim 2 of Plaintiffs' Amended Complaint.

### E.  Religious Freedom Restoration Act

Plaintiffs claim that the PrEP mandate violates RFRA.[10] This Section resolves only Braidwood's claim as to the PrEP mandate. The Court will take further briefing on the scope of the relief, standing of the other Plaintiffs, and the other Plaintiffs' RFRA claims.

RFRA generally prohibits the government from "substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C.

---

[10] Plaintiffs narrowed their RFRA claim to the PrEP mandate. *See supra* note 3.

§ 2000bb-1(a). To claim protection under RFRA, Braidwood "must show that (1) the relevant religious exercise is grounded in a sincerely held religious belief and (2) the government's action or policy substantially burdens that exercise by, for example, forcing [Braidwood] to engage in conduct that seriously violates [its] religious beliefs." *Ali v. Stephens*, 822 F.3d 776, 782–83 (5th Cir. 2016) (cleaned up). If Braidwood carries that burden, the government "*may* substantially burden a person's exercise of religion *only if* it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b) (emphases added).

The PrEP mandate substantially burdens the religious exercise of Braidwood's owners. Braidwood is a for-profit corporation owned by Steven Hotze. Pls.' App. 69, ECF No. 46. Hotze objects to providing coverage for PrEP drugs because he believes that (1) the Bible is "the authoritative and inerrant word of God," (2) the "Bible condemns sexual activity outside marriage between one man and one woman, including homosexual conduct," (3) providing coverage of PrEP drugs "facilitates and encourages homosexual behavior, intravenous drug use, and sexual activity outside of marriage between one man and one woman," and (4) providing coverage of PrEP drugs in Braidwood's self-insured plan would make him complicit in those behaviors. *Id.* at 72. Yet the ACA *requires* Braidwood to provide coverage for PrEP drugs. *See* 26 U.S.C. § 4980H(c)(2); 42 U.S.C. § 300gg-13(a)(1); 45 C.F.R. § 147.130(b)(1). If Braidwood does not provide coverage for PrEP drugs, it faces a substantial monetary penalty. *See* 26 U.S.C. §§ 4980D, 4980H. It is well established—and Defendants do not contest—that putting employers to this choice imposes a substantial burden on religious exercise. *See Hobby Lobby Stores*, 573 U.S. at 725–26.

Rather than disputing the law, Defendants dispute Hotze's beliefs. They argue that Hotze's claim that PrEP drugs facilitate various kinds of behavior is an empirical one that requires factual support. *See* Defs.' Summ. J. Br. 66–67, ECF No. 64. But Defendants inappropriately contest the *correctness* of Hotze's beliefs, when courts may test only the *sincerity* of those beliefs. The Supreme Court has "made it abundantly clear that, under RFRA, [HHS] must accept the sincerely held complicity-based objections of religious entities." *Little Sisters of the Poor*, 140 S. Ct. at 2383. Defendants may not "tell the plaintiffs that their beliefs are flawed" because the connection between the morally objectionable conduct and complicity in the conduct "is simply too attenuated." *Hobby Lobby Stores*, 573 U.S. at 723–24. In other words, "[i]f an employer has a religious objection to the use of a covered contraceptive, and if the employer has a sincere religious belief that compliance with the mandate makes it complicit in that conduct, then RFRA requires that the belief be honored." *Little Sisters of the Poor*, 140 S. Ct. at 2390 (Alito, J., concurring).

Braidwood has shown that the PrEP mandate substantially burdens its religious exercise. The burden thus shifts to Defendants to show that the PrEP mandate furthers a compelling governmental interest and is the least restrictive means of furthering that interest. Defendants have not carried that burden.

> **1.  Defendants have not shown that the PrEP mandate furthers a compelling governmental interest.**

Defendants claim a compelling interest in reducing the spread of HIV, a potentially fatal infectious disease. *See* Defs.' Summ. J. Br. 68, ECF No. 64. PrEP drugs reduce the risk of getting HIV from sex by about 99%, and from injection drug use by about 74%. Defs.' App. 385, ECF No. 65. And because HIV is a contagious disease, the benefits of PrEP use by a portion of the population extend to the broader public. *See id.* 385–86. PrEP prescriptions can be expensive, costing as much as $20,000 per year. *Id.* at 387. Defendants argue that the PrEP mandate is a cost-

effective solution at inhibiting the spread of HIV. Braidwood does not dispute the government's compelling interest in preventing the spread of infectious disease, the severity of HIV, or the effectiveness of PrEP drugs. *See* Pls.' Resp. Br. 46, ECF No. 74.

But Defendants frame the interest too broadly. "RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430–31 (2006). That requires courts "to look to the marginal interest" in enforcing the government mandate in similar cases. *Hobby Lobby Stores*, 573 U.S. at 727.

As an initial matter, Defendants' argument is at odds with their insistence that the PrEP mandate is merely a "recommendation." *See supra* Section III.B.2. Defendants claim a compelling interest in forcing employers to cover PrEP drugs in their insurance policies. But Congress did not reflect that interest in the ACA. Instead, Congress reflected an interest in compelling coverage for whatever PSTF happens to recommend as having an "A" or "B" rating. 42 U.S.C. § 300gg-13(a)(1). PSTF, meanwhile, "does not articulate the position of the United States government," and is entirely agnostic on what services insurance policies ought to cover. Defs.' Summ. J. Br. 15, ECF No. 64. In fact, PSTF recommends PrEP drugs only "to persons who are at high risk of HIV acquisition." Pls.' App. 12, ECF No. 46. Neither Congress nor PSTF expressed the compelling interest that Defendants now put forward. *See Little Sisters of the Poor*, 140 S. Ct. at 2392 (Alito, J., concurring) ("We can answer the compelling interest question simply by asking whether *Congress* has treated the provision of free contraceptives to all women as a compelling interest.").

23-10326.1818

More importantly, Defendants do not show a compelling interest in forcing private, religious corporations to cover PrEP drugs with no cost-sharing and no religious exemptions. Defendants provide no evidence of the scope of religious exemptions, the effect such exemptions would have on the insurance market or PrEP coverage, the prevalence of HIV in those communities, or any other evidence relevant "to the marginal interest" in enforcing the PrEP mandate in these cases. *Hobby Lobby Stores*, 573 U.S. at 727. Moreover, the ACA's exemptions for grandfathered plans[11] and employers with fewer than fifty employees[12] undermines Defendants' claim of the "critical importance of reducing barrier to PrEP access." Defs.' Summ. J. Br. 70, ECF No. 64; *see Fulton v. City of Phila.*, 141 S. Ct. 1868, 1882 (2021). Defendants outline a generalized policy to combat the spread of HIV, but they provide no evidence connecting that policy to employers such as Braidwood, nor do they provide evidence distinguishing potential religious exemptions from existing secular exemptions. Thus, Defendants have not carried their burden to show that the PrEP mandate furthers a compelling governmental interest.

### 2. Defendants have not shown that the PrEP mandate is the least restrictive means of furthering their stated interest.

Even if Defendants had satisfied the compelling-interest prong, they have not shown that the PrEP mandate is the least restrictive means of furthering that interest. "The least-restrictive-means standard is exceptionally demanding . . . ." *Hobby Lobby Stores*, 573 U.S. at 728. Regarding the contraceptive mandate, the Supreme Court held that the "most straightforward way" of ensuring access to contraceptives "would be for the Government to assume the cost of providing the four contraceptives at issue to any women who are unable to obtain them under their health-insurance policies due to their employers' religious objections." *Id.* Likewise, Defendants have not

---

[11] 42 U.S.C. § 18011(a).
[12] 26 U.S.C. § 4980H.

shown that the government would be unable to assume the cost of providing PrEP drugs to those who are unable to obtain them due to their employers' religious objections.

