No. 23-10326

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

BRAIDWOOD MANAGEMENT, INCORPORATED; JOHN SCOTT
KELLEY; KELLEY ORTHODONTICS; ASHLEY MAXWELL; ZACH
MAXWELL; JOEL STARNES,

*Plaintiffs-Appellees/Cross-Appellants*,

JOEL MILLER; GREGORY SCHEIDEMAN

*Plaintiffs-Cross-Appellants*

v.

XAVIER BECERRA, Secretary, U.S. Department of Health and Human
Services, in his official capacity as Secretary of Health and Human Services;
UNITED STATES OF AMERICA; JANET YELLEN, Secretary, U.S.
Department of Treasury, in her official capacity as Secretary of the Treasury;
JULIE A. SU, Acting Secretary, U.S. Department of Labor, in her official
capacity as Secretary of Labor,

*Defendants-Appellants/Cross-Appellees.*

On Appeal from the United States District Court, Northern District of Texas
Case No. 4:20-cv-00283-O

## BRIEF OF *AMICUS CURIAE* SERVICE EMPLOYEES INTERNATIONAL UNION IN SUPPORT OF DEFENDANTS-APPELLANTS

Claire Prestel
Service Employees International Union
1800 Massachusetts Avenue, NW
Washington, DC 20036
(202) 730-7468
claire.prestel@seiu.org

Barbara J. Chisholm
Connie K. Chan
Corinne F. Johnson
Altshuler Berzon LLP
177 Post St., Ste. 300
San Francisco, CA 94108
(415) 421-7151
bchisholm@altshulerberzon.com

*Counsel for Amicus Curiae Service Employees International Union*

## <u>SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Service Employees International Union

Barbara J. Chisholm
Connie K. Chan
Corinne F. Johnson
ALTSHULER BERZON LLP

Under Federal Rule of Appellate Procedure 26.1, *Amicus Curiae* Service Employees International Union certifies that it is a non-stock, nonprofit corporation. It has no parent corporation, and no publicly held corporation owns it or any part of it.

Dated: June 27, 2023                      _s/ Barbara J. Chisholm_
                                          Barbara J. Chisholm
                                          *Counsel for Amicus Curiae SEIU*

i

# **TABLE OF CONTENTS**

SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS..........................i

TABLE OF CONTENTS............................................................................ ii

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF COMPLIANCE WITH FEDERAL RULE OF
APPELLATE PROCEDURE 29 .............................................................vi

INTERESTS OF AMICUS CURIAE.......................................................1

SUMMARY OF ARGUMENT ...............................................................1

ARGUMENT .........................................................................................2

    I. The District Court Failed to Apply Controlling Case Law In
       Issuing a Nationwide Injunction And Universal Vacatur ................................2

    II. The Public Interest, Equities, And Concerns About Disruption
        All Weigh in Favor of Reversing the District Court's Judgment...................4

    III. The District Court's Judgment Violates Due Process Principles
         and For This Additional Reason Should Be Reversed ...............................10

CONCLUSION ....................................................................................12

CERTIFICATE OF COMPLIANCE....................................................14

CERTIFICATE OF SERVICE .............................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Freeman v. Lester Coggins Trucking, Inc.*,
    771 F.2d 860 (5th Cir. 1985) ...............................................................11

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010).............................................................................3

*Texas v. Dep't of Labor*,
    929 F.3d 205 (5th Cir. 2019) ..............................................................11

*Texas v. United States*,
    50 F.4th 498 (5th Cir. 2022) ...........................................................2, 10

*Valentine v. Collier*,
    993 F.3d 270 (5th Cir. 2021) ................................................................3

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)...........................................................................3, 10

**Federal Statutes**

29 U.S.C. § 1001 .......................................................................................10

29 U.S.C. § 1132(a)(1)(B) ........................................................................11

29 U.S.C. § 1185d .....................................................................................10

42 U.S.C. § 300gg-13(a) ......................................................................10, 11

42 U.S.C. § 300gg-13(b) ...........................................................................11

**Regulations**

45 C.F.R. § 147.130(b) ..............................................................................11

**Other Authorities**

American Cancer Society, *Breast Cancer Facts & Figures 2022-2024*,
    https://www.cancer.org/content/dam/cancer-org/research/cancer-
    facts-and-statistics/breast-cancer-facts-and-figures/2022-2024-
    breast-cancer-fact-figures-acs.pdf ....................................................................5

