No. 23-10326

# In the United States Court of Appeals for the Fifth Circuit

BRAIDWOOD MANAGEMENT, INCORPORATED; JOHN SCOTT KELLEY; KELLEY ORTHODONTICS; ASHLEY MAXWELL; ZACH MAXWELL; JOEL STARNES,

*Plaintiff-Appellees/Cross-Appellants*,

JOEL MILLER; GREGORY SCHEIDEMAN,

*Plaintiff-Cross-Appellants*,

*v.*

XAVIER BECERRA, SECRETARY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, IN HIS OFFICIAL CAPACITY AS SECRETARY OF HEALTH AND HUMAN SERVICES; UNITED STATES OF AMERICA; JANET YELLEN, SECRETARY, U.S. DEPARTMENT OF TREASURY, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE TREASURY; JULIE A. SU, ACTING SECRETARY, U.S. DEPARTMENT OF LABOR, IN HIS OFFICIAL CAPACITY AS SECRETARY OF LABOR,

*Defendants-Appellants/Cross-Appellees.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division

## BRIEF FOR THE STATE OF TEXAS AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF-APPELLEES/CROSS-APPELLANTS

ANGELA COLMENERO
Provisional Attorney General

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

LANORA PETTIT
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

BENJAMIN WILSON
Deputy Solicitor General

Counsel for Amicus Curiae The State of Texas

# Certificate of Interested Persons

No. 23-10326

Braidwood Management, Incorporated; John Scott Kelley; Kelley Orthodontics; Ashley Maxwell; Zach Maxwell; Joel Starnes,

*Plaintiff-Appellees/Cross-Appellants*,

Joel Miller; Gregory Scheideman,

*Plaintiff-Cross-Appellants*,

*v.*

Xavier Becerra, Secretary, U.S. Department of Health and Human Services, in his official capacity as Secretary of Health and Human Services; United States of America; Janet Yellen, Secretary, U.S. Department of Treasury, in her official capacity as Secretary of the Treasury; Julie A. Su, Acting Secretary, U.S. Department of Labor, in his official capacity as Secretary of Labor,

*Defendants-Appellants/Cross-Appellees*.

Under the fourth sentence of Fifth Circuit Rule 28.2.1, amicus curiae, as a governmental entity, need not furnish a certificate of interested persons.

/s/ Lanora Pettit
Lanora Pettit

*Counsel of Record for Amicus Curiae*

# Table of Contents

Page

Certificate of Interested Persons ............................................................. i

Table of Authorities ...................................................................... iii

Interest of Amicus Curiae ................................................................ 1

Statement and Summary of Argument .................................................. 2

Argument ................................................................................... 4

    I.   The District Court Properly Vacated Agency Action It Held
           Illegal In This Case Under This Court's Binding Precedent. .................... 5

        A.  Under this Court's precedent, vacatur is the default remedy
             and was appropriate here. ................................................... 5

        B.  The district court properly applied that default rule. .......................... 8

        C.  Defendants are wrong to insist that vacatur was not a remedy
             available to the district court. ............................................. 10

   II.  Even As A Matter Of First Impression, Vacatur Is The
           Appropriate Remedy For Unlawful Agency Action. ............................ 13

        A.  Both the text of the APA and pre-APA practice support
             vacatur. ............................................................. 13

        B.  Supreme Court precedent and the near universal practice of
             the courts of appeals support vacatur. ...................................... 17

CONCLUSION ............................................................................. 22

Certificate of Service ...................................................................... 23

Certificate of Compliance ................................................................. 23

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Agostini v. Felton,*
521 U.S. 203 (1997) ............................................................... 19

*Allentown Mack Sales & Serv., Inc. v. NLRB,*
522 U.S. 359 (1998) ............................................................... 18

*Am. Tel. & Tel. Co. v. United States,*
299 U.S. 232 (1936) ............................................................... 16

*Baltimore & Ohio R. Co. v. United States,*
5 F. Supp. 929 (N.D. Ohio 1933) ..................................... 16

*Bd. of Cnty. Comm'rs of Weld Cnty. v. EPA,*
72 F.4th 284 (D.C. Cir. 2023) ............................................. 1

*Bd. of Governors of the Fed. Rsrv. Sys. v. Dimension Fin. Corp.,*
474 U.S. 361 (1986) ............................................................... 18

*Bennett v. Spear,*
520 U.S. 154 (1997) ............................................................... 11

*Biden v. Texas,*
142 S. Ct. 2528 (2022) ............................................................ 1

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs,*
781 F.3d 1271 (11th Cir. 2015) ........................................ 21

*Bowen v. Georgetown Univ. Hosp.,*
488 U.S. 204 (1988) ............................................................... 18

*Califano v. Yamasaki,*
442 U.S. 682 (1972) ................................................................. 7

*California v. Texas,*
141 S. Ct. 2104 (2021) .................................................. 11, 12

*Cargill v. Garland,*
57 F.4th 447 (5th Cir. 2023) (en banc) ................. 2, 5, 6, 13

*Cent. & Sw. Servs., Inc. v. U.S. E.P.A.,*
220 F.3d 683 (5th Cir. 2000) ................................................ 8

*Cent. Pines Land Co. v. United States,*
274 F.3d 881 (5th Cir. 2001) ................................................ 5

*Checkosky v. SEC,*
23 F.3d 452 (D.C. Cir. 1994) ............................................. 20

iii

*Chevron, U.S.A., Inc. v. NRDC*,
  467 U.S. 837 (1984) ................................................................. 18

*Chrysler Corp. v. Brown*,
  441 U.S. 281 (1979) .................................................................17

*City of Arlington v. F.C.C.*,
  569 U.S. 290 (2013) ................................................................... 2