Defendants' only response is that Braidwood waived this argument by not providing evidence of this proposed alternative in discovery. *See* Defs.' Summ. J. Br. 70, ECF No. 64. But Defendants, not Plaintiffs, bear the burden of demonstrating that applying the PrEP mandate to Braidwood "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b)(2). "[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Holt v. Hobbs*, 574 U.S. 352, 365 (2015) (citation and internal quotation marks omitted) (interpreting the Religious Land Use and Institutionalized Persons Act). Defendants have not demonstrated that the PrEP mandate is the least restrictive means of furthering their articulated interest. The Court thus **GRANTS** summary judgment in favor of Braidwood as to Claim 5 of Plaintiffs' Amended Complaint. The Court reserves ruling on Claim 5 as to the remaining Plaintiffs.

## IV.   CONCLUSION

Braidwood has standing to pursue its claims, so the Court is able to resolve most of the issues in this case. Accordingly, the Court rules as follows:

1) PSTF violates the Appointments Clause. The Court **GRANTS** Plaintiffs' summary judgment motion and **DENIES** Defendants' summary judgment motion on Claim 1 as to 42 U.S.C. § 300gg-13(a)(1). The Court reserves ruling on the appropriate remedy.

2) HRSA and ACIP do not, on this record, violate the Appointments Clause. The Court **DENIES** Plaintiffs' summary judgment motion and **GRANTS** Defendants' summary judgment motion on Claim 1 as to 42 U.S.C. § 300gg-13(a)(2) through (a)(4). The Court thus **DISMISSES** Claim 1 as to 42 U.S.C. § 300gg-13(a)(2) through (a)(4).

3) PSTF does not violate Article II's Vesting Clause. The Court **DENIES** Plaintiffs' summary judgment motion and **GRANTS** Defendants' summary judgment motion on Claim 3. The Court thus **DISMISSES** Claim 3.

4) The preventive services provisions do not violate the nondelegation doctrine. The Court **DENIES** Plaintiffs' summary judgment motion and **GRANTS** Defendants' summary judgment motion on Claim 2. The Court thus **DISMISSES** Claim 2.

5) The PrEP mandate violates Braidwood's rights under RFRA. The Court **GRANTS** Plaintiffs' summary judgment motion and **DENIES** Defendants' summary judgment motion on Claim 5 as to Braidwood. The Court reserves ruling on Claim 5 as to the remaining Plaintiffs and reserves ruling on the appropriate remedy.

6) The parties indicated they would file supplemental briefing on the scope of relief, standing for the remaining Plaintiffs as it relates to the scope of relief, and the claims relating to the contraceptive mandate. The parties shall file a joint status report by **September 9, 2022**, outlining the remaining issues to be decided and proposing a schedule for the remaining briefing.

**SO ORDERED** this **7th day** of **September, 2022**.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

42

**TAB 5**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| **BRAIDWOOD MANAGEMENT INC., et al.,** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **Civil Action No. 4:20-cv-00283-O** |
| **XAVIER BECERRA, et al.,** | § § § | |
| **Defendants.** | § | |

## SECOND MEMORANDUM OPINION & ORDER ON REMEDIES
## IN RELATION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Before the Court are Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Summary Judgment (ECF No. 98), filed October 24, 2022; Defendants' Response to Plaintiffs' Supplemental Motion for Summary Judgment and Supplemental Cross-Motion for Summary Judgment (ECF No. 99) and Supplemental Appendix in Support (ECF No. 100), filed November 23, 2022; Plaintiffs' Reply Brief in Support of Supplemental Motion for Summary Judgment and Response to Defendants' Supplemental Cross-Motion for Summary Judgment (ECF No. 111), filed January 6, 2023; and Defendants' Reply in Support of Supplemental Cross-Motion for Summary Judgment (ECF No. 112), filed January 27, 2023. Also before the Court are the *Amici Curiae* Brief for the American Cancer Society, et al. (ECF No. 107), filed December 1, 2022; and the Brief of *Amici Curiae* American Medical Association, et al. (ECF No. 108), filed December 1, 2022.

On September 7, 2022, this Court resolved the parties' cross-motions for summary judgment on the merits partly in favor of Plaintiffs and partly in favor of Defendants. Mem. Op. 41–42, ECF No. 92. The Court ordered supplemental briefing regarding standing for the non-

Braidwood Plaintiffs, the non-Braidwood religious objector Plaintiffs' Religious Freedom Restoration Act claim with respect to the PrEP coverage mandate, and the appropriate scope of relief for the successful parties. *Id.* Having considered the parties' briefing and applicable law on those issues, and in light of its prior decision on the merits in favor of Defendants, the Court **DISMISSES with prejudice** the religious objector Plaintiffs', including Braidwood Management Inc.'s, contraceptive mandate claim. The non-religious objector Plaintiffs' contraceptive mandate claim is **DISMISSED without prejudice** for lack of subject matter jurisdiction. Because the Court concludes that the PrEP coverage mandate violates RFRA, the Court **GRANTS** the non-Braidwood religious objector Plaintiffs' summary judgment motion and **DENIES** Defendants' summary judgment motion on this claim.

Therefore, the Court **GRANTS** all religious objector Plaintiffs', including Braidwood Management Inc.'s, request for declaratory and injunctive relief as to this claim. Finally, in light of its prior ruling that 42 U.S.C. § 300gg-13(a)(1)'s compulsory preventive care coverage requirements in response to an "A" or "B" rating by the U.S. Preventive Services Task Force made on or after March 23, 2010 violates the Appointments Clause, the Court **GRANTS** Plaintiffs' request for declaratory and injunctive relief with respect to this claim, **VACATES** any and all agency actions implementing or enforcing that provisions' mandatory coverage requirements, and **ENJOINS** Defendants and their officers, agents, servants, and employees from implementing or enforcing the compulsory preventive care coverage mandate in the future.

## I.    BACKGROUND

### A.  Legal Background

On March 23, 2010, Congress enacted the Patient Protection and Affordable Care Act (ACA), which dictates four categories of preventive care services most private health insurance

companies must cover. 42 U.S.C. § 300gg-13. The Act empowers three agencies—the U.S. Preventive Services Task Force (PSTF), the Health Resources and Services Administration (HRSA), and the Advisory Committee on Immunization Practices (ACIP)—to unilaterally determine what kinds of preventive care fall within each category of mandatory coverage by issuing guidelines or recommendations that, by operation of the statute, carry the force of law. *Id.* Specifically, PSTF recommends "A" or "B" ratings for specific evidence-based items and services for all patient demographics; HRSA issues "comprehensive guidance" regarding preventive care and screening for infants, children, adolescents, and women; and ACIP recommends certain immunizations. *Id.* § 300gg-13(a)(1)–(4). Private health insurers must cover and cannot impose cost sharing requirements for these recommended services. *Id.* § 300gg-13(a).

While all three agencies are affiliated with the U.S. Department of Health and Human Services (HHS), they are not all identically structured. ACIP and HRSA were created by the Secretary of HHS to provide vaccine recommendations and guidance on programs and activities within the agency.[1] *See* 42 U.S.C. § 217a(a) (authorizing HHS Secretary to create advisory councils or committees). Both ACIP and HRSA are ultimately subject to the "supervision and direction" of the HHS Secretary. 42 U.S.C. §§ 202, 243, 247b.[2] By contrast, PSTF is a volunteer body of non-federal experts that provides evidence-based recommendations related to preventive care services and health promotion.[3] And though the Task Force receives support from AHRQ, an

---

[1] Mem. Op. 3, ECF No. 92.

[2] Mem. Op. 14–17, ECF No. 92 (recognizing HHS Secretary's authority to ratify actions taken by ACIP and HRSA).

[3] Defs.' App. in Supp. of Cross-Mot. for Summ. J. 66, ECF No. 65. Though PSTF is not housed within another federal agency, given its authority to compel insurers to cover recommended services through issuance of ratings in conjunction with the ACA's compulsory coverage requirements, the Task Force members function as "officers" of the United States that exercise significant legal authority and are therefore referred to as an "agency" for purposes of this Opinion. Mem. Op. 18–24, ECF No. 92; *see also* 5 U.S.C. § 701 (defining "agency" as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency").

agency within HHS, the Task Force is not itself a part of AHRQ or HHS.[4] 42 U.S.C. § 299b-4(a)(1). When it created PSTF, Congress specified that the Task Force's recommendations "shall be independent and, to the extent practicable, not subject to political pressure." *Id.* § 299b-4(a)(6).