American Cancer Society, *Cancer Prevention & Early Detection
    Facts & Figures 2021-2022*,
    https://www.cancer.org/content/dam/cancer-org/research/cancer-
    facts-and-statistics/cancer-prevention-and-early-detection-facts-
    and-figures/2021-cancer-prevention-and-early-detection.pdf ............................5

American Cancer Society, *Colorectal Cancer Facts & Figures 2020-
    2022*, https://www.cancer.org/content/dam/cancer-
    org/research/cancer-facts-and-statistics/colorectal-cancer-facts-
    and-figures/colorectal-cancer-facts-and-figures-2020-2022.pdf .......................5

American Lung Association, *Lung Cancer Key Findings* (2022),
    https://www.lung.org/research/state-of-lung-cancer/key-findings ......................5

Christine Leopold et al., *The Impact of the Affordable Care Act on
    Cancer Survivorship*, 23 Cancer J. 181, 184 (2017),
    https://journals.lww.com/journalppo/Fulltext/2017/05000/The_Imp
    act_of_the_Affordable_Care_ Act_ .....................................................................5

Jay Asser, HealthLeaders, *Patients Likely to Skip Preventive Care if
    ACA Rulings Holds* (Mar. 17, 2023),
    https://www.healthleadersmedia.com/payer/patients-likely-skip-
    preventive-care-if-aca-ruling-holds ....................................................................5

Kaiser Family Foundation, *Understanding the Impact of Medicaid
    Premiums & Cost-Sharing: Updated Evidence from the Literature
    and Section 1115 Waivers* (Sept. 9, 2021),
    https://www.kff.org/medicaid/issue-brief/understanding-the-
    impact-of-medicaid-premiums-cost-sharing-updated-evidence-
    from-the-literature-and-section-1115-waivers/ ...................................................6

Kara Gavin, *What happens when preventive care becomes free to patients?* Univ. of Michigan Health Lab (June 28, 2021), https://labblog.uofmhealth.org/industry-dx/what-happens-when-preventive-care-becomes-free-to-patients ..........................................................5

*Report to Congress, Annual Report on Self-Insured Group Health Plans*, Secretary of Labor (March 2023), https://www.dol.gov/sites/dolgov/files/EBSA/researchers/statistics/retirement-bulletins/annual-report-on-self-insured-group-health-plans-2023.pdf .....................................................................................................4

## STATEMENT OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 29

No counsel for a party authored any part of this brief.  No party, party's counsel or any person other than the amicus curiae, its members, or its counsel contributed money that was intended to finance the preparation or submission of this brief.

## INTERESTS OF AMICUS CURIAE

Service Employees International Union ("SEIU") is a labor union of approximately two million working men and women in a range of industries across the United States, many of whom receive health insurance through federally protected health insurance plans that will be affected by the district court's decision.  SEIU is also the largest union of healthcare employees in North America.  One of SEIU's affiliated local unions is the Committee of Interns and Residents, with more than 24,000 resident physician and fellow members.

SEIU previously filed an amicus curiae brief in this Court in support of Defendants-Appellants' ("Defendants") motion for a partial stay of the district court's nationwide judgment.  SEIU continues to have a strong interest in this appeal, which threatens preventive care services critical to SEIU's members and to the patients of SEIU's physician and fellow members.

Counsel for the parties in this matter have confirmed their consent to the filing of this timely-filed amicus curiae brief.

## SUMMARY OF ARGUMENT

SEIU respectfully urges the Court to reverse the district court's far-reaching and nationwide judgment.  That judgment threatens the healthcare of the more than 130 million employees and families with private employment-based insurance plans by enjoining Defendants from taking any action to enforce or implement the

1

requirement that preventive care services recommended by the Preventive Services Task Force ("Task Force") be provided at no cost.