*In re: Clean Water Act Rulemaking*,
  60 F.4th 583 (9th Cir. 2023) ................................................... 21

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021) ............................................................... 1

*Columbia Broad. Sys., Inc. v. United States*,
  316 U.S. 407 (1942) .................................................................16

*Comite' De Apoyo A Los Trabajadores Agricolas v. Perez*,
  774 F.3d 173 (3d Cir. 2014) .................................................... 21

*Cream Wipt Food Prods. Co. v. Fed. Sec. Adm'r*,
  187 F.2d 789 (3d Cir. 1951) .................................................... 14

*Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*,
  45 F.4th 846 (5th Cir. 2022) ...........................................2, 5, 8, 9

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
  140 S. Ct. 1891 (2020) ............................................................ 18

*Driftless Area Land Conservancy v. Valcq*,
  16 F.4th 508 (7th Cir. 2021) ..................................................... 8

*Duarte v. Mayorkas*,
  27 F.4th 1044 (5th Cir. 2022) ..................................................15

*Dunn-McCambpell Royalty Int., Inc. v. Nat'l Park Serv.*,
  112 F.3d 1283 (5th Cir. 1997) ................................................. 10

*E. Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) ................................................... 21

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ................................................................ 10

*FCC v. Midwest Video Corp.*,
  440 U.S. 689 (1979) ................................................................ 18

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) ................................................................ 18

*FEC v. Akins*,
  524 U.S. 11 (1988) ...................................................................17

iv

*Fed. Election Comm'n v. Cruz,*
    142 S. Ct. 1638 (2022) ........................................................................ 12

*Feds for Medical Freedom v. Biden,*
    63 F.4th 366 388 (5th Cir. 2023) ........................................................ 7

*Franciscan All., Inc. v. Becerra,*
    47 F.4th 368 (5th Cir. 2022) ...................................................5, 11, 12

*Gahagan v. U.S. Citizenship & Immigr. Servs.,*
    911 F.3d 298 (5th Cir. 2018) ................................................................ 5

*Georgia v. President of the United States,*
    46 F.4th 1283 (11th Cir. 2022) .......................................................... 14

*Harmon v. Thornburgh,*
    878 F.2d 484 (D.C. Cir. 1989) ........................................................... 20

*Johnson v. U.S. Off. of Pers. Mgmt.,*
    783 F.3d 655 (7th Cir. 2015) .............................................................. 21

*Kiakombua v. Wolf,*
    498 F. Supp. 3d 1 (D.D.C. 2020) ...................................................... 19

*King v. Smith,*
    392 U.S. 309 (1968) .............................................................................. 1

*Kisor v. Wilkie,*
    139 S. Ct. 2400 (2019) ........................................................................ 14

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
    140 S. Ct. 2367 (2020)  ....................................................................... 17

*Lorillard v. Pons,*
    434 U.S. 575 (1978) ............................................................................ 15

*In re: Louisiana Pub. Serv. Comm'n,*
    58 F.4th 191 (5th Cir. 2023) .............................................................. 16

*Lujan v. National Wildlife Federation,*
    497 U.S. 871 (1990) ............................................................................ 17

*Magill v. Lynch,*
    560 F.2d 22 (1st Cir. 1977) .................................................................. 1

*Mann Constr., Inc. v. United States,*
    27 F.4th 1138 (6th Cir. 2022) ............................................................ 21

*Mfrs. Ry. Co. v. Surface Transp. Bd.,*
    676 F.3d 1094 (D.C. Cir. 2012)  ........................................................ 19

*Milk Train, Inc. v. Veneman,*
    310 F.3d 747 (D.C. Cir. 2002) ........................................................... 20

*Mock v. Garland*,
No. 23-10319, 2023 WL 4882763 (5th Cir. Aug. 1, 2023) ............................... 7, 8

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) .................................................................................. 7

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)................................................................................... 18

*Murphy v. NCAA*,
138 S. Ct. 1461 (2018) ............................................................................ 1

*Nat'l Fed'n of Indep. Bus. v. OSHA*,
142 S. Ct. 661 (2022)............................................................................... 1

*Okpalobi v. Foster*,
244 F.3d 405 (5th Cir. 2001) (en banc) ............................................... 11

*Reuben H. Donnelley Corp. v. F.T.C.*,
580 F.2d 264 (7th Cir. 1978) .................................................................. 1

*Rodriguez de Quijas v. Shearson/American Exp., Inc.*,
490 U.S. 477 (1989) .............................................................................. 19

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
985 F.3d 1032 (D.C. Cir. 2021) ........................................................... 20

*Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*,
989 F.3d 368 (5th Cir. 2021) ............................................... 3, 8, 9, 10

*Texas v. Biden*,
20 F.4th 928 (5th Cir. 2021) ........................................................ 5, 6, 9

*Texas v. Brooks-LaSure*,
No. 6:23-cv-161-JDK, 2023 WL 4304749 (E.D. Tex. June 30, 2023) ................ 1

*Texas v. Equal Emp. Opportunity Comm'n*,
933 F.3d 433 (5th Cir. 2019)................................................................ 11

*Texas v. Rettig*,
987 F.3d 518 (5th Cir. 2021)................................................................ 10

*Texas v. United States*,
40 F.4th 205 (5th Cir. 2022) .................................................................. 6

*Texas v. United States*,
809 F.3d 134 (5th Cir. 2015)............................................................. 1, 7

*United States v. Baltimore & Ohio Railroad Co*,
293 U.S. 454 (1935).............................................................................. 16

*United States v. Texas*,
143 S. Ct. 1964 (2023) ............................................................................ 3

*United States v. Wilkes*,
No. 22-1436, 2023 WL 5163389 (6th Cir. Aug. 11, 2023) .................................. 14
*United Steel v. Mine Safety and Health Admin.*,
925 F.3d 1279 (D.C. Cir. 2019) ........................................................ 2, 5
*West Virginia v. EPA*,
142 S. Ct. 2587 (2022) ..................................................................... 1