Since the ACA's enactment, the agencies have issued several such pronouncements. Among those, and relevant to the case at hand, are HRSA's 2011 guidance compelling insurance companies to cover all FDA-approved contraceptive methods—including certain abortifacients ("contraceptive mandate")—and PSTF's 2019 issuance of an "A" rating for preexposure prophylaxis (PrEP) drugs that are used by persons at high risk of HIV acquisition ("PrEP mandate").[5] For purposes of this Opinion, the Court refers collectively to agency guidance or recommendations made compulsory through operation of § 300gg-13(a)(1) through (a)(4), and including the contraceptive and PrEP mandates, as the "preventive care mandates."

### B. The Parties

Plaintiffs are six individuals and two businesses who challenge the legality of the preventive care mandates as violative of the Constitution and the Religious Freedom Restoration Act (RFRA). Each desires the option to purchase or provide insurance that excludes or limits coverage currently required by the preventive care mandates and argues that Defendants' implementation and enforcement of the preventive care mandates prevents them from doing so. Each Plaintiff objects to the preventive care mandates for religious or personal reasons, or both.[6]

Plaintiffs John Kelley, Joel Starnes, Zach Maxwell, and Ashley Maxwell provide health coverage for themselves and their families. They want the option to purchase health insurance that

---

[4] Defs.' Resp. to Pls.' Mot. for Summ. J. 40, ECF No. 64.
[5] Pls.' App. 21, 12, ECF No. 46.
[6] For purposes of this Opinion, the Court refers to Plaintiffs Miller, Scheideman, and Fort Worth Oral Surgery as the "non-religious objector Plaintiffs"; to Plaintiffs Kelley, Starnes, Maxwell, Kelley Orthodontics, and Braidwood Management Inc. as the "religious objector Plaintiffs"; and to all Plaintiffs except for Braidwood Management Inc. as the "non-Braidwood Plaintiffs."

23-10326.2106

excludes or limits coverage of PrEP drugs, contraception, the HPV vaccine, and the screenings and behavioral counseling for STDs and drug use.[7] They say neither they nor their families require such preventive care.[8] They also claim that compulsory coverage for those services violates their religious beliefs by making them complicit in facilitating homosexual behavior, drug use, and sexual activity outside of marriage between one man and one woman.[9]

Plaintiff Joel Miller likewise provides health coverage for himself and his family. Like the other Plaintiffs, Miller wants the option to purchase health insurance that excludes or limits coverage of preventive care that "he does not want or need."[10] Miller's wife "is past her childbearing years," and neither he nor his family members "engage in the behaviors that makes [sic] this preventive treatment necessary."[11] Plaintiff Gregory Scheideman provides health coverage for himself, his family, and the employees of his company, Fort Worth Oral Surgery. Scheideman wants the option to purchase health insurance that excludes or limits coverage of services currently required by the preventive care mandates.[12] Scheideman says neither he nor his family members require such preventive care.[13] In addition, Scheideman and his business partners do not want to cover such care for their employees.[14]

Plaintiff Kelley Orthodontics provides health insurance for its employees. Kelley Orthodontics is a Christian professional association that wishes to provide health insurance for its employees that excludes coverage of preventive care such as contraceptives and PrEP drugs.[15]

---

[7] *See* Pls.' App. 33–37, 39–43, 50–54, 56–60, ECF No. 46.
[8] *Id.*
[9] *Id.* at 36, 42, 53, 59.
[10] *Id.* at 62–65.
[11] *Id.* at 65.
[12] *Id.* at 45–48.
[13] *Id.*
[14] *Id.*
[15] *Id.* at 37.

Plaintiff John Kelley, the owner of Kelley Orthodontics, says that providing such coverage violates his religious beliefs.[16]

Plaintiff Braidwood Management Inc. is a Christian for-profit corporation owned by Steven Hotze.[17] Braidwood provides health insurance to its approximately seventy employees through a self-insured plan, and Hotze wishes to provide health insurance for Braidwood's employees that excludes coverage of preventive care such as contraceptives and PrEP drugs.[18] Hotze, like Plaintiffs Kelley, Starnes, and the Maxwells, objects to coverage of those services on religious grounds.[19] Hotze also wants the option to impose copays or deductibles for preventive care in Braidwood's self-insured plan.[20]

Defendants are the Secretary of HHS, Xavier Becerra; the Secretary of the Treasury, Janet Yellen; the Secretary of Labor, Martin Walsh; and the United States. The three individual Defendants are sued in their official capacities for their roles in enforcing the preventive care mandates.

### C. Procedural Background

Plaintiffs' First Amended Complaint alleged several claims: (1) that the preventive care mandates violate Article II's Appointments Clause; (2) the preventive care mandates violate the nondelegation doctrine; (3) that 42 U.S.C. § 300gg-13(a)(1) violates Article II's Vesting Clause; (4) the preventive care mandates, as a matter of statutory interpretation, apply only to ratings, recommendations, or guidelines in place at the time Congress passed the ACA; and (5) that the PrEP Mandate individually violates RFRA.[21] The Court dismissed Plaintiff's statutory

---

[16] *Id.*
[17] *Id.* at 67.
[18] *Id.* at 67–71.
[19] *Id.* at 69–71.
[20] *Id.*
[21] First Am. Compl., ECF No. 14.

23-10326.2108

interpretation claim for failure to state a claim and denied on the merits their Appointments Clause claim with respect to ACIP and HRSA and their nondelegation and Vesting Clause claims.[22] However, the Court granted summary judgment in favor of Plaintiffs' Appointment Clause claim with respect to PSTF and that the PrEP mandate violates Braidwood's rights under RFRA.[23] The issues left to resolve are whether the non-Braidwood Plaintiffs have standing, whether the PrEP Mandate violates RFRA as to the non-Braidwood Plaintiffs, and what is the appropriate remedy for the Plaintiffs who succeed on their claims. The parties have briefed the issues, which are ripe for the Court's review.

## II.  DISCUSSION

### A.  Whether the Non-Braidwood Plaintiffs Have Standing to Press their Claims

The Court turns first to the question of whether the non-Braidwood Plaintiffs have Article III standing such that they may be granted relief on their successful claims. *See Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650 (2017) (requiring each plaintiff to demonstrate its own Article III standing to seek and obtain each form of relief sought). To establish Article III standing, each plaintiff must set forth specific evidence showing (1) an injury-in-fact (2) that is fairly traceable to the defendants' conduct, and (3) is likely to be redressed by a favorable judicial decision. *Id.* An injury-in-fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical" in nature. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992). As the parties invoking federal jurisdiction, Plaintiffs bear the burden of proving each element of standing. *Id.* at 561.

The purchaser standing doctrine, developed in the D.C. Circuit in cases challenging

---

[22] Order, ECF No. 35 (denying statutory interpretation claim for failure to state a claim); Mem. Op., ECF No. 92 (denying Plaintiffs' motion for summary judgment on the merits as to their nondelegation claim, Vesting Clause claim, and Appointments Clause claim with respect to ACIP and HRSA).
[23] Mem. Op. 41–42, ECF No. 92.

government conduct, recognizes Article III injury-in-fact when a plaintiff has been deprived of the opportunity to purchase a desired product due to government action. *See, e.g.*, *Weissman v. Nat'l R.R. Passenger Corp.*, 21 F.4th 854, 857–58 (D.C. Cir. 2021); *Orangeburg, S.C. v. FERC*, 862 F.3d 1071, 1077–78 (D.C. Cir. 2017); *Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, 901 F.2d 107, 113–14 (D.C. Cir. 1990). Under this theory, courts have recognized purchaser standing where the plaintiffs have "lost [the] opportunity to purchase a desired product . . . even if they could ameliorate the injury by purchasing some alternative product." *Orangeburg*, 862 F.3d at 1078 (cleaned up). However, such plaintiffs need not lose *all* opportunity to purchase a product to establish injury-in-fact. They must simply demonstrate that their choices have been "restrict[ed]" or that there is "*less* opportunity to purchase [the desired product] than would otherwise be available to them." *Competitive Enter. Inst.*, 901 F.2d at 112; *Center for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 793 F.2d 1322, 1332 (D.C. Cir. 1986) (emphasis added). In making this determination, courts have focused on whether the challenged government action has rendered the consumer's desired product "unreasonably priced" or has made it "not readily available." *Weissman*, 21 F.4th at 858.