As borne out by the experiences of SEIU's physician members, the mandate to make preventive care available at no cost has saved lives, and the district court's decision, by reducing access to that care, will negatively affect millions of Americans' health. Yet the district court, in flagrant disregard of the governing legal standards, failed even to address or acknowledge the significant negative effects its judgment will have on millions of non-parties. The district court's judgment also interferes with the statutory and due process rights of non-party employees and their families, and for that additional reason should be reversed.

## ARGUMENT

### I. The District Court Failed to Apply Controlling Case Law In Issuing a Nationwide Injunction And Universal Vacatur.

The district court erred in issuing unjustified relief that extends far beyond the Plaintiffs' claimed injuries. Specifically, the district court vacated any "agency actions taken to implement or enforce the preventive care coverage requirements" in response to Task Force recommendations and enjoined Defendants from "implementing or enforcing" the requirements. ROA.2129; *see also* ROA.2131-2132. At a minimum, the district court was required by controlling precedent to consider the "disruptive consequences of … vacatur" before ordering that as a remedy. *Texas v. United States*, 50 F.4th 498, 529 (5th Cir. 2022). The district

2

court was also required, again by controlling precedent, to consider whether an injunction "[would] not disserve the public interest," *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021), and whether the "balance of equities" favored Plaintiffs' requested relief, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008).

The district court, however, did not even acknowledge these vacatur and injunction standards, let alone address them, in its remedy order. The district court did not address the highly disruptive consequences vacatur will have on millions of insured employees—disruption that clearly makes vacatur an inappropriate remedy. Similarly, the district court provided no findings, conclusions, or discussion whatsoever regarding the balance of the equities or the public interest effects of a nationwide injunction. *See* ROA.2120-2129; *cf. Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 158 (2010) (reversing injunction of agency action because district court did not apply the "traditional four-factor test"); *Winter*, 555 U.S. at 26–27 ("assessing the balance of equities and the public interest … in only a cursory fashion" is an abuse of "barely exercised" discretion).

This Court should not attempt to address these issues in the first instance, given the district court's failure to make any findings whatsoever on the matter. Instead, the Court should reverse the district court's judgment as not supported by fact or law.

//

## II. The Public Interest, Equities, And Concerns About Disruption All Weigh in Favor of Reversing the District Court's Judgment.

The district court ignored extensive, unrefuted evidence that a nationwide injunction will harm millions of people, evidence that was directly relevant to the equitable factors the court should have considered but did not.[1] The experiences of SEIU's physician members provide additional support for the evidence submitted to the district court.[2]

The vast majority of the private health insurance plans affected by the district court's judgment are employee plans. More than 130 million employees and their beneficiaries receive health insurance through private employers.[3] Prior to the district court's judgment, most of those employees' health plans were statutorily required to provide dozens of preventive care services at no cost, including colon, lung, breast, and cervical cancer screenings; osteoporosis, tuberculosis, and diabetes screenings; use of statins to lower cholesterol; and depression, suicide risk, fall prevention, intimate partner violence, and alcohol and

---

[1] *See Amicus Curiae* Brief of American Cancer Society, et al., Dist. Ct. Dkt. No. 107; *Amicus Curiae* Brief of American Medical Association, et al., Dist. Ct. Dkt. No. 108; *Amicus Curiae* Brief of Amici States, Dist. Ct. Dkt. No. 61, at 2-6; *Amicus Curiae* Brief of 20 Health Policy Experts, et al., Dist. Ct. Dkt. No. 68, at 7-9.

[2] SEIU provided descriptions of its physician members' experiences in support of Defendants' motion for a stay pending appeal; SEIU offers these experiences again here because they bear on the merits question and the controlling standards for vacatur and injunctive relief.

[3] *Report to Congress, Annual Report on Self-Insured Group Health Plans*, Secretary of Labor (March 2023) at 5, https://www.dol.gov/sites/dolgov/files/EBSA/researchers/statistics/retirement-bulletins/annual-report-on-self-insured-group-health-plans-2023.pdf

drug use screenings.[4]  If the district court's judgment is allowed to stand, there is a significant risk that insurance providers will cease covering these key preventive care services at no cost.