**Statutes and Rules:**

5 U.S.C.:
§ 702 .......................................................................................... 10
§ 706 ................................................................................... *passim*
§ 706(1) ................................................................................. 15, 16
§ 706(2) ............................................................. 2, 14, 15, 16, 21
§ 706(2)(B) ............................................................................. 4, 10
§ 703 ........................................................................................... 15
§ 705 ................................................................................... 15, 16
§ 706(2)(A) .................................................................................. 4
§ 706(2)(A)-(C) ..................................................................... 12, 14

Fed. R. Civ. P.:
54 ............................................................................................... 13
54(c) .......................................................................................... 13

Pub. L. 89-554, Sept. 6, 1966, 80 Stat. 393 ................................... 15
Pub. L. 94–574, § 1, Oct. 21, 1976, 90 Stat. 2721 ........................ 15
Pub. L. 103–272, § 5(a), July 5, 1994, 108 Stat. 1373.................. 15
Pub. L. 111–350, § 5(a)(3), Jan. 4, 2011, 124 Stat. 3841 ............ 15

**Other Authorities:**

Antonin Scalia, Vermont Yankee: *The APA, the D.C. Circuit, and the Supreme Court*, 1978 Sup. Ct. Rev. 345 (1978) ...................................... 5
Black's Law Dictionary 1612 (3d ed. 1933)............................... 14
Jennifer L. Selin & David E. Lewis, *Administrative Conference of the United States: Sourcebook of United States Executive Agencies* 12 (2d ed. 2018) ..................................................................................... 1
John Harrison, *Section 706 of the Administrative Procedure Act Does not Call for Universal Injunctions or Other Universal Remedies*, Yale Journal of Regulation (Apr. 12, 2020), https://tinyurl.com/JHarrisonVacatur............................................ 15

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 950 (2018) ........................................................................ 14

Mila Sohoni, *The Power to Vacate A Rule*, 88 Geo. Wash. L. Rev. 1121 & nn.87-88 (2020) ........................................................6, 18

Nicholas Bagley, *Remedial Restraint in Administrative Law*, 117 Colum. L. Rev. 253 (2017) ............................................................ 14

## Interest of Amicus Curiae

Even as early as the 1970s, courts were taking notice of the "vast growth of the federal bureaucracy," *Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir. 1978), as well as its "partisan potential." *Magill v. Lynch*, 560 F.2d 22, 28 (1st Cir. 1977). Far from slowing down, today there is not even an "authoritative list of government agencies." Jennifer L. Selin & David E. Lewis, *Administrative Conference of the United States: Sourcebook of United States Executive Agencies* 12 (2d ed. 2018). What is known is that those agencies "can deeply impact the lives of millions of Americans by affecting their ability" to do everything from "buy[ing] and keep[ing] their homes," *Collins v. Yellen*, 141 S. Ct. 1761, 1786 (2021), to powering those homes, *West Virginia v. EPA*, 142 S. Ct. 2587, 2610 (2022), to making deeply personal decisions about their health, *Nat'l Fed'n of Indep. Bus. v. OSHA*, 142 S. Ct. 661, 665 (2022).

Notwithstanding the "fundamental structural decision incorporated into the Constitution . . . to withhold from Congress the power to issue orders directly to States," *Murphy v. NCAA*, 138 S. Ct. 1461, 1475 (2018), the growth of "cooperative federalism," under which programs are "financed largely by the federal government," but "administered by the States," *King v. Smith*, 392 U.S. 309, 316 (1968), means that States are affected by this trend no less than individuals, *Bd. of Cnty. Comm'rs of Weld Cnty. v. EPA*, 72 F.4th 284, 292-96 (D.C. Cir. 2023); *Texas v. Brooks-LaSure*, No. 6:23-cv-161-JDK, 2023 WL 4304749 (E.D. Tex. June 30, 2023). States also often bear the cost of purely federal action. *Biden v. Texas*, 142 S. Ct. 2528, 2534-35 (2022); *Texas v. United States*, 809 F.3d 134, 187 (5th Cir. 2015), *aff'd by an*

*equally divided Court*, 136 S. Ct. 2271 (2016) (per curiam). As a result, States generally—and Texas specifically—often find themselves as litigants challenging unlawful action by federal agencies. Texas therefore has a strong interest in what remedies are available under the Administrative Procedure Act when agencies overstep the mark—as happens far more than it should.[1]

## Statement and Summary of Argument

It is blackletter law that an agency cannot act without authorization from Congress; any time the agency does not "stay[] within the bounds of its statutory authority," its action is *ultra vires. City of Arlington v. F.C.C.*, 569 U.S. 290, 297 (2013) (emphasis omitted). To ensure that the innumerable agencies in the federal government stay in their lane, Congress created a broad right of judicial review, and instructed that a "reviewing court *shall . . .* hold unlawful and set aside" agency action that the APA forbids. 5 U.S.C. § 706(2) (emphasis added). This Court has interpreted that rule not just to allow vacatur as a remedy, but to make it the "default rule" for remedies under section 706 of the APA. *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (en banc); *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022). This Court is not alone. *United Steel v. Mine Safety and Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("The ordinary practice is to

---

[1] No counsel for any party authored this brief in whole or in part. No person or entity other than amicus curiae contributed monetarily to its preparation or submission. For the avoidance of doubt, by focusing on the remedial arguments raised by the federal government, the State does not intend to signal agreement (or disagreement) with any party on the merits of any other question in this dispute.