While lost or diminished opportunity to purchase a desired product has been the general rule for purchaser standing since its inception, the D.C. Circuit's recent decision in *Weissman v. National Railroad Passenger Corporation* adds nuance to the standard. 21 F.4th at 858–59. In *Wiessman*, now the leading decision on the doctrine of purchaser standing, the D.C. Circuit distinguished "core features" versus "ancillary terms" of a particular product, holding that would-be plaintiffs have purchaser standing if they can show that their desired product, "defined at a reasonable level of generality" and "differentiated from available alternatives by its core features," is no longer available. *Id.* at 859. If the desired product is only distinguishable from the available

8

alternative product "by an ancillary term," however, the plaintiff has not carried its burden as to injury-in-fact. *Id.*

Here, Plaintiffs rely exclusively on the doctrine of purchaser standing and argue that, because each of the non-Braidwood Plaintiffs has been denied the opportunity to purchase a desired product—namely, health insurance coverage that excludes services the would-be consumers find religiously objectionable, unnecessary, or otherwise undesirable—they have standing to press their associated claims for relief.[24] Defendants attack Plaintiffs' reliance on purchaser standing at a theoretical level, arguing first the doctrine is inapplicable to this case because "the Fifth Circuit has never adopted the purchaser standing doctrine;" that the doctrine is limited exclusively to the context of the Administrative Procedure Act (APA); and, those issues aside, Plaintiffs cannot satisfy the standard under *Weissman* anyway.[25]

As an initial matter, that the Fifth Circuit has not expressly adopted the purchaser standing doctrine does not bar its application here because neither has the Fifth Circuit *rejected* the theory. Nor is it uncommon or improper for a district court to look to outside Circuits for persuasive legal authority where there is no binding precedent on the issue at hand. And despite Defendants' contrary assertion, the purchaser standing doctrine need not confer standing only in cases alleging claims under the APA. Indeed, as Defendants concede, the *Weissman* decision does not expressly foreclose the doctrine's application beyond the APA context.[26] *See Weissman*, 21 F.4th at 859 (noting that the Circuit "has assumed" purchaser standing applies only in the APA context but theorizing that it "could apply beyond that context"). The Court knows of no compelling reason to impose more stringent rules of standing when a plaintiff brings an APA claim as opposed to any

---

[24] Pls.' Supp. Br. 11–12, 14–15, ECF No. 98.
[25] Defs.' Resp. 5, ECF No. 99.
[26] *Id.*

other sort of claim, and Defendants offer none. Therefore, provided they satisfy purchaser standing as the D.C. Circuit has articulated it, the Court finds no reason to deny the Plaintiffs standing on this basis.[27]

The religious objector Plaintiffs attest that they want the option to purchase health insurance—for themselves, their families, or their employees—that excludes coverage of preventive care such as PrEP drugs, the HPV vaccine, contraceptives, and screenings and behavioral counseling for STDs and drug use.[28] Each claims that the preventive care mandates requiring compulsory coverage for those services violates their religious beliefs by making them complicit in facilitating homosexual behavior, drug use, and sexual activity outside of marriage between one man and one woman as a condition of purchasing health insurance.[29]

By contrast, the non-religious objector Plaintiffs, as well as those who object to the preventive care mandates on religious grounds, claim injury based on their inability to purchase insurance that excludes or imposes copays or deductibles for preventive care services they do not want or need, resulting in higher monthly premiums.[30] Plaintiffs claim this denial of choice is a distinct injury from the inability to purchase insurance that is violative of one's sincerely held religious beliefs.[31]

Defendants do not contest that the religious objector Plaintiffs' Hobson's choice between purchasing health insurance that includes religiously objectionable services or forgoing

---

[27] Plaintiffs suggest that the Court should decline to follow *Weissman* on grounds that the decision is an anomaly, departing from decades of D.C. Circuit and Supreme Court precedent with its core feature-versus-ancillary term distinction. Pls.' Reply 6–7, ECF No. 111. While it may be true that *Weissman* substantially amends the rule of purchaser standing, that case is the Circuit's leading decision on the doctrine. And given no controlling authority within the Fifth Circuit, the Court is unwilling to depart from that same Circuit's most recent precedential decision on the subject.

[28] See note 7 *supra*.

[29] *See* Pls.' App. at 36–37, 42, 53, 59, ECF No. 46; Pls.' Supp. Br. at 12, ECF No. 98.

[30] Pls.' App. 33, 39, 45, 50, 56, 62, ECF No. 46.

[31] *Id.*; Pls.' Supp. Br. 14–15, ECF No. 98.

conventional health insurance altogether is an injury-in-fact. And such an argument would be meritless. *See March for Life v. Burwell*, 128 F. Supp. 3d 116, 128–29 (D.D.C. 2015) ("The employee plaintiffs have demonstrated that the [Contraceptive] Mandate substantially burdens their sincere exercise of religion . . . [because] the Mandate, in its current form, makes it impossible for employee plaintiffs to purchase a health insurance plan that does not include coverage of [services] to which they object [on religious grounds]."). Instead, Defendants argue that these plaintiffs suffer no real injury as a result of the preventive care mandates because they do not currently participate in the health care market and that they opted out of the insurance market for reasons other than the mandates, namely, the *cost* of coverage.[32] But each of these arguments fail.

First, the Plaintiffs need not *act* to violate their sincerely held religious convictions by purchasing a product they believe would make them complicit in objectionable conduct just to obtain standing. Defendants' contrary assertion is both illogical and legally incorrect. Rather, Plaintiffs need only show their *opportunity* to purchase their desired product, as defined by its core features, has been reduced or eliminated. *Weissman*, 21 F.4th at 859; *Competitive Enter. Inst.*, 901 F.2d at 112 (finding plaintiffs' "restricted opportunity to purchase" a desired product to be a "cognizable injury"); *Center for Auto Safety*, 793 F.2d at 1332 (finding standing where plaintiffs had "less opportunity to purchase [the desired product] than would otherwise be available to them"). It is undisputed that health insurance companies stopped selling insurance plans excluding the objectionable coverage in response to the preventive care mandates. As a result, these Plaintiffs lost access to health insurance plans they could purchase without religious objection. Thus, religious objector Plaintiffs have made the necessary showing here.[33]

The fact that Plaintiffs Kelley and Starnes utilize Christian bill-sharing does not negate this

---

[32] Defs.' Resp. 3–5, ECF No. 99; Defs.' Reply 2–7, ECF No. 112.
[33] See notes 7 and 29 *supra*.

11

cognizable injury. *See Orangeburg*, 862 F.3d at 1078 (cleaned up) (noting that "lost opportunity to purchase a desired product [is sufficient to demonstrate injury-in-fact] . . . even if [plaintiffs] could ameliorate the injury by purchasing some alternative product"). Nor does this standard require Plaintiffs to prove that they would, in fact, purchase conventional health insurance if the preventive care mandates were lifted.[34] As discussed, Plaintiffs are suffering a cognizable injury *now* through their current inability to purchase conventional health insurance that excludes the objectionable coverage.[35] And Defendants have not offered any decision indicating that purchaser standing plaintiffs must evince a *commitment*, rather than a desire, to purchase the product in question.[36]

Second, Defendants argue that several of the religious objector Plaintiffs cannot demonstrate standing because in their verified responses to requests for admissions, they indicated they stopped purchasing health insurance "because it was too expensive," not because of the preventive care mandates.[37] Defendants argue that under Federal Rule of Civil Procedure 36, the Court must accept these statements as "conclusively established."[38] FED. R. CIV. P. 36(b). While Defendants are correct about the conclusive nature of the responses, they are wrong that the Court must accept them as the "*complete and sufficient* basis for [the plaintiffs'] decision to stop purchasing health insurance."[39] The language of Rule 36(b) does not compel this result and Defendants cite no authority to support the proposition that the responses must be read as the *exclusive* basis for Plaintiffs' decisions. Reading the statements in context supports this conclusion.