Removing no-cost coverage for these services will endanger lives.  The services are critically important for detecting and treating dangerous diseases,[5] yet are often prohibitively expensive such that, without insurance coverage, many employees cannot afford and are likely to forgo the services.[6]  That is especially the case for low-income workers and their families.[7]

---

[4] Task Force A & B Recommendations, https://www.uspreventiveservicestaskforce.org /uspstf/recommendation-topics/uspstf-a-and-b-recommendations (visited June 26, 2023).

[5] *See, e.g.*, American Cancer Society ("ACS"), *Colorectal Cancer Facts & Figures 2020-2022* at 19, https://www.cancer.org/content/dam/cancer-org/research/cancer-facts-and-statistics/colorectal-cancer-facts-and-figures/colorectal-cancer-facts-and-figures-2020-2022.pdf (colon cancer screening reduces cancer incidence by 40% and mortality by 60%); American Lung Association, *Lung Cancer Key Findings* (2022), https://www.lung.org/research/state-of-lung-cancer/key-findings (61% five-year survival rate when lung cancer diagnosed at early stage versus 7% at late stage); ACS, *Cancer Prevention & Early Detection Facts & Figures 2021-2022* at 33-34, https://www.cancer.org/content/dam/cancer-org/research/cancer-facts-and-statistics/cancer-prevention-and-early-detection-facts-and-figures/2021-cancer-prevention-and-early-detection.pdf (screening detects and prevents cervical cancer); ACS, *Breast Cancer Facts & Figures 2022-2024* at 5, https://www.cancer.org/content/dam/cancer-org/research/cancer-facts-and-statistics/breast-cancer-facts-and-figures/2022-2024-breast-cancer-fact-figures-acs.pdf (screening detects and improves treatment options for breast cancer).

[6] *See* Jay Asser, HealthLeaders, *Patients Likely to Skip Preventive Care if ACA Rulings Holds* (Mar. 17, 2023), https://www.healthleadersmedia.com/payer/patients-likely-skip-preventive-care-if-aca-ruling-holds (40% of survey respondents would not pay for most preventive services); Christine Leopold et al., *The Impact of the Affordable Care Act on Cancer Survivorship*, 23 Cancer J. 181, 184 (2017), https://journals.lww.com/journalppo /Fulltext/2017/05000/The_Impact_of_the_Affordable_Care_ Act_on_Cancer.6.aspx (reducing cost-sharing increases use of preventive services).

[7] *See* Kara Gavin, *What happens when preventive care becomes free to patients?*, Univ. of Michigan Health Lab (June 28, 2021), https://labblog.uofmhealth.org/industry-dx/what-happens-when-preventive-care-becomes-free-to-patients (low-socioeconomic status groups

SEIU physician members who work every day on our healthcare system's front lines confirm the public health dangers of removing coverage for these services.[8]  Dr. Yariana Rodríguez-Ortiz is a Committee of Interns and Residents ("CIR") member and nephrology fellow at Houston Methodist Hospital who describes the fundamental principle that access to preventive care saves lives: "It doesn't matter what specialty you as a physician practice.  We all learn that preventive medicine is extremely important to improve early detection of treatable diseases and to perform preventive measures to reduce disease incidence."  This is key not only for patients but also for healthcare providers, who "work daily with bodily fluids."  As Dr. Rodríguez-Ortiz explained, "if we are not screening for diseases to reduce incidence, and preventing them when possible, then we as providers are exposed to greater risk."

Dr. Joshua Neff is another physician with significant experience regarding the importance of the Task Force's recommendations.  Dr. Neff is a CIR member and UCSF-trained[9] psychiatrist currently practicing across three healthcare

---

benefit the most from eliminating cost sharing); Kaiser Family Foundation, *Understanding the Impact of Medicaid Premiums & Cost-Sharing: Updated Evidence from the Literature and Section 1115 Waivers* (Sept. 9, 2021), https://www.kff.org/medicaid/issue-brief/understanding-the-impact-of-medicaid-premiums-cost-sharing-updated-evidence-from-the-literature-and-section-1115-waivers/ (cost sharing is associated with reduced care and worse outcomes in low-income populations).