vacate unlawful agency action."). Indeed, when the federal government suggested otherwise to the Supreme Court, multiple Justices derided the view as "inconsistent with" decades of cases interpreting the APA—particularly in the D.C. Circuit which, the Chief Justice insisted, vacates agency action "five times before breakfast, that's what you do in an APA case."[2]

The district court did not err in its straightforward application of this Court's precedents to vacate unlawful actions taken by the U.S. Preventive Services Task Force. ROA.2121-30. Insofar as exceptions to this default rule exist, they are narrow—for example, when there is at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so. *Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 389 (5th Cir. 2021). This case does not fall within any of those exceptions. The district court had previously concluded that Task Force Members are officers of the United States whose appointment violated the Constitution's Appointments Clause and that the Secretary of Health and Human Services' ratification of the Task Force's recommendations were ineffectual. ROA.1797-1806 As those errors cannot be remedied merely by the agency taking another, closer look at the administrative record, the district court's decision to vacate agency actions taken by the Task Force, ROA.2129, fits comfortably within this Court's precedent.

---

[2] Argument Transcript 35, *United States v. Texas*, No. 22-58, (Roberts, C.J.), 143 S. Ct. 1964 (2023); *see also, e.g.*, *id.* at 54 (Kavanaugh, J.); *id.* at 119 (Alito, J.).

Even if this Court's rule of orderliness did not compel affirmance as to the district court's vacatur, it would still be correct as a matter of first impression. The text of section 706, pre-APA history of administrative review, Supreme Court precedent, and the practice of this Court's sister circuits all weigh in favor of vacatur of agencies' unlawful actions. Defendants cannot avoid that conclusion by contending that the district court should not have considered the APA remedial scheme, committed an end-run around various APA requirements, or improperly failed to consider the public interest or balance of the equities. That this case raises constitutional issues does not take it outside the scope of the APA. *See* 5 U.S.C. § 706 (requiring courts to "interpret constitutional and statutory provisions" before setting aside unlawful agency action); *id.* § 706(2)(B) (expressly requiring a court to set aside agency action that is "contrary to constitutional right, *power*, privilege, or immunity") (emphasis added). Moreover, the district court complied with all requirements of the APA (or at least the judgment of the district court may be easily reformed), and because the district court did not issue an injunction, its ruling is not subject to the ordinary equitable rules governing injunctions.

## ARGUMENT

The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Courts have long relied on the "set aside" authority to vacate unlawful agency actions. Nonetheless, defendants argue that APA vacatur was inappropriate in this case. They are wrong.

## I.  The District Court Properly Vacated Agency Action It Held Illegal In This Case Under This Court's Binding Precedent.

### A.  Under this Court's precedent, vacatur is the default remedy and was appropriate here.

In this Court, the "default rule" is that vacatur is the appropriate remedy for agency action that violates the APA. *Cargill*, 57 F.4th at 472; *Data Mktg. P'ship*, 45 F.4th at 859; *Texas v. Biden*, 20 F.4th 928, 1000 (5th Cir. 2021), *rev'd on other grounds*, 142 S. Ct. 2528 (2022) ("By default, remand *with* vacatur is the appropriate remedy.") (citing *United Steel*, 925 F.3d at 1287). This default rule makes sense because, since at least 1967 it has been an established "principle that rules could be challenged in court directly rather than merely in the context of an adjudicatory enforcement proceeding against a particular individual." Antonin Scalia, Vermont Yankee: *The APA, the D.C. Circuit, and the Supreme Court*, 1978 Sup. Ct. Rev. 345, 376 (1978). And, as this Court has noted, "[v]acatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation." *Franciscan All., Inc. v. Becerra*, 47 F.4th 374-75 & n.29 (5th Cir. 2022)

The district court was bound by this precedent, as is a panel of this Court under the rule of orderliness. Under that rule, "'[t]hree-judge panels . . . abide by a prior Fifth Circuit decision until the decision is overruled, expressly or implicitly, by either the United States Supreme Court or by the Fifth Circuit sitting en banc.'" *Gahagan v. U.S. Citizenship & Immigr. Servs.*, 911 F.3d 298, 302 (5th Cir. 2018) (quoting *Cent. Pines Land Co. v. United States*, 274 F.3d 881, 893 (5th Cir. 2001)). This rule applies even when the Supreme Court has reversed other portions of the Court's reasoning. *See, e.g.*, *Data Mktg. P'ship,* 45 F.4th at 856 (citing *Texas v. United States*, 40 F.4th

205, 222 n.9 (5th Cir. 2022) (per curiam) (understanding *Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021), to be binding on all grounds not reversed)).

This Court's repeated holdings that vacatur is the default remedy for unlawful agency action have not been overruled by either the Supreme Court or this Court sitting en banc. Although "fairly radical" when compared to how the APA has traditionally been interpreted, *see supra* n.2, the United States' position here is not entirely new: in 2018, the Department of Justice issued a memorandum "instructing DOJ's civil litigators to argue that '[u]niversal [v]acatur [i]s [n]ot [c]ontemplated by the APA' and that 'the APA's text does not permit, let alone require, such a broad remedy.'" Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1123 (2020) (quoting Memorandum from the Office of the Att'y Gen. to the Heads of Civil Litigating Components U.S. Attorneys, Litigation Guidelines for Cases Presenting the Possibility of Nationwide Injunctions 7–8 (Sept. 13, 2018)). Yet, to the best of counsel's knowledge, this Court first described vacatur as the "default," *after* these guidelines were issued, *Biden*, 20 F.4th at 1000, and the en banc Court reaffirmed that vacatur remains the "default" rule earlier only this year, *Cargill*, 57 F.4th at 472.[3]