---

[34] Defs.' Resp. 4, ECF No. 99.
[35] For this reason, the Court need not address whether the Plaintiffs' late-coming declarations are permissible to support their assertions of standing.
[36] *See* Defs.' Reply 4–6, ECF No. 111.
[37] Defs.' Resp. 3, ECF No. 99; Defs.' Reply 2–3, ECF No. 111.
[38] Defs.' Reply 2–3, ECF No. 111.
[39] *Id.* at 3 (emphasis added).

23-10326.2114

Importantly, Defendants' requests for admission addressed solely whether Plaintiffs could *quantify* the impact of the mandates on their insurance premiums.[40] Plaintiffs responded that they could not quantify the increased costs, but that they knew their premiums had become too expensive to afford.[41] Their discussion of costs is a natural result of Defendants' targeted questions about premiums.[42] As such, the Court finds no reason to deny standing on this basis.

The only remaining issue related to this element of the standing inquiry is whether the preventive care mandates to which the non-Braidwood Plaintiffs object are "core features" or merely "ancillary terms." In *Weissman*, the D.C. Circuit applied its core features-versus-ancillary term distinction to hold that would-be plaintiffs did not have purchaser standing because they had no cognizable interest in contracting to purchase train tickets without being subject to a binding arbitration provision. *Weissman*, 21 F.4th at 859. The court concluded that the purchasers had "adequately alleged a 'primary,' concrete consumer interest in traveling on Amtrak, but not in purchasing an Amtrak ticket without an arbitration provision." *Id.* at 860. In other words, the arbitration provision was merely ancillary to the desired product defined at a reasonable level of generality—namely, a train ticket.

Defendants argue that, here, the objectionable preventive care coverages are merely ancillary terms and that "whatever precise features of health insurance may be 'core' to Plaintiffs, they continue to have access to health insurance that includes those features, and thus do not have standing under the 'purchaser standing' theory."[43] The Court agrees in part. Defendants' argument

---

[40] *See* Defs.' App. in Supp. of Cross-Mot. for Summ. J. 181–222, 277–96, ECF No. 65.

[41] See note 40 *supra*.

[42] Of course, had Plaintiffs offered this same response to a broad question about *why* they stopped purchasing insurance, and later tried to back away from that answer in their pleadings, Rule 36 would compel a different result. But the specific cost-based questions in Defendants' requests for admission are important context.

[43] Defs.' Reply 10, ECF No. 111.

is true as to the non-religious objector Plaintiffs, who would like to purchase health insurance without the unwanted an unnecessary preventive care services and associated copays or deductibles but otherwise retain access to conventional healthcare. Indeed, these Plaintiffs are current participants in the health insurance market and, by all appearances, are not prevented from retaining it for their personal or business needs on account of expense.[44] The *Weissman* court offered no guidance about where the line between "core features" and "ancillary terms" is to be drawn. But wherever that line may be, that the non-religious objector Plaintiffs may still—and indeed do—purchase conventional health insurance despite its inclusion of preventive care coverage suggests the features are merely ancillary.

The same argument cannot be made for the religious-objector Plaintiffs. These Plaintiffs, who do not currently and are unwilling to purchase health insurance that includes the preventive care coverage, find those services objectionable enough to forgo conventional health insurance altogether. Though the Court does not suggest that a decision not to purchase, without more, would be enough to determine whether a feature is "core," a decision not to purchase *based on one's religious convictions* certainly meets the criteria. In short, these Plaintiffs have a cognizable interest in being able to purchase a product that does not obligate them to violate their religious beliefs. Though the Government may disagree with those beliefs, it is in no position to dictate whether the Plaintiffs' interests in adhering to their religious convictions is a core or merely ancillary component of their decision to abstain. Thus, the religious objector Plaintiffs have carried their burden to demonstrate injury-in-fact based on a theory of purchaser standing.

The remaining two elements for Article III standing—traceability and redressability—are relatively straightforward. Plaintiffs "must satisfy the 'causation' and 'redressability' prongs of

---

[44] Pls.' App. 45–48, 62–65, ECF No. 46.

23-10326.2116

the Art. III minima by showing that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). When a plaintiff suffers injury as the object of the challenged government action, "there is ordinarily little question that the action . . . has caused him injury, and that a judgment preventing . . . the action will redress it." *Lujan*, 504 U.S. at 561–62. And indeed, there is little doubt that Plaintiffs' injuries—incurred through PSTF's ratings operating in conjunction with 42 U.S.C. § 300gg-13—are fairly traceable to Defendants' enforcement of the preventive care mandates. Nor is it contested that the forms of relief sought would likely redress the Plaintiffs' injuries. Moreover, the proliferation of short-term, limited duration insurance (STLDI) plans in response to Congress's exempting them from the ACA requirements adds further support to these elements.[45] That insurance companies are offering STLDI plans without preventive care coverage when not legally required to do so indicates that the restricted options in the conventional market are at least partly attributable to the Government's enforcement of the mandates. Thus, it is reasonable to conclude that if Defendants are broadly enjoined from enforcing these mandates, the conventional health insurance market may respond similarly to the STLDI market, meaning Plaintiffs' injuries would *likely* be redressed by a favorable decision.

*    *    *    *

In sum, the religious objector Plaintiffs have demonstrated standing and are entitled to press their claims for relief. Non-religious objector Plaintiffs Joel Miller and Gregory Scheideman have not made this showing. Given these conclusions, and the Court's prior determination that 42 U.S.C. § 300gg-13(a)(4) does not violate the Appointments Clause with respect to HRSA, the Court **DISMISSES with prejudice** the religious objector Plaintiffs' contraceptive mandate claims

---

[45] Pls.' App 176, ECF No. 46.

15

and shall enter summary judgment in favor of Defendants as to this claim. The Court **DISMISSES without prejudice** non-religious objector Plaintiffs' contraceptive mandate claim for lack of subject matter jurisdiction.[46]

### B. Whether the PrEP Coverage Mandate Violates the Religious Freedom Restoration Act as to the Non-Braidwood Religious Objector Plaintiffs

Having concluded that the non-Braidwood religious objector Plaintiffs have standing to press their claims for relief, the Court must now resolve on the merits their claim that the PrEP mandate violates RFRA. The Court previously decided the mandate violates RFRA as to Braidwood and incorporates much of its prior analysis here.[47]

RFRA generally prohibits the government from "substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a). To demonstrate a violation of RFRA, the remaining religious objector Plaintiffs "must show that (1) the relevant religious exercise is grounded in a sincerely held religious belief and (2) the government's action or policy substantially burdens that exercise by, for example, forcing [the plaintiffs] to engage in conduct that seriously violates [their] religious beliefs." *Ali v. Stephens*, 822 F.3d 776, 782–83 (5th Cir. 2016) (cleaned up) (interpreting RLUIPA).[48] If Plaintiffs carry that burden, the government "*may* substantially burden a person's exercise of religion *only*

---

[46] Defendants suggest the Court should dismiss the non-religious objector Plaintiffs' contraceptive coverage claim with prejudice, citing two decisions that depart from the general rule that dismissals based on lack of subject matter are without prejudice. Defs.' Reply 11 n.4 (citing *Guajardo v. Air Exp. Int'l, USA, Inc.*, No. 3:12-CV-815-L, 2012 WL 2886672, at *3 n.* (N.D. Tex. July 16, 2012) and *Westfall v. Miller*, 77 F.3d 868 (5th Cir. 1996)). Because these Plaintiffs have had ample opportunity to demonstrate standing, Defendants argue, they need not be given another chance to replead their claims. *Id.* But the single authoritative decision Defendants cite also dismissed based on the plaintiffs' failure to state a claim. *Westfall*, 77 F.3d at 870. For this reason, and because Defendants have not offered any other reason to depart from the general rule of dismissal, the Court dismisses without prejudice.