[8] Interviews with the physicians quoted in this brief were conducted by counsel and are on file with SEIU.

[9] University of California San Francisco.

systems: San Francisco's safety-net healthcare system, the Veterans Administration hospital system, and an academic medical center where he sees privately insured patients. According to Dr. Neff, routine screening by other healthcare providers for depression in teens and adults and for perinatal depression[10] is often what connects his patients to mental healthcare in the first place, in part due to the stigma surrounding mental health diagnosis and treatment. With his own patients, Dr. Neff routinely screens for depression and suicide risk, and he notes that failure to conduct that screening can have deadly consequences. In conducting such screening with a teen patient recently, Dr. Neff learned that his patient had secretly hidden scissors in their room and was contemplating using them to try to attempt suicide. Dr. Neff described it as "very plausible that this person, who had multiple risk factors for suicide, would have gone on to at least attempt suicide absent this screening."

Dr. Neff has also seen the importance of screening for unhealthy drug use, another Task Force recommendation. He notes that "a growing body of evidence makes the case that heavy cannabis use increases the risk of developing schizophrenia and similar disorders." For Dr. Neff, delivering new diagnoses of schizophrenia to teens, young adults, and their parents is "among the most

---

[10] All of these screenings are included on the Task Force's list of recommended preventive services.

heartbreaking situations" he has encountered as a physician. He explains, "It's a lifetime diagnosis, and it tends to mean that the person's life is going to unfold very differently than it had previously seemed." Dr. Neff treated one college-student patient, for example, who had recently begun using cannabis heavily after being introduced to it by his roommate, and Dr. Neff describes the patient as "confused and terrified." He could "see the world as he had known it was slipping away from him." "Cannabis use disorder can easily fall through the cracks without screening."

Dr. Mahima Iyengar is another physician and CIR member who believes strongly that Task Force-recommended services must be available cost-free. Dr. Iyengar practices primary adult and pediatric medicine at Los Angeles County's USC Medical Center and has "recommended or done" "almost everything" on the Task Force's list of recommended preventive services. With respect to colorectal cancer screening, for example, she emphasized that, "by the time" a patient has "colorectal cancer" with "severe symptoms that would bring you into the hospital," it is "often too late." Dr. Iyengar "had a patient who wasn't getting screening [and] who finally came into the hospital with pain and blood in their stool." But "when you diagnose cancer that late your treatment options are very limited." In order to avoid this outcome, colorectal cancer screening is "maybe the most common preventative service" Dr. Iyengar performs.

8

Dr. Iyengar also works in a population where syphilis rates are high but many patients "don't realize [they] have syphilis" because "it is only at a late stage when … very serious symptoms" emerge.  Babies who are exposed to syphilis in utero can develop "rashes, liver problems, problems with their vision, … problems with bone growth, anemia, and deafness."  At a certain point, "a lot of these become irreversible symptoms."  But if pregnant women are screened for syphilis, as the Task Force recommends, newborns can be completely treated at birth and "go on to not have any syphilis complications at all."

Dr. Iyengar notes that the risk of reducing access to preventive care "is not hypothetical."  During "the pandemic we saw people putting off preventative care, and we're still seeing the effects of that now …, people coming in at more advanced stages of disease because of a lack of preventative care."  If access to preventive care is again reduced, Dr. Iyengar believes we will again see people "coming in with terminal cancer rather than cancer that could have been treated if screened for earlier" or people "coming in with very serious complications of diabetes that could have been prevented with routine access to preventive screening."

Dr. Rodríguez-Ortiz agrees and describes it as inevitable that if the district court's decision goes into effect "these preventive measures will be less accessible to patients who cannot afford [them]," posing a "serious risk to disease control,

9

especially for blood-borne pathogens to which every provider is exposed at work."
In Dr. Rodríguez-Ortiz's view, "experts in the field" should make medical
decisions like these.  The district court's ruling, by essentially invalidating "the
very hard work done by a large number of doctors and researchers over many years
… to develop the best recommendations to protect Americans' health, opposes the
key principle of evidence-based medicine that guides all physicians in the care of
our patients."  "The court unintentionally harms American citizens when, as here,
it undermines the recommendations made by professionals who have put years into
study in this field."