---

[3] This Court's en banc opinion in *Cargill* did remand to the district court but only because "the parties have not briefed the remedial-scope question, and it may be the case that a more limited remedy is appropriate in these circumstances." 57 F.4th at 472. Apart from reaffirming vacatur as the default rule, the Court "expressed no opinion on that question other than to observe that the district court" was "well-placed to answer the question in the first instance." *Id.*

Defendants attempt (at 44-46) to undercut the legitimacy of this rule by blurring the distinction between vacatur and a universal or nationwide injunction. This fails for at least two reasons. *First*, it ignores that although this Court has stated that— unlike vacatur—"nationwide injunctions are [not] required or even the norm," *Mock v. Garland*, No. 23-10319, 2023 WL 4882763, at *20 (5th Cir. Aug. 1, 2023), they can be appropriate where there is "a substantial likelihood that a geographically-limited injunction would be ineffective," *Texas*, 809 F.3d at 188; *see also, e.g.*, *Mock*, 2023 WL 4882763, at *20 (citing *inter alia Califano v. Yamasaki*, 442 U.S. 682, 702 (1972)); *Feds for Medical Freedom v. Biden*, 63 F.4th 366 388 (5th Cir. 2023) (upholding nationwide relief based on concerns that "limiting the relief to only those before [the Court] would prove unwieldy and would only cause more confusion"). Plaintiffs cogently explain (at 55-56) why the relief they successfully sought is consonant with this Court's rulings regarding the limits on and availability of nationwide injunctions.

*Second*, APA vacatur under section 706 is *not* a nationwide injunction, or even an injunction at all. The Supreme Court has explained that "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). But "partial or complete vacatur" is "a less drastic remedy" that may nonetheless be "sufficient to redress" plaintiffs' injury without "recourse to the additional and extraordinary relief of an injunction." *Id.* at 165-66. An injunction generally acts *in personam*, while vacatur does not. That is, an injunction "operates on the enjoined officials" to block them from enforcing a regulation on pain of contempt, but vacatur of a regulation "unwinds the challenged agency action" altogether. *Driftless Area Land Conservancy*

*v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021). Under this Court's precedent, the district court was not required to issue a nationwide injunction, *see, e.g.*, *Mock*, 2023 WL 4882673, at *19, but it was required to apply the "default rule" and vacate any unlawful agency action demonstrated by plaintiffs, *Data Mktg. P'ship*, 45 F.4th at 859.

## B.  The district court properly applied that default rule.

When read in that context, the district court's remedial order represents a straightforward application of this Court's precedent. ROA.2122-23. The court concluded that "the APA permits vacatur of the unlawful agency actions taken to implement or enforce ... constitutionally infirm preventive care mandates." ROA.2122-23. And after noting that the APA explains that courts "shall" hold unlawful and set aside agency action not in accordance with law, the court ordered such relief. ROA.2122, 2129-30.

It is true that this Court has occasionally remanded agency action without vacatur. And the district court surveyed this Court's cases involving this more tailored remedy. ROA.2122-23. Under that caselaw, however, "[r]emand, not vacatur, is generally appropriate" only "when there is at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so." *Tex. Ass'n of Mfrs.*, 989 F.3d at 389. For example, this Court has remanded without vacatur to correct procedural defaults including, for example, "to allow [an agency] to fully respond to comments," "explain why it did not grant" certain actions, and "complete [an] ongoing assessment." *Cent. & Sw. Servs., Inc. v. U.S. E.P.A.*, 220 F.3d 683, 702 (5th Cir. 2000). By contrast, it has held that vacatur is appropriate

rather than remand when an agency action is "seriously deficient." *Biden*, 20 F.4th at 1000.

Here, the district court was correct that remand without vacatur was inappropriate. Given the court's conclusion that members of the Task Force were unconstitutionally appointed, the Task Force's actions were so seriously deficient that "the Court has nothing to remand here." ROA.2123. The United States concedes (at 2) that "members of the Task Force are officers of the United States who were not appointed consistent with the Constitution's Appointments Clause." Thus, there is *no* chance let alone a "a serious possibility that the [Task Force] will be able" to cure that legal problem "given an opportunity to do so." *Texas Ass'n of Manufacturers*, 989 F.3d at 389. The United States thus implicitly concedes that the only questions are whether the HHS Secretary can prospectively appoint members of the Task Force, retroactively ratify their actions, or whether the statute may be severed. Those are, however, merits questions, not remedial ones, and outside the scope of this brief.

Moreover, under established precedent, the district court was not required to balance the equities and weigh the public interest before vacating the Task Force's unlawful actions. *Contra* Appellants' Br. 46-48. In this Court, vacatur is the "default rule." *Data Mktg. P'ship*, 45 F.4th at 859. And in the rare circumstance where this Court has remanded without vacatur, it has been because there was a "serious possibility" that the agency would be able to substantiate its decision if given the opportunity to do so. *Tex. Ass'n of Mfrs.*, 989 F.3d at 389. This Court has neither engaged nor required district courts to engage in the wide-ranging balancing of equities and

considerations of the public interest that would accompany the grant of a permanent injunction that defendants invite when deciding whether to vacate agency action under section 706. *Compare Tex. Ass'n of Mfrs.*, 989 F.3d at 389 *with eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (setting out four factor test including balancing equities and public interest before entry of permanent injunctive relief).

## C. Defendants are wrong to insist that vacatur was not a remedy available to the district court.

Defendants try (at 45-46) to evade this default rule by arguing that plaintiffs failed to pursue their APA claim, making APA vacatur unavailable to the district court. That argument is wrong for at least four reasons.

*First*, defendants have an inappropriately crabbed view of what constitutes an "APA claim." The APA both waives sovereign immunity and provides a cause of action for "[a] person suffering legal wrong because of agency action," in which case he may "seek[] relief other than money damages and stat[e] a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702. Constitutional challenges *are* APA claims when they are brought to set aside a particular agency action. *Id.* § 706(2)(B); *accord Texas v. Rettig*, 987 F.3d 518 (5th Cir. 2021) (noting that under *Dunn-McCambbell Royalty Int., Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997), a party asserted the unconstitutionality of a rule as a defense to individual agency enforcement actions).