[47] Mem. Op. 36–41, ECF No. 92.

[48] *Holt v. Hobbs*, 574 U.S. 352, 356–58 (2015) (noting that RFRA and its sister statute RLUIPA apply identical standards).

*if* it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b) (emphases added).

As it does with Braidwood, the PrEP mandate substantially burdens the religious exercise of the remaining non-Braidwood Plaintiffs. And like the owner of Braidwood, these Plaintiffs object to purchasing or providing coverage for PrEP drugs because they believe that (1) the Bible is "the authoritative and inerrant word of God," (2) the "Bible condemns sexual activity outside marriage between one man and one woman, including homosexual conduct," (3) providing coverage of PrEP drugs "facilitates and encourages homosexual behavior, intravenous drug use, and sexual activity outside of marriage between one man and one woman," and (4) purchasing coverage of PrEP drugs by purchasing such coverage for personal or business use makes them complicit in those behaviors.[49]

Yet, as previously discussed, the ACA forces these Plaintiffs to choose between purchasing health insurance that violates their religious beliefs and forgoing conventional health insurance altogether. 42 U.S.C. § 300gg-13(a)(1); 45 C.F.R. § 147.130(b)(1). It is undisputed that putting individuals to this choice imposes a substantial burden on religious exercise. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725–26 (2014). Thus, Plaintiffs have shown that the PrEP mandate substantially burdens their religious exercise. The burden thus shifts to Defendants to show that the PrEP mandate furthers a compelling governmental interest and is the least restrictive means of furthering that interest.

For the reasons set out in the Court's prior Opinion, however, the Court finds that Defendants have not carried their burden to demonstrate a compelling government interest or that

---

[49] Pls.' App. 36–37, 42–43, 53–54, 59–60, ECF No. 46.

the PrEP mandate is the least restrictive means of furthering that articulated interest.[50] *Braidwood Mgmt., Inc. v. Becerra*, --- F. Supp. 3d ---, 2022 WL 4091215, at \*19–20 (N.D. Tex. Sept. 7, 2022). Defendants claim—and Plaintiffs do not dispute—a compelling government interest in inhibiting the spread of a potentially fatal infectious disease like HIV.[51] But as this Court previously held, properly framed in the context of this RFRA case, the question is whether the government has a compelling interest in requiring *all private insurers to cover PrEP drugs* in every one of their insurance policies.[52] But neither Congress nor PSTF expressed that compelling interest and the ACA's several exemptions for grandfathered plans and small businesses undermine Defendants' argument that all insurers must provide plans with PrEP drug coverage.[53] Nor have Defendants offered any meaningful argument as to how the PrEP mandate satisfies the "exceptionally demanding" least-restrictive-means test.[54] *Hobby Lobby Stores*, 573 U.S. at 728.

*      *      *      *

Because Defendants have not carried their burden to show that the PrEP mandate merits the substantial burden on Plaintiffs' religious exercise, the Court **GRANTS** summary judgment in favor of the remaining non-Braidwood Plaintiffs as to Claim 5 of Plaintiffs' Amended Complaint and **DENIES** Defendants' corresponding motion for summary judgment as to this claim. Under 28 U.S.C. § 2201, the Court **HOLDS** that the PrEP mandate violates Plaintiffs Braidwood Management Inc., Kelley Orthodontics, John Kelley, Joel Starnes, Zach Maxwell, and Ashley Maxwell's rights under the Religious Freedom Restoration Act. Braidwood Management Inc. and Kelley Orthodontics, and to the extent applicable, individual Plaintiffs need not comply with the

---

[50] Mem. Op. 38–41, ECF No. 92.
[51] Defs.' Mot. for Summ. J. 57, ECF No. 64; Pls.' Resp. to Mot. for Summ. J. 39, ECF No. 74.
[52] Mem. Op. 39, ECF No. 92.
[53] *Id.* at 39–40.
[54] *Id.* at 40–41.

preventive care coverage recommendations of the U.S. Preventive Services Task Force issued on or after March 23, 2010, because the members of the Task Force have not been appointed in a manner consistent with Article II's Appointments Clause. Accordingly, the Court **ENJOINS** Defendants and their officers, agents, servants, and employees from implementing or enforcing the PrEP mandate as against these Plaintiffs.

### C. Whether Plaintiffs are Entitled to a Universal Remedy or to Narrowly Tailored Relief

Having found in favor of the religious objector Plaintiffs on the merits of their Appointments Clause claim as it relates to PSTF and their claim that the PrEP mandate violates their rights under RFRA, the Court must determine the appropriate remedy. Though Defendants contest the parties' success on the merits, they do not dispute that successful Plaintiffs are entitled to party-specific declaratory and injunctive relief.[55] Thus, the final issue before the Court is what relief the Plaintiffs are entitled to for their success on the merits of their Appointments Clause claim as it pertains to PSTF.

Plaintiffs argue Braidwood, and the other religious objector Plaintiffs who have demonstrated Article III standing, is entitled to a universal remedy under the APA "set[ting] aside" every agency action taken to implement or enforce the preventive care recommendations (made compulsory through operation of 42 U.S.C. § 300gg-13(a)(1)) of the unconstitutionally appointed Task Force since March 23, 2010.[56] *See* 5 U.S.C. § 706(2)(A). Defendants object to this proposal and claim that, at most, Plaintiffs are entitled to targeted relief that permits the Court to sever the unconstitutional portions of the ACA, but not vacate the unlawful agency actions.[57] Alternatively, Defendants concede declaratory and injunctive relief that specifically addresses the prevailing

---

[55] *See* Defs.' Resp. 15 n.5, 20, ECF No. 99.
[56] Pls.' Supp. Br. 8, ECF No. 98; Pls.' Reply 16, ECF No. 111.
[57] Defs.' Resp. 8–10, 20, ECF No. 99.

parties' injuries is permissible.[58] Because the parties agree that the latter forms of relief are appropriate, here the Court will address only whether Plaintiffs are entitled to a universal remedy that prevents Defendants from enforcing the disputed coverage mandates against anyone, or only against the Plaintiffs to this dispute who have demonstrated Article III standing.

The first question is whether the APA permits vacatur of the unlawful agency actions taken to implement or enforce PSTF's constitutionally infirm preventive care mandates. It does. *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022) (acknowledging the APA language authorizing courts to "hold unlawful and set aside agency actions" to permit vacatur) (cleaned up). The next question is whether vacatur is permissible here. It is. While Defendants raise a host of challenges to this conclusion, each is unavailing.

The Court begins with the text of the relevant statute, § 706(2) of the APA, which authorizes courts to "hold unlawful and set aside agency action" that the court finds to be "not in accordance with law" or "contrary to constitutional [] power." 5 U.S.C. § 706(2)(A)–(B). As an initial objection to Plaintiffs' proposed remedy, Defendants contend that even if the APA *permits* vacatur, it does not *require* it.[59] But the plain language of § 706 contradicts that argument. 5 U.S.C. § 706 ("The reviewing court *shall* . . ."). And the authority Defendants cite to suggest that courts may *choose* whether to vacate agency action is inapplicable in this case because this Court has no option to remand the subject statute or contested implementation or enforcement action to a responsible agency. Defendants cite *Central and South West Services, Inc. v. U.S. EPA* to support the proposition that this Court may decline to vacate the unlawful agency action.[60] 220 F.3d 683, 692 (5th Cir. 2000). But the plaintiffs in that case challenged discrete segments of a Final Rule

---

[58] *Id.* at 20–22.
[59] Defs.' Reply 16 n.6, ECF No. 112.
[60] Defs.' Reply 16 n.6, ECF No. 112.

issued by the EPA, arguing that the agency failed to consider relevant factors and evidence in issuing its regulation. *Cent. & S. W. Servs.*, 220 F.3d at 686–87. The court agreed and, rather than vacate the Rule's contested provisions, remanded them to the agency for reconsideration, following the general rule that provides for remand instead of vacatur where an agency may be able to substantiate its regulatory decision. *Id.* at 690–92, 702. Because the Court has nothing to remand here, that decision is inapt.