The district court's judgment, if allowed to stand, will throw the
employment-based insurance industry into chaos and result in employees being
denied coverage for, or being reluctant to use, life-saving preventive services.
Because the district court failed to consider the "disruptive consequences of …
vacatur," *Texas*, 50 F.4th at 529, and did not even purport to assess the public
interest or the equities of its nationwide injunction as required by *Winter*, 555 U.S.
at 32, its ruling should be reversed.

## III. The District Court's Judgment Violates Due Process Principles and For This Additional Reason Should Be Reversed.

Employee health insurance plans are required by the Employee Retirement
Income Security Act ("ERISA"), 29 U.S.C. §1001 *et seq*., to cover the preventive
care at issue in this case at no cost.  *See* 29 U.S.C. §1185d; 42 U.S.C. §300gg-

13(a).  That requirement can be enforced by employees and their beneficiaries pursuant to ERISA's enforcement mechanisms, which include a private right of action.  *See* 29 U.S.C. §1132(a)(1)(B), (3).  This Court has held that when a statute provides for a "distinct legal dut[y] owed [to] individual employees" that those employees have a "private right of action to enforce" (as ERISA does here), a ruling against a federal agency should not be read as constraining affected third-party employees.  *Texas v. Dep't of Labor*, 929 F.3d 205, 212–13 (5th Cir. 2019) (quotation omitted); *cf. Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 865–66 (5th Cir. 1985) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard.").

        The district court's decision violates this principle.  While the district court's judgment does not vacate the Task Force's preventive care recommendations themselves, it nonetheless orders vacatur of all other agency action implementing or enforcing the Task Force's recommendations since 2010.  *See* Final Judgment, Dist. Ct. Dkt. 114.  This includes vacatur of the regulation establishing an effective date of the requirement to provide Task Force-recommended services cost-free.  *See* 42 U.S.C. §300gg-13(b) (directing Department of Health and Human Services to establish an effective date); 45 C.F.R. §147.130(b) (cost-free coverage requirement applies to plan years starting

one year after the date a recommendation is issued). Thus, by vacating all agency action in furtherance of the Task Force's recommendations, the judgment interferes with employees' ability to enforce their rights to cost-free coverage.

Because the district court failed to acknowledge, let alone evaluate, the significant public harms and disruption occasioned by its remedial order, it also wholly failed to acknowledge the significant due process implications of a judgment that undermines the distinct legal rights of non-party employees and their beneficiaries. For this additional reason, this Court should reverse the district court judgment.

## CONCLUSION

SEIU respectfully requests that the Court reverse the district court's judgment.

Dated: June 27, 2023

Respectfully submitted,

*s/ Barbara J. Chisholm*
Barbara J. Chisholm

Barbara J. Chisholm
Connie K. Chan
Corinne F. Johnson
Altshuler Berzon LLP
177 Post St., Ste. 300
San Francisco, CA 94108
(415) 421-7151
bchisholm@altshulerberzon.com

Claire Prestel
Service Employees International

12

Union
1800 Massachusetts Avenue, NW
Washington, DC 20036
(202) 730-7468
claire.prestel@seiu.org

*Counsel for Amicus Curiae SEIU*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of limitation of Fed.

R. App. P. 32(a)(7)(B) and 29(a)(5) because it contains 2,713 words, excluding

the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule

of Appellate Procedure 32(a)(6) because it has been prepared in a

proportionally spaced typeface using Microsoft Word in 14-point Times New

Roman font, with footnotes in 12-point Times New Roman font, per Fifth

Circuit Rule 32.1.


Dated: June 27, 2023                  *s/ Barbara J. Chisholm*
                                      Barbara J. Chisholm
                                      *Counsel for Amicus Curiae SEIU*

14

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on June 27, 2023.  I further certify that the participants in the case are CM/ECF users and that service will be accomplished by using the appellate CM/ECF system.

I further certify that: (1) any required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: June 27, 2023

 *s/ Barbara J. Chisholm*
Barbara J. Chisholm
*Counsel for Amicus Curiae SEIU*