That is precisely what happened here. Indeed, defendants do not contest that the Task Force's actions constitute final agency action subject to review under the

APA because they cannot: a final agency action is one "that (1) 'mark[s] the consummation of the agency's decisionmaking process' and (2) 'by which rights or obligations have been determined, or from which legal consequences will flow.'" *Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 441 & n.11 (5th Cir. 2019) ("*EEOC*") (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78, (1997)). "The Supreme Court has long taken a pragmatic approach to finality, viewing the APA's finality requirement as flexible." *Id.* at 441(cleaned up, footnote omitted). Because the district court concluded that the Task Force "has authority to determine what preventative-care services private insurers must cover" including "the authority to determine the scope of any religious or nonreligious exemptions" and "exercises final authority over its narrow domain," ROA.1801, the Task Force's actions bear all the hallmarks of final agency action. *EEOC*, 933 F.3d at 441. And the district court adopted plaintiffs' argument that "'a challenge to the constitutionality of a statute necessarily encompasses a challenge to every agency action taken to implement [or enforce] the unconstitutional command.'" ROA.2123.

*Second*, defendants' theory is inconsistent with this Court's recent decision in *Franciscan All., Inc. v. Becerra*, which rejected the distinction between challenging the constitutionality of a statute and challenging agency regulation or action taken under a statute. 47 F.4th at 378. After all, a plaintiff cannot challenge the constitutionality of a statute in the abstract without violating the limits of federal jurisdiction. *See, e.g.*, *California v. Texas*, 141 S. Ct. 2104, 2115 (2021); *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001) (en banc). Instead, plaintiffs must challenge "'government action that causes their harm: the [Government's threatened enforcement of the

statute], *through* its implementing regulation.'" *Franciscan All.*, 47 F.4th at 378 & n.54 (quoting *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1650 (2022)). Moreover, "a challenge to an agency regulation is necessarily a challenge to the underlying statute as well" because "an agency 'literally has no power to act . . . unless and until Congress authorizes it to do so by statute.'" *Id.* at 378 & n.53 (quoting *Cruz*, 142 S. Ct. at 1649).

The inverse is just as true; because an agency has no power to act until Congress has authorized it to do so, a challenge to the constitutionality of a statute necessarily includes a challenge to agency action promulgated under the authority that the statute provides. That is because "[a]n agency's regulation cannot 'operate independently of' the statute that authorized it." *Cruz*, 142 S. Ct. at 1649 (quoting *California*, 141 S. Ct. at 2120). And an agency operating under an unconstitutional statute is alternately acting "not in accordance with" or contrary to law, "contrary to constitutional right," or "in excess of . . . statutory right." 5 U.S.C. § 706(2)(A)-(C).

*Third*, defendants assert (at 44-45) a cascade of problems that will arise because the court's vacatur included actions vacated that were either nonfinal or outside the statute of limitations. Plaintiffs assert (at 51) that this argument is illusory because the Task Force's website reflects that none of the challenged actions took place before the end of the limitations window in March 2014. But more importantly for the purposes of this brief: this argument goes to the *scope* of the vacatur—not its propriety. As noted above, defendants do not seriously contest that at least *some* of the actions challenged met the APA's various substantive requirements. *Supra*, 10-11. And Plaintiffs' brief consents (at 51-52) to reform of the judgment to exclude any and all

final agency actions that pre-date March 29, 2014—six years from the date on which the plaintiffs sued—explaining that such actions "should not be vacated under section 706." As a result, this objection to the propriety of vacatur as a remedy is illusory if not entirely moot.

*Fourth*, to the extent there is any doubt, plaintiffs correctly explain (at 49-50)—and the district court correctly held, ROA.2125-27—that Federal Rule of Civil Procedure 54 "allows the Court to provide the relief to which Plaintiffs are entitled" even if they "fail[ed] to request that form of relief at the outset of their case," ROA.2125 (citing Fed. R. Civ. P. 54(c)) (collecting authority). Defendants were indisputably on notice that plaintiffs sought vacatur and had ample opportunity to brief the appropriateness of such a remedy in the district court. ROA.2126-27. And under this Court's well-established "default" rules, the district court correctly overruled any objections defendants made. *E.g.*, *Cargill*, 57 F.4th at 472.

## II. Even As A Matter Of First Impression, Vacatur Is The Appropriate Remedy For Unlawful Agency Action.

Even if this Court had not repeatedly concluded that vacatur was the default APA remedy and was not bound by the rule of orderliness, vacatur is consistent with the APA's text, with the historical practice of courts, with the Supreme Court's decisions, and with the near universal practice of the courts of appeals. Even if a panel of this Court could disturb the Court's earlier conclusions it should not do so.

### A. Both the text of the APA and pre-APA practice support vacatur.

The APA explains that Courts "shall" "hold unlawful and set aside agency action, findings, and conclusions found to be," *inter alia*, "arbitrary, capricious, an

abuse of discretion or otherwise not in accordance with law," "contrary to constitutional right power, privilege or immunity," and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C). A court "set[s] aside agency action" by vacating it. *Id.* § 706(2).