That the Plaintiffs did not prevail on an APA claim is no bar to the remedy they seek. The Court's prior Opinion makes clear that this case involves government action the Court has found to be "not in accordance with law" or "contrary to constitutional [] power." 5 U.S.C. § 706(2)(A)–(B); *Braidwood Mgmt.*, 2022 WL 4091215, at *12–13, 20 (holding that the statutory scheme that gives PSTF's recommended ratings the force and effect of law violates Braidwood's rights under RFRA and Article II's Appointments Clause). Yet Defendants respond that the APA is inapplicable here because Plaintiffs have only challenged the acts of *Congress*, and *not* the actions of the Task Force.[61] Because Plaintiffs did not specifically challenge PSTF's authority to issue recommendations under 42 U.S.C. § 299b(a)(1), Defendants claim they are not entitled to vacatur of those actions.[62] That may be true. But Plaintiffs *did* successfully challenge the constitutionality of the statute that gives PSTF's recommendations the force and effect of law.

As Plaintiffs assert, "a challenge to the constitutionality of a statute necessarily encompasses a challenge to every agency action taken to implement [or enforce] the unconstitutional command."[63] The Court agrees. And the Fifth Circuit recently affirmed a conceptually similar notion. *See Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368, 378 (5th Cir.

---

[61] Defs.' Reply 15–16, ECF No. 112.
[62] Defs.' Reply 15, ECF No. 112.
[63] Pls.' Reply 20, ECF No. 111.

2022) ("HHS implicitly argues that a lawsuit challenging a regulation and a lawsuit challenging the underlying statute are different. But . . . a challenge to an agency regulation is *necessarily* a challenge to the underlying statute as well.") (emphasis added). An attack on the underlying statute would then logically present an attack on the executive actions taken pursuant to that statute. Thus, every executive action taken to implement or enforce PSTF's recommended ratings, by HHS or any other agency, are as constitutionally invalid as the authorizing statutory provision. Additionally, the only remedy that could relieve Plaintiffs' injury is one directed at the agencies tasked with implementing and enforcing the unconstitutional statute, since courts have no authority to order Congress to cure its statutory deficiency. *See generally* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933 (2018).

Defendants also suggest that any party pursuing relief under the APA must follow the "comprehensive statutory scheme for litigating certain types of challenges to agency action."[64] They say this scheme "establishes certain claims (*see, e.g.*, 5 U.S.C. §§ 702, 706) and prerequisites to bringing them (*see, e.g.*, 5 U.S.C. § 704), and then authorizes the Court to take certain actions to remediate them (*see, e.g.*, 5 U.S.C. §§ 703, 705)."[65] Beyond this general assertion, however, Defendants provide no indication of what prerequisites or administrative remedies the Plaintiffs in this case might have been obligated to exhaust.[66] Nor do they identify any provision of the ACA that sets out an appropriate course for administrative review of the preventive care mandates they challenge.[67] And while they fault Plaintiffs for citing "no case" in support of their proposed

---

[64] Defs.' Reply 17, ECF No. 111.

[65] *Id.*

[66] *See* Defs.' Reply 17–19, ECF No. 111.

[67] *Id.* Moreover, Defendants offer no explanation why the very provisions they cite as part of this statutory scheme are inapplicable to the instant case. Indeed, § 702 provides that a person "adversely affected or aggrieved by agency action *within the meaning of a relevant statute*, is entitled to judicial review thereof." *Id.* § 702 (emphasis added). Here, Plaintiffs have been adversely affected by the implementation and

remedial posture, the criticism applies equally to Defendants.[68] Indeed, Defendants cite no authority—not one—dictating the opposite rule that they urge this Court to adopt: that APA remedies *are* reserved exclusively for successful APA claims.[69] So while the Court is without clear precedential guidance on this question, the plain language of the APA supports Plaintiffs' remedial position.

Additionally, Federal Rule of Civil Procedure 54 allows the Court to provide the relief to which Plaintiffs are entitled, despite their failure to request that form of relief at the outset of their case, and provided the request is not prejudicial to the opposing party. FED. R. CIV. P. 54(c); *Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340 (5th Cir. 2015) ("there is no prejudice when 'all of the elements justifying relief were fully established before the district court'"); *see also Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 136 S. Ct. 2292, 2307 (2016) (applying Rule 54 and noting "in 'the exercise of its judicial responsibility' it may be 'necessary . . . for the Court to consider the facial validity' of a statute even though a facial challenge was not brought) (quoting *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 333 (2010)), overruled on other grounds in *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022).

Here, the elements necessary to justify vacatur under the APA have been proven. This Court has already found that, by operation of 42 U.S.C. § 300gg-13(a)(1), the PSTF members wield "significant authority pursuant to the laws of the United States" in violation of Article II. *Braidwood Mgmt.*, 2022 WL 4091215, at *10. This constitutionally infirm statutory creation is

---

enforcement of 42 U.S.C. § 300gg-13(a)(1)'s compulsory effect on the PSTF's recommendations. And § 704 provides that courts may review agency action "for which there is no other adequate remedy in a court are subject to judicial review." *Id.* § 704. Again, other than Congress's revision of the statute in question—which the Court has no authority to dictate—the Court knows of no adequate remedy for curing the constitutional violation at bar. And Defendants suggest none.

[68] Defs.' Reply 18, ECF No. 112 ("But a court cannot award such relief if a plaintiff, like Plaintiffs here, does *not bring* any APA claim. *Plaintiffs cite no case to the contrary.*") (second emphasis added).

[69] *See* Defs.' Resp. 11–13, ECF No. 99; Defs.' Reply 17–19, ECF No. 112.

"not in accordance with law" and makes the issuance of their recommendations "contrary to constitutional [] power." 5 U.S.C. § 706(2)(A)–(B). And, as discussed, Plaintiffs' challenge to the § 300gg-13(a)(1) logically includes a challenge to the executive actions taken pursuant to that statute. Thus, any *agency actions* taken to implement and enforce the corresponding preventive care mandates are necessarily "not in accordance with law" and may be "set aside." *Id.* § 706.

Nor are Defendants prejudiced by Plaintiffs' requested relief. In passing, Defendants suggest that Plaintiffs' proposing vacatur as a remedy at this stage of litigation presents notice and due process concerns.[70] But Defendants have been on notice that Plaintiffs were seeking a universal remedy since they filed their Amended Complaint. Throughout, Plaintiffs repeatedly expressed their intent to obtain broad relief:

> The Court should therefore declare that any and all preventive-care mandates based on a rating, recommendation, or guideline issued by the U.S. Preventive Services Task Force, the Advisory Committee on Immunization Practices, or the Health Resources and Services Administration after March 23, 2010—the date on which the Affordable Care Act was signed into law—are unconstitutional and unenforceable, and it should permanently enjoin the defendants from enforcing them.[71]

> [T]he Court should enjoin the defendants from enforcing any preventive-care mandate derived from an agency rating, recommendation, or guideline that issued after March 23, 2010.[72]

> [The Court should] permanently enjoin the defendants from enforcing any coverage mandate based upon an agency rating, recommendation, or guideline that issued after March 23, 2010.[73]

> [And the Court should] award all other relief that the Court deems just, proper, or equitable.[74]

This was sufficient to provide Defendants fair notice of the type of relief Plaintiffs were seeking

---

[70] Defs.' Resp. 12, ECF No. 99.
[71] Am. Compl. ¶ 77, ECF No. 14.
[72] *Id.* ¶ 80.
[73] *Id.* at 26.
[74] *Id.*

for their Appointments Clause claim. Moreover, Defendants have been given ample opportunity—a response and sur-reply—to fully brief the propriety of vacatur at the remedies stage.