When Congress adopted the APA, "set aside" meant "to cancel, annul, or revoke." Black's Law Dictionary 1612 (3d ed. 1933). The APA "reflected a consensus that judicial review of agency action should be modeled on appellate review of trial court judgments." Nicholas Bagley, *Remedial Restraint in Administrative Law*, 117 Colum. L. Rev. 253, 258 (2017). Thus, "the [APA] establishes a unique form of judicial review that differs from judicial review of statutes." Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 950 (2018). Indeed, just five years after the APA's enactment, the Third Circuit explained that section 706(2) "affirmatively provides for vacation of agency action." *Cream Wipt Food Prods. Co. v. Fed. Sec. Adm'r*, 187 F.2d 789, 790 (3d Cir. 1951). Thus, even if the statute were ambiguous (and it is not), such an "early, longstanding, and consistent interpretation of a statute" is widely accepted to "count as powerful evidence of its original public meaning." *United States v. Wilkes*, No. 22-1436, 2023 WL 5163389, at *8 (6th Cir. Aug. 11, 2023) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2426 (2019) (Gorsuch, J., concurring)); *see also, e.g.*, *Georgia v. President of the United States*, 46 F.4th 1283, 1300 (11th Cir. 2022). That is particularly so given that Congress amended and recodified

various portions of the APA since courts began to apply vacatur,[4] but has chosen *not* to abrogate the availability of this remedy. *See, e.g.*, *Duarte v. Mayorkas*, 27 F.4th 1044, 1059 (5th Cir. 2022) (citing *Lorillard v. Pons*, 434 U.S. 575 (1978) (stating that Congress can be presumed to be aware of relevant administrative interpretations when reenacting or amending a statute)).

This long-adopted interpretation harmonizes the "set aside" authority with the rest of the APA. As explained above (at 11-12), it is a well-established principle—which defendants do not seem to contest—that a party can challenge agency rules, independent of any enforcement action. It would be illogical for the APA to allow a court to "postpone the effective date of [such] an agency action" during litigation, 5 U.S.C. § 705, but be powerless to terminate that action if the court concludes the action is "unlawful," *id.* § 706(2). The availability of what is effectively a stay under section 705 disproves—or at least casts significant doubt on—a key premise of those who criticize nationwide vacatur: that section 703 places a limitation on the forms of relief available under the APA.[5] So too with section 706(1), which allows courts to "compel" agency action. *Id.* § 706(1). Compelling agency action is plainly a remedy, which need not necessarily take the form of a "declaratory judgment[] or writ[] of prohibitory or mandatory injunction or habeas corpus." *Compare* 5 U.S.C. § 703,

---

[4] Pub. L. 111–350, § 5(a)(3), Jan. 4, 2011, 124 Stat. 3841; Pub. L. 103–272, § 5(a), July 5, 1994, 108 Stat. 1373; Pub. L. 94–574, § 1, Oct. 21, 1976, 90 Stat. 2721; Pub. L. 89-554, Sept. 6, 1966, 80 Stat. 393.

[5] John Harrison, *Section 706 of the Administrative Procedure Act Does not Call for Universal Injunctions or Other Universal Remedies*, Yale Journal of Regulation (Apr. 12, 2020), https://tinyurl.com/JHarrisonVacatur.

*with In re: Louisiana Pub. Serv. Comm'n*, 58 F.4th 191, 193 (5th Cir. 2023) ("We interpret the All Writs Act and the APA to provide separate, but closely intertwined, grounds for mandamus relief."). Defendants do not explain how staying (under section 705) or compelling (under section 706(1)) agency action—where those agency actions are often though perhaps not always generally applicable—comports with the idea that when courts set aside agency action under section 706(2), they should only do so as to a specific party while allowing the same procedurally or substantively unlawful agency action to remain generally applicable.

This interpretation also comports with pre-APA administrative review, where federal courts often vacated unlawful agency action. For example, *United States v. Baltimore & Ohio Railroad Co*, 293 U.S. 454 (1935), involved a challenge to an Interstate Commerce Commission rule governing the gears that steam locomotives must use. A three-judge district court entered an order "set[ting] aside" the rule, and "restrain[ing]" its enforcement. *Baltimore & Ohio R. Co. v. United States*, 5 F. Supp. 929, 936 (N.D. Ohio 1933). And the Supreme Court ultimately affirmed that order, recognizing that the suit had been one "to set aside" the ICC's order. *Baltimore & Ohio*, 293 U.S. at 458. Likewise, though it was ultimately reversed on the merits by the Supreme Court, a three-judge court "enjoin[ed] and [annul[led]" an ICC rule concerning railroads' distribution of railcars among coal mines during car shortages. *Assigned Car Cases*, 274 U.S. 564, 567 (1927); *see also Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407 (1942); *Am. Tel. & Tel. Co. v. United States*, 299 U.S. 232 (1936).

Both the text of the APA and the relevant history support the view that section 706 of the APA provides for vacatur of unlawful agency action. So too does caselaw both from the Supreme Court and this Court's sister circuits.

## B. Supreme Court precedent and the near universal practice of the courts of appeals support vacatur.

**1.** The Supreme Court long ago explained that agency action taken in violation of the APA "cannot be afforded the force and effect of law." *Chrysler Corp. v. Brown*, 441 U.S. 281, 313 (1979) (internal quotation marks omitted). Because such a conclusion is—by its nature—absolute, the Supreme Court routinely holds that "[i]f a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case." *FEC v. Akins*, 524 U.S. 11, 25 (1988). For example, in *Lujan v. National Wildlife Federation*, the Supreme Court was divided on a number of questions, but all justices agreed that agency action "can of course be challenged under the APA by a person adversely affected—and the entire [program] insofar as the content of that particular action is concerned, would thereby be affected." 497 U.S. 871, 890 & n.2 (1990). That is, "if the plaintiff prevails, the result is that the rule is invalidated, not simply that the court forbids its application to a particular individual." *Id.* at 913 (Blackmun, J., dissenting). "Under these circumstances a single plaintiff, so long as he is injured by the rule, may obtain 'programmatic' relief that affects the rights of parties not before the court." *Id.*

That near-universal agreement has continued even in closely divided cases almost to the present day. *See, e.g.*, *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2412 n.28 (2020) (explaining the APA "contemplates

nationwide relief from invalid agency action") (Ginsburg, J., dissenting). And the Supreme Court has routinely "affirmed lower court decisions that have invalidated rules universally" and "itself stayed agency action universally." *The Power to Vacate a Rule*, 1138 & nn.87-88 (2020) (collecting authority). Many of these cases are canonical administrative-law decisions. *See, e.g.*, *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, 161 (2000) (affirming lower court's vacatur of tobacco regulations); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 34 (1983) (invalidating agency's rescission of passive-restraint standard); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1916 (2020) (affirming lower court's vacatur of rescission of immigration relief program).