Beyond the statutory scheme and Rule 54, there is some authority that suggests courts possess a degree of inherent authority to provide the remedies that Plaintiffs seek here. *See Collins v. Yellen*, 141 S. Ct. 1761, 1799 (2021) (Gorsuch, J., concurring) ("Whether unconstitutionally installed or improperly unsupervised, officials cannot wield executive power except as Article II provides. Attempts to do so are void. . . . [W]here individuals are burdened by unconstitutional executive action, they are entitled to relief.") (cleaned up); *see also Collins v. Mnuchin*, 938 F.3d 553, 609 (5th Cir. 2019) (severing the "for cause" provision that presented a Removal Clause violation), *aff'd in part, rev'd in part, vacated in part sub nom. Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021) (Oldham and Ho, JJ., concurring in part and dissenting in part) ("Our *Article III powers* permit us to [vacate unlawful agency action], as it would redress Plaintiffs' injury-in-fact. Such a remedy finds support in precedent.") (emphasis added) (internal citations omitted). Though these hints do not resolve every question presented here, they provide some support for the Court's conclusion that it may grant the relief the Plaintiffs have requested in this case.

Finally, a universal remedy is appropriate because Defendants' alternative remedial proposal—severing the statutory provision that purportedly gives rise to the appointment problem—will not cure Plaintiffs' injuries. Rather than vacating the agency actions implementing or enforcing PSTF's recommendations, Defendants urge the Court to sever 42 U.S.C. § 299b-4(a)(6).[75] This section provides that PSTF's rating recommendations "shall be independent and, to the extent practicable, not subject to political pressure." *Id.* § 299b-4(a)(6). "Severing" or singly making this provision unenforceable would permit the Secretary of HHS to review and approve

---

[75] Defs.' Resp. 8–10, ECF No. 99.

the Task Force's recommendations, Defendants say, curing the Appointments Clause problem without unnecessarily disrupting the ACA's overarching statutory scheme.[76] But Defendants' assertion is wrong for several reasons.

First, by Defendants own admission, PSTF is not part of HHS or any federal agency and is not, therefore, automatically subject to the Secretary's "supervision and direction" as are ACIP and HRSA. 42 U.S.C. §§ 202, 243, 247b.[77] For this reason, the Supreme Court's decision in *United States v. Arthrex, Inc.* is inapplicable. 141 S. Ct. 1970 (2021) (curing appointment problem by ordering every administrative patent judge's decision to be subject to the review of the PTO Director). Even if it is assumed for the sake of argument that PSTF were subject to the Secretary's oversight, severing § 299b-4(a)(6) might *permit* the Secretary to authorize or reject PSTF's recommendations *post hoc* but it would not *compel* him to take such action. Moreover, § 300gg-13(a)(1) would still operate to give PSTF's ratings the force and effect of law unless and *until* the Secretary decided to ratify or veto a particular recommendation.

Moreover, Fifth Circuit and Supreme Court precedent indicate that, given the particular constitutional violation at issue here, vacatur is the appropriate remedy for Plaintiffs' injury. In fact, the line of decisions from the Fifth Circuit and Supreme Court, which Defendants say *rejects* Plaintiffs' remedial position, is more properly read to support it.[78] *See generally Collins v. Mnuchin*, 938 F.3d 553 (5th Cir. 2019) (severing the "for cause" provision that presented a Removal Clause violation), *aff'd in part, rev'd in part, vacated in part sub nom. Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021) (discussing the propriety of vacatur based on removal versus

---

[76] *Id.* at 10.

[77] Defs.' Mot. for Summ. J. 40, ECF No. 64; Mem. Op. 25, ECF No. 92.

[78] Defs.' Reply 15 n.5, ECF No. 112 ("[T]he remedial position proffered in the partially dissenting opinion cited by Plaintiffs in *Collins v. Mnuchin*, 938 F.3d 553 (5th Cir. 2019), was rejected first by the *en banc* Fifth Circuit and subsequently by the Supreme Court as 'neither logical nor supported by precedent.' *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021).").

appointments problems). In *Mnuchin*, the *en banc* and closely divided Fifth Circuit considered the proper remedy for a restriction on removal that violated Article II. *Mnuchin*, 938 F.3d at 591. Ultimately the court concluded that the appropriate remedy was to sever the "for cause" provision, thus curing the unconstitutional removal restriction. *Id.* at 595. But that case is distinguishable from this one for an obvious reason: that decision involved a Removal Clause violation, *not* an Appointments Clause violation. And the *Mnuchin* court expressly noted the difference. *Id.* at 593 ("[T]he Court has invalidated [and vacated] actions taken by individuals who were not properly *appointed* under the Constitution. [In this scenario,] officers were vested with authority that was never properly theirs to exercise. Such separation-of-powers violations are, as the D.C. Circuit put it, 'void *ab initio*.' *Noel Canning v. NLRB*, 705 F.3d 490, 493 (D.C. Cir. 2013) . . . Restrictions on *removal* are different.") (emphases added). For these reasons, the Court holds that vacatur—not severance—is the appropriate remedy for curing Plaintiffs' constitutional injuries.

*    *    *    *

In sum, Plaintiffs have shown that they are entitled to vacatur as a *remedy* for their successful Appointments Clause claim. All agency action taken to implement or enforce the preventive care coverage requirements in response to an "A" or "B" recommendation by the U.S. Preventive Services Task Force on or after March 23, 2010 and made compulsory under 42 U.S.C. § 300gg-13(a)(1) are **HELD** unlawful as violative of the Appointments Clause. The Court **ORDERS** that such agency actions are **VACATED** and Defendants and their officers, agents, servants, and employees are **ENJOINED** from implementing or enforcing 42 U.S.C. § 300gg-13(a)(1)'s compulsory coverage requirements in response to an "A" or "B" rating from the Task Force in the future.

Further, under 28 U.S.C. § 2201, the Court **HOLDS** that agency action taken to implement

27

or enforce the preventive care mandates in response to an "A" or "B" recommendation by the U.S. Preventive Services Task Force on or after March 23, 2010 and made compulsory under 42 U.S.C. § 300gg-13(a)(1) are unlawful as violative of the Appointments Clause. Braidwood Management Inc. and Kelley Orthodontics, and to the extent applicable, individual Plaintiffs need not comply with the preventive care coverage recommendations of the U.S. Preventive Services Task Force issued on or after March 23, 2010, because the members of the Task Force have not been appointed in a manner consistent with Article II's Appointments Clause. Accordingly, the Court **ENJOINS** Defendants and their officers, agents, servants, and employees from implementing or enforcing the same against these Plaintiffs.

## III.     CONCLUSION

Therefore, the Court **DISMISSES with prejudice** the religious objector Plaintiffs', including Braidwood Management Inc.'s, contraceptive mandate claims. The non-religious objector Plaintiffs' contraceptive mandate claims are **DISMISSED without prejudice** for lack of subject matter jurisdiction. The parties' cross-motions for summary judgment are **GRANTED in part** and **DENIED in part**. For the reasons discussed, the remaining Plaintiffs have shown they are entitled to declaratory and injunctive relief as to their RFRA claims and to declaratory and injunctive relief and to a universal remedy with respect to their Appointments Clause claim as it relates to PSTF. Separate final judgment shall issue.

**SO ORDERED** this **30th day** of **March, 2023**.

_Reed O'Connor_
**UNITED STATES DISTRICT JUDGE**

**TAB 6**

# CERTIFICATE OF SERVICE

I certify that on June 20, 2023, I filed a copy of these record excerpts with the Clerk of Court for the Fifth Circuit Court of Appeals through the Court's CM/ECF system, which will serve counsel for all parties.

*/s/ Daniel Aguilar*
Daniel Aguilar