The Supreme Court has also affirmed judgments of the lower courts using the term "set aside" synonymously with "vacatur." *See, e.g.*, *FCC v. Midwest Video Corp.*, 440 U.S. 689, 708 n.18 (1979) ("[W]e affirm the lower court's determination to set aside the amalgam of rules . . . ."); *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) ("Courts enforce this principle [requiring rational agency decision-making] with regularity when they set aside agency regulations which, though well within the agencies' scope of authority, are not supported by the reasons that the agencies adduce."); *Bd. of Governors of the Fed. Rsrv. Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 364 (1986) ("The Court of Appeals set aside both . . . aspects of the Board's regulation."); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) (declaring rule "invalid" rather than limiting relief to the "group of seven hospitals" that had filed suit); *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 841-42 (1984)

("[The D.C. Circuit] therefore set aside the regulations embodying the bubble concept as contrary to law.").

Where, as here, Supreme Court precedents have "direct application in a case," the Supreme Court has repeatedly admonished that "the Court of Appeals should follow the case which directly controls, leaving to [that] Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quoting *Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 484 (1989)). Prudence is particularly appropriate here given that several sitting Supreme Court justices have approved of APA vacatur as judges on the lower courts. *See, e.g.*, *Mfrs. Ry. Co. v. Surface Transp. Bd.*, 676 F.3d 1094, 1097 (D.C. Cir. 2012) (Kavanaugh, J.). One even conducted a survey of precedent and explained that the government had "failed to provide any persuasive reason . . . to justify limiting a federal court's traditional power to nullify the actions of the defendant" by vacating unlawful agency action. *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 54 (D.D.C. 2020). (Jackson, J.). When the United States Solicitor General pressed the assertion that "the lower courts, including the D.C. Circuit, have . . . been getting this one wrong," Tr., *supra*, at 49–50, those same Justices observed that view was "radical" and warned that it would "overturn[] that whole established practice under the APA." *Id.* at 35 (Roberts, C.J.); *see also id.* at 54-55 (Kavanaugh, J.). Moreover, Justice Jackson suggested that the government's view would create a "disconnect" between "the claim that is being made in a case and the remedy that is provided to a successful plaintiff." *Id.* at 66.

**2.**   The caselaw of this Court's sister circuits' bear out the Justices' concerns: they regularly vacate unlawful agency action under section 706. The D.C. Circuit, for example, has long held that "[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989); *see also Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1050 (D.C. Cir. 2021) (explaining "[t]he ordinary practice . . . is to vacate unlawful agency action") (internal quotation marks omitted).

The debate in the D.C. Circuit has not been whether section 706 allows vacatur of unlawful agency action, but whether vacatur is required by the APA's text. For example, in *Checkosky v. SEC*, Judge Randolph expressed the view that "[o]nce a reviewing court determines that the agency has not adequately explained its decision, the Administrative Procedure Act requires the court—in the absence of any contrary statute—to vacate the agency's action." 23 F.3d 452, 491 (D.C. Cir. 1994) (per curiam) (Op. Randolph, J.). Judge Randolph reasoned that section 706 required this result "in the clearest possible terms" because "a reviewing court faced with an arbitrary and capricious agency decision shall—not may—hold unlawful and set aside the agency action." *Id.* (cleaned up). Judge Sentelle later expressly adopted Judge Randolph's view that section 706 requires vacatur of unlawful agency action. *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 757 (D.C. Cir. 2002) (Sentelle, J., dissenting).

Whatever the outcome of that debate, courts of appeals other than this Court and the D.C. Circuit routinely vacate unlawful agency action under section 706. *In*

*re: Clean Water Act Rulemaking*, 60 F.4th 583, 594 (9th Cir. 2023) (explaining "the APA instructs courts to set aside (*i.e.*, to vacate) agency actions held to be unlawful.") (internal quotation marks omitted); *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 681 (9th Cir. 2021); *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1148 (6th Cir. 2022); *Johnson v. U.S. Off. of Pers. Mgmt.*, 783 F.3d 655, 663 (7th Cir. 2015) ("[V]acatur is the presumptive remedy for a violation of the Administrative Procedure Act"); *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015) (explaining "vacatur . . . is the ordinary APA remedy."); *Comite' De Apoyo A Los Trabajadores Agricolas v. Perez*, 774 F.3d 173, 191 (3d Cir. 2014) ("Ordinarily, reviewing courts have applied [section 706(2)] by vacating invalid agency action and remanding the matter to the agency for further review."). So too here vacatur is the appropriate remedy.

# CONCLUSION

The Court should affirm the judgment of the district court to the extent it concluded that vacating unlawful agency action was the correct remedy.

Respectfully submitted.

Angela Colmenero
Provisional Attorney General

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

/s/ Lanora Pettit
Lanora Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

Benjamin Wilson
Deputy Solicitor General

Counsel for Amicus Curiae The State
of Texas

## CERTIFICATE OF SERVICE

On August 14, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Lanora Pettit
LANORA PETTIT

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,888 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Lanora Pettit
LANORA PETTIT