No. 23-10326

# In the United States Court of Appeals for the Fifth Circuit

---

BRAIDWOOD MANAGEMENT, INCORPORATED; JOHN SCOTT KELLEY; KELLEY ORTHODONTICS; ASHLEY MAXWELL; ZACH MAXWELL; JOEL STARNES,

*Plaintiffs–Appellees/Cross-Appellants*,

JOEL MILLER; GREGORY SCHEIDEMAN,

*Plaintiffs–Cross-Appellants*,

v.

XAVIER BECERRA, SECRETARY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, IN HIS OFFICIAL CAPACITY AS SECRETARY OF HEALTH AND HUMAN SERVICES; UNITED STATES OF AMERICA; JANET YELLEN, SECRETARY, U.S. DEPARTMENT OF TREASURY, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE TREASURY; JULIE A. SU, ACTING SECRETARY, U.S. DEPARTMENT OF LABOR, IN HER OFFICIAL CAPACITY AS SECRETARY OF LABOR,

*Defendants–Appellants/Cross-Appellees*.

---

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
Case No. 4:20-cv-00283-O

---

## REPLY BRIEF OF APPELLEES/CROSS-APPELLANTS BRAIDWOOD MANAGEMENT INC., ET AL.

---

GENE P. HAMILTON
Vice-President and General Counsel
America First Legal Foundation
611 Pennsylvania Ave SE #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Appellees/Cross-Appellants*

# TABLE OF CONTENTS

Table of contents ................................................................................. i

Table of authorities ............................................................................ ii

    I.    The text of 42 U.S.C. § 300gg-13(a)(2)–(4) gives ACIP and HRSA alone the power to issue the "recommendations" and "guidelines" that bind private insurers ............................... 1

    II.    Even if the Secretary holds the power to ratify ACIP's recommendations and HRSA's guidelines, the district court still needed to resolve whether the ACIP members and the HRSA administrator were constitutionally appointed ...................... 10

    III.    The Secretary's ratification memo cannot have retroactive effect under the terms of the APA ..................................... 14

    IV.    The Secretary's ratification memo failed to go through notice-and-comment procedures and is arbitrary and capricious ................. 19

Conclusion ......................................................................................... 23

Certificate of service ......................................................................... 24

Certificate of compliance .................................................................. 25

Certificate of electronic compliance .................................................. 26

# TABLE OF AUTHORITIES

## Cases

*Advanced Disposal Services East, Inc. v. NLRB*,
  820 F.3d 592 (3d Cir. 2016) ................................................................. 16, 17

*Bowen v. Georgetown University Hospital*, 488 U.S. 204 (1988) ............................... 15

*Butte County v. Hogen*, 613 F.3d 190 (D.C. Cir. 2010) ............................................ 19

*Celtronix Telemetry, Inc. v. FCC*, 272 F.3d 585 (D.C. Cir. 2001) ............................ 15

*Citizens United v. FEC*, 558 U.S. 310 (2010).................................................... 21, 22

*Creel v. Johnson*, 162 F.3d 385 (5th Cir. 1998) ......................................................... 21

*Cutter* v. *Wilkinson*, 544 U.S. 709 (2005)................................................... 10, 14, 23

*Department of Homeland Security v. Regents of the University of
  California*, 140 S. Ct. 1891 (2020) ...................................................................... 19

*Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022) ................ 22

*Hall v. Louisiana*, 884 F.3d 546 (5th Cir. 2018) ...................................................... 18

*Henslee v. Union Planters Nat'l Bank & Trust Co.*, 335 U.S. 595 (1949) .................. 22

*Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) ............................................................ 21

*Kamen v. Kemper Financial Services*, 500 U.S. 90 (1991) .................................. 21, 22

*Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001) ............................................ 18

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
  140 S. Ct. 2367 (2020)..................................................................................... 7, 8

*Lucia v. SEC*, 138 S. Ct. 2044 (2018) .......................................................................11

*Mitchell v. Wisconsin*, 139 S. Ct. 2525 (2019) .......................................................... 21

*Murray v. Anthony J. Bertucci Constr. Co.*, 958 F.2d 127 (5th Cir. 1992) .................. 21

*Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995)................................................. 17

*Singleton v. Wulff*, 428 U.S. 106 (1976) .................................................................... 21

*United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33 (1952) ........................... 18

*Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016)................................... 22

*Yee v. Escondido*, 503 U.S. 519 (1992) ................................................. 21, 22

**Statutes**

5 U.S.C. § 553 ......................................................................... 19, 22

5 U.S.C. § App. 1 Reorg. Plan 3 1966 ................................................ 13

42 U.S.C. § 202 ................................................................. 3, 4, 8, 10

42 U.S.C. § 202 note ................................................................ 4, 5

42 U.S.C. § 300gg-13 ................................................................... 1

42 U.S.C. § 300gg-13(a)(1)–(2) ......................................................... 6

42 U.S.C. § 300gg-13(a)(1)–(4) .................................................... 8, 9, 22

42 U.S.C. § 300gg-13(a)(2) ........................................................... 1, 8

42 U.S.C. § 300gg-13(a)(2)–(4) ................................................... 1, 11, 23

42 U.S.C. § 300gg-13(a)(3)–(4) ......................................................... 7

42 U.S.C. § 300gg-13(a)(4) ............................................................. 7

42 U.S.C. § 300gg-13(a)–(b) ............................................................ 2

42 U.S.C. § 300gg-13(b) ................................................................ 9

42 U.S.C. § 1396s(e) ............................................................... 5, 6, 9

**Constitutional Provisions**

U.S. Const. art. II § 2 ................................................................ 12

**Rules**

42 C.F.R. § 93.220 ..................................................................... 3

*Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act*, 82 Fed. Reg. 47,792 (October 13, 2017) ...................................................................... 7

**Other Authorities**

Emily Baver, *Setting Labor Policy Prospectively: Rulemaking, Adjudicating, and What the NLRB Can Learn from the NMB's Representation Election Procedure Rule*, 63 Admin. L. Rev. 853 (2011) ................. 17

Floyd R. Mechem, *Treatise on the Law of Public Offices and Officers*
(1890) ............................................................................................................... 16

The Secretary's ratification memo of January 21, 2022, cannot obviate the need for the courts to resolve whether the members of ACIP and the administrator of HRSA were constitutionally appointed. The Court should vacate the district court's judgment to the extent it denied relief on the claims related the appointment of the ACIP members and the HRSA members, and it should remand for further consideration of those claims.

## I. The Text Of 42 U.S.C. § 300gg-13(a)(2)–(4) Gives ACIP And HRSA Alone The Power To Issue The "Recommendations" And "Guidelines" That Bind Private Insurers

The Secretary of Health and Human Services has no authority to impose preventive-care coverage mandates on private insurers. He likewise has no authority to compel or direct ACIP or HRSA to issue recommendations or guidelines. The powers to define the preventive care that private insurers must cover belong to the Task Force, ACIP, and HRSA alone, and the Secretary's powers are limited to defining the "minimum interval" of time before their recommendations or guidelines become binding on private insurers. The text of 42 U.S.C. § 300gg-13 makes this clear:

> **(a) In general**
>
> A group health plan and a health insurance issuer offering group or individual health insurance coverage shall, at a minimum provide coverage for and shall not impose any cost sharing requirements for—
>
> (1) evidence-based items or services that have in effect a rating of "A" or "B" in the current recommendations of the United States Preventive Services Task Force;

(2) immunizations that have in effect a recommendation from the Advisory Committee on Immunization Practices of the Centers for Disease Control and Prevention with respect to the individual involved; and

(3) with respect to infants, children, and adolescents, evidence-informed preventive care and screenings provided for in the comprehensive guidelines supported by the Health Resources and Services Administration.

(4) with respect to women, such additional preventive care and screenings not described in paragraph (1) as provided for in comprehensive guidelines supported by the Health Resources and Services Administration for purposes of this paragraph. . . .

**(b) Interval**

**(1) In general**

The Secretary shall establish a minimum interval between the date on which a recommendation described in subsection (a)(1) or (a)(2) or a guideline under subsection (a)(3) is issued and the plan year with respect to which the requirement described in subsection (a) is effective with respect to the service described in such recommendation or guideline.

**(2) Minimum**

The interval described in paragraph (1) shall not be less than 1 year.

42 U.S.C. § 300gg-13(a)–(b) (footnotes omitted).

The district court thought otherwise and held that the Secretary is "empowered to direct" ACIP's recommendations and HRSA's guidelines. ROA.1794-1795. But the text and structure of 42 U.S.C. § 300gg-13(a)–(b) do not support this view. The statute delineates the relative powers of the Task Force, ACIP, and HRSA—who are tasked with defining the scope of compulsory preventive-care coverage—and the Secretary, who is obligated to

enforce their recommendations and guidelines whether he approves of them or not, and whose powers are limited to establishing and defining a "minimum interval" under subsection (b) before a particular recommendation or guideline is given binding effect.

The defendants, like the district court, insist that 42 U.S.C. § 202 allows the Secretary to direct the decisions of ACIP and HRSA because it says that the "Public Health Service . . . shall be administered by the Assistant Secretary for Health under the supervision and direction of the Secretary." *See* Defs.' Response and Reply Br. at 47 ("Because the Secretary may 'supervis[e] and direct[],' 42 U.S.C. § 202, the CDC and HRSA to issue or reject recommendations, the Secretary could properly ratify recommendations made under that delegated authority"). The Public Health Service includes ACIP, HRSA, and the Task Force,[1] so the defendants and the district court believe that 42 U.S.C. § 202 empowers the Secretary to "supervis[e]" and "direct[]" their actions. And this (in the defendants' and the district court's view) encompasses a Secretarial power to issue "recommendations" or

---

1.  *See* 42 U.S.C. § 299(a) ("There is established within the Public Health Service an agency to be known as the Agency for Healthcare Research and Quality"); 42 U.S.C. § 299b-4(a)(1) ("The Director [of the Agency for Healthcare Research and Quality] shall convene an independent Preventive Services Task Force"); 42 C.F.R. § 93.220 ("*Public Health Service* or *PHS* means the unit within the Department of Health and Human Services that includes . . . the following Operating Divisions: Agency for Healthcare Research and Quality, . . . Centers for Disease Control and Prevention, . . . [and] Health Resources and Services Administration . . .").

"guidelines" on behalf of ACIP, HRSA or the Task Force. *See* Defs.' Response and Reply Br. at 20–25; *id.* at 47.

The problem with this argument, which we have already noted,[2] is that the text of 42 U.S.C. § 202 places only the Assistant Secretary for Health under the Secretary's "supervision" and "direction":

> The Public Health Service in the Department of Health and Human Services shall be administered by the Assistant Secretary for Health under the supervision and direction of the Secretary.

42 U.S.C. § 202. This statute empowers the Secretary to supervise and direct the Assistant Secretary for Health's administration of the Public Health Service. It does not empower the Secretary to directly exercise the powers that are vested in the Public Health Service or its components.

The defendants try to get around this by citing the note to 42 U.S.C. § 202 and HHS's Reorganization Plan No. 3 of 1966, and insisting that the statutory note and the reorganization plan vest "all functions of the Public Health Service" in the Secretary himself. *See* Defs.' Response and Reply Br. at 25 ("As the note to § 202 explains, 'all functions of the Public Health Service' and its officers and employees are vested in the Secretary. 42 U.S.C. § 202 note, at 608 (2018) (citing the Reorganization Plan)."). But the defendants do not quote the relevant language in full. Section 1 of HHS's Reorganization Plan No. 3 of 1966, which appears in the note to 42 U.S.C. § 202, says:

---

2.   *See* Br. of Appellees/Cross-Appellants at 17–18; *id.* at 58.

**Section 1. Transfer of functions.** (a) *Except as otherwise provided in subsection (b) of this section*, there are hereby transferred to the Secretary of Health, Education, and Welfare (hereinafter referred to as the Secretary) all functions of the Public Health Service, of the Surgeon General of the Public Health Service, and of all other officers and employees of the Public Health Service, and all functions of all agencies of or in the Public Health Service.

(b) This section shall not apply to the functions vested by law in any advisory council, board, or committee of or in the Public Health Service which is established by law or is required by law to be established.

42 U.S.C. § 202 note, at 608 (quoting HHS's Reorganization Plan No. 3 of 1966) (emphasis added). Subsection (b) expressly declines to transfer to the Secretary any functions that are:

(1) vested by law;

(2) in "any advisory council, board, or committee of or in the Public Health Service";

(3) that is "established by law or is required by law to be established."

*See id.* ACIP and the U.S. Preventive Services Task Force are both "advisory" entities in the Public Health Service.[3] And each of them is "established

---

3. ROA.1240 ("ACIP . . . is governed by the provisions of the Federal Advisory Committee Act, as amended, 5 U.S.C. App 2."); 42 U.S.C. § 1396s(e) (describing the "Advisory Committee on Immunization Practices" as "an advisory committee"); 42 U.S.C. § 299b-4(a)(1) (instructing the director of the Agency for Healthcare Research and Quality to convene the Preventive Services Task Force "for the purpose of developing *recommendations* for the health care community, and updating previous clinical preventive *recommendations*" (emphasis added));

by law" or "required by law to be established."[4] The functions conferred on those entities by 42 U.S.C. § 300gg-13(a)(1)–(2) have also been "vested by law." So the functions that 42 U.S.C. § 300gg-13(a)(1)–(2) vests in ACIP and the Task Force were not conferred upon the Secretary in the 1966 reorganization plan, and they were expressly carved out from this transfer of powers.

Whether the Secretary can directly exercise the powers of HRSA under the Reorganization Plan No. 3 of 1966 presents a closer question, because HRSA does not qualify as an "advisory" council, board, or committee.[5] But HRSA was not created until 1982,[6] so it did not exist and was not included as a "function of the Public Health Service" when the Reorganization Plan No. 3 of 1966 transferred those "functions" to the Secretary. The Supreme Court has also weighed in on HRSA's powers vis-à-vis the Secretary in *Little Sisters*

---

4.  ROA.1240 ("ACIP was established under Section 222 of the Public Health Service Act (42 U.S.C. §217a), as amended."); 42 U.S.C. § 1396s(e) (requiring the Secretary of HHS to use "the list established . . . by the Advisory Committee on Immunization Practices" when purchasing, delivering, or administering pediatric vaccines); 42 U.S.C. § 299b-4(a)(1) ("The Director shall convene an independent Preventive Services Task Force");

5.  HRSA's powers and responsibilities are described on its website, and they extend beyond the issuance of recommendations and advice. *See* https://www.hrsa.gov (last visited on November 3, 2023).

6.  *See* https://www.federalregister.gov/agencies/health-resources-and-services-administration#:~:text=The%20Health%20Resources%20and%20Services, the%20Health%20and%20Human%20Services (last visited on November 3, 2023) ("The Health Resources and Services Administration (HRSA) was created in 1982 as a subagency of the Department of the Health and Human Services.").

*of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020), and it stated emphatically that HRSA wields the "exclusive discretion" to determine the content of its guidelines under 42 U.S.C. § 300gg-13(a)(4). *See id.* at 2381 ("By its terms, the ACA leaves the Guidelines' content to the *exclusive* discretion of HRSA." (emphasis added)). The Secretary in *Little Sisters* was careful to assert nothing more than a prerogative to "guide HRSA in exercising the discretion afforded to it" in 42 U.S.C. § 300gg-13(a)(4), by "defining the scope of permissible exemptions and accommodations for such guidelines."[7] The Secretary did not claim in *Little Sisters* that he could directly exercise or commandeer the powers that 42 U.S.C. § 300gg-13(a)(4) vested in HRSA, and the Supreme Court's ruling did not recognize or uphold such a power.

The defendants are also wrong to claim that the HRSA Administrator can exercise only "delegations of authority from the Secretary." Defs.' Response and Reply Br. at 48 (quoting 47 Fed. Reg. 38409, 38424 (Aug. 31, 1982) (cleaned up)). The HRSA Administrator's authority under 42 U.S.C. § 300gg-13(a)(3)–(4) was delegated directly to HRSA by Congress, and those statutes specifically vest HRSA—and not the Secretary—with the power to

---

7. *Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act*, 82 Fed. Reg. 47,792, 47,794 (October 13, 2017) ("To guide HRSA in exercising the discretion afforded to it in section 2713(a)(4) of the PHS Act, the Departments have previously promulgated regulations defining the scope of permissible exemptions and accommodations for such guidelines.").

determine the preventive care and screenings that private insurers must cover. *See Little Sisters*, 140 S. Ct. at 2381 ("By its terms, the ACA leaves the Guidelines' content to the exclusive discretion of HRSA."). That delegation of authority comes directly from Congress; the Secretary had no role in vesting or delegating any of these powers. ACIP likewise holds authority under 42 U.S.C. § 300gg-13(a)(2) that is delegated directly from Congress and vested in ACIP, even if the CDC director that oversees ACIP wields authority delegated from Secretary Becerra. *See* Defs.' Response and Reply Br. at 49 ("The CDC Director exercises delegated authority from the Secretary" (citation and internal quotation marks omitted)).

Finally, it is crucial to note that the defendants' interpretation of 42 U.S.C. § 202, if accepted by this Court, will empower the Secretary to impose recommendations or guidelines against the wishes of ACIP, HRSA, or the Task Force, as well as cancel recommendations or guidelines that those agencies have previously issued. The defendants do not say this in their brief, but if 42 U.S.C. § 202 allows the Secretary to "direct" any prerogative held by any component of the Public Health Service, then the Secretary is no less empowered to countermand the decisions of ACIP, HRSA, and the Task Force as he is to "ratify" them. This regime would transfer the ultimate decisionmaking powers in 42 U.S.C. § 300gg-13(a)(1)–(4) from expert bodies to cabinet secretaries and the President, and it would allow a future Secretary (or a future President) who is hostile to the ACA to unilaterally revoke all of the preventive-care coverage mandates by executive decree. That may or may

not be desirable policy, but it is not what the statute says. ACIP, HRSA, and the Task Force get to determine the preventive care that private insurers must cover, and the ACA's preventive-care coverage mandates become binding only when they appear in actual "recommendations" and "guidelines" issued by those entities. *See* 42 U.S.C. § 300gg-13(a)(1)–(4). The Secretary's job is to implement their decisions while establishing and defining the "minimum interval" under 42 U.S.C. § 300gg-13(b).[8]

So the Secretary has no authority to impose or direct the imposition of preventive-care coverage mandates—or the "recommendations" or "guidelines" that trigger those coverage mandates—and his ratification document cannot obviate the need to resolve the plaintiffs' constitutional challenge to the appointment of the ACIP members and the HRSA administrator. The Court should remand to the district court with instructions to rule on whether these individuals were constitutionally appointed.[9]

---

8.   42 U.S.C. § 1396s(e) is also incompatible with the idea that the Secretary can direct or countermand the recommendations of ACIP, as this statute provides that the Secretary "shall use . . . the list established . . . by the Advisory Committee on Immunization Practices" when purchasing, delivering, or administering pediatric vaccines. Here, too, the Secretary must obey and implement ACIP's recommendations and is powerless to modify or override them.

9.   The defendants note that our previous brief did not address whether the members of ACIP and the HRSA administrator were constitutionally appointed under Article II. *See* Defs.' Response and Reply Br. at 47–48. But that was because the district court did not rule on those questions. ROA.1796 ("[T]he Court need not address the Appointments Clause issues regarding those two agencies [ACIP and HRSA]."); ROA.1793-

## II. Even If The Secretary Holds The Power To Ratify ACIP's Recommendations And HRSA's Guidelines, The District Court Still Needed To Resolve Whether The ACIP Members And The HRSA Administrator Were Constitutionally Appointed

There is a second and independent problem with the district court's reliance on the Secretary's ratification document. Even if 42 U.S.C. § 202 or the the Reorganization Plan No. 3 of 1966 empowered the Secretary to "ratify" or directly issue the recommendations or guidelines of ACIP and HRSA, it was *still* necessary for the district court to resolve whether the ACIP members and the HRSA administrator were constitutionally appointed because all of these individuals continue to exercise "significant authority pursuant to the laws of the United States."

According to the defendants (and the district court), the members of ACIP and the administrator of HRSA remain empowered to determine the preventive care that private insurers must cover, but their decisions are defeasible by the Secretary. That *still* constitutes "significant authority pursuant to the laws of the United States" because ACIP and HRSA can impose preventive-care mandates on private insurers—even though their decisions

---

1797. The Court should remand this issue rather than accept the defendants' invitation to resolve it without any ruling from the district court and with nothing more than a single conclusory sentence in the defendants' brief. *Compare* Defs.' Response and Reply Br. at 48 ("[T]hose individuals properly serve as inferior officers subject to the Secretary's plenary supervision and at-will removal."), *with Cutter* v. *Wilkinson*, 544 U.S. 709, 718 n.7 (2005) ("[W]e are a court of review, not of first view").

can later be reviewed or reversed by a cabinet secretary. *See Lucia v. SEC*, 138 S. Ct. 2044, 2049 (2018) (administrative-law judges qualify as "officers of the United States" even when their decisions are subject to review). So the ACIP members and the HRSA administrator are "officers of the United States" coming or going, and district court needed to resolve whether they had been constitutionally appointed.[10]

The defendants think it is patently obvious that the ACIP members and the HRSA members were properly appointed as "inferior officers"—so long as one accepts the notion that their powers under 42 U.S.C. § 300gg-13(a)(2)–(4) are subject to the Secretary's plenary direction and control. *See* Defs.' Response and Reply Br. at 48 ("It is thus immaterial that those officers exercise 'significant authority pursuant to the laws of the United States,' because those individuals properly serve as inferior officers subject to the Sec-

---

10. The ACIP members and the HRSA administrator would hold even more "authority pursuant to the laws of the United States" if the Secretary were empowered merely to "ratify" and not countermand or revoke their recommendations or guidelines. Under that regime, ACIP and HRSA would serve a gatekeeping role in determining the compulsory preventive-care coverage mandates under 42 U.S.C. § 300gg-13(a)(2)–(4), as their recommendations and guidelines would be a necessary (though perhaps not sufficient) condition for imposing a coverage mandate under the ACA. That regime would give the ACIP members and the HRSA administrator even more powers, because no preventive-care coverage mandate could be imposed under 42 U.S.C. § 300gg-13(a)(2)–(4) unless ACIP or HRSA signs off on it. It might even push them into principal-officer status because no one in the executive branch would be empowered to review or reverse their decisions *not* to impose a new preventive-care coverage mandate under 42 U.S.C. § 300gg-13(a)(2)–(4).

retary's plenary supervision and at-will removal."). The defendants rely on the brute fact that the ACIP members and the HRSA administrators were selected by the Secretary—who qualifies as a "Head of Department" under Article II—and they seem to think that satisfies Article II's requirements for the appointment of inferior officers.[11]

But the Appointments Clause requires even inferior officers to be appointed by the President with the Senate's advice and consent, unless and until "Congress" enacts a "law" that "vests" the appointment power over that officer in the President alone, in the Courts of Law, or in the Heads of Departments:

> [The President] shall have Power, by and with the Advice and Consent of the Senate, to . . . appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: *but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper*, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II § 2 (emphasis added). The defendants' brief does not identify any congressional enactment that departs from this constitutional default rule by "vesting" the Secretary with appointment powers over the ACIP members or the HRSA administrator. Their briefing in the district

---

11. ROA.1243 ("Members [of ACIP], including the Chair, shall be selected by the Secretary and shall be invited to serve for overlapping terms of up to four years" (quoting from the Charter of the Advisory Committee On Immunization Practices)).

court cited the ACIP charter, which says that ACIP members "shall be selected by the Secretary and shall be invited to serve for overlapping terms of up to four years." ROA.1243. But the ACIP charter is not a "law" enacted by "Congress." The defendants also argued in the district court that the Reorganization Plan No. 3 of 1966 "vests" the Secretary with appointment powers over ACIP and HRSA,[12] but that statute says only that:

> The Secretary may from time to time make such provisions as he shall deem appropriate authorizing the performance of any of the functions transferred to him by the provisions of this reorganization plan by any officer, employee, or agency of the Public Health Service or of the Department of Health, Education, and Welfare.

5 U.S.C. § App. 1 Reorg. Plan 3 1966. This statutory provision merely empowers the Secretary to authorize others to perform functions "transferred to him." It says nothing about how those officers, employees, or agencies that perform those functions should be appointed. And it nowhere purports to modify the default rule of Presidential appointment with the Senate's advice and consent—nor does it authorize the Secretary to modify that constitutional default rule on behalf of Congress. Finally, even if the statute *did* delegate this type of authority to the Secretary, the defendants have not pointed to any "provision" made by the Secretary that purports to vest the appointment of the ACIP members or the HRSA administrator in the Secretary alone.

---

12.  ROA.1061.

The district court never ruled on whether the ACIP members and the HRSA administrator had been properly appointed as inferior officers because it thought that the Secretary's ratification memo made it unnecessary to do so. ROA.1796 ("[T]he Court need not address the Appointments Clause issues regarding those two agencies [ACIP and HRSA]."). The Court should remand for the district court to determine this matter in the first instance. The issue of whether the ACIP members and the HRSA administrator were properly appointed as inferior officers is far more nuanced than the defendants' brief lets on. And it is inappropriate for an appellate court to resolve this without a district-court ruling[13] and when the defendants devote only a single conclusory sentence to this issue in their appellate brief. *See* Defs.' Response and Reply Br. at 48 ("[T]hose individuals properly serve as inferior officers subject to the Secretary's plenary supervision and at-will removal.").

## III. The Secretary's Ratification Memo Cannot Have Retroactive Effect Under The Terms Of The APA

There is yet another problem with the district court's (and the defendants') reliance on the Secretary's ratification memo: The Administrative Procedure Act forbids agency rules to have retroactive effect. *See* 5 U.S.C. § 551(4) (defining a "rule" as "the whole or a part of an agency statement of general or particular applicability *and future effect* designed to implement, interpret, or prescribe law or policy or describing the organization, procedure,

---

13.  *See Cutter* v. *Wilkinson*, 544 U.S. 709, 718 n.7 (2005) ("[W]e are a court of review, not of first view").

or practice requirements of an agency" (emphasis added)); *Celtronix Telemetry, Inc. v. FCC*, 272 F.3d 585, 588 (D.C. Cir. 2001) ("[A] retroactive rule forbidden by the APA is one which "alter[s] the *past* legal consequences of past actions." (quoting *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 219 (1988) (Scalia, J., concurring)). And even apart from the APA, a rule cannot even be construed to have retroactive effect unless it clearly and explicitly says so. *See Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."). Nothing in Secretary Becerra's ratification document even claims to have retroactive effect. It merely announces that the Secretary "affirms" and "ratifies" the guidelines and recommendations issued by ACIP, HRSA, and the Task Force, without purporting to back in time by adding the Secretary's approbation to those guidelines and recommendations at the moment they were issued. ROA.1094 ("I ratify the below listed guidelines and recommendations"); *id.* ("I hereby affirm and ratify the above recommendations and guidelines."). And even if this ratification document contained a clear and explicit statement of retroactivity, a court *still* could not give it retroactive effect because an agency "rule" cannot operate retroactively under section 551(4) of the APA.

The defendants do not (and cannot) deny that: (1) The ratification document of January 21, 2022, is a "rule" under the APA; (2) Section 551(4) of the APA forbids retroactive rulemaking; (3) The ratification document lacks

a clear and explicit statement of retroactive effect; or (4) *Bowen* requires a clear and explicit statement of retroactivity before an agency rule can be construed to operate retroactively. So the defendants cannot escape the conclusion that the Secretary's ratification document can provide legal cover only for agency actions taken on or after January 21, 2022, that implement the preventive-care coverage mandates triggered by a recommendation or guideline described in 42 U.S.C. § 300gg-13(a)(1)-(4). It cannot shield agency actions that were taken before that date.

The defendants cite only two authorities to counteract this. One of them is a treatise from 1890,[14] which long predates the enactment of the APA and has nothing to say on whether an agency official can use rulemaking to retroactively ratify an act that was invalid at the time it was taken. The other is a Third Circuit ruling that allowed the National Labor Relations Board to issue a "*nunc pro tunc*" (*i.e.* retroactive) ratification of previous actions taken by the Board at a time when it lacked the statutorily required quorum. *See* Defs.' Response and Reply Br. at 50 (citing *Advanced Disposal Services East, Inc. v. NLRB*, 820 F.3d 592, 602, 606 (3d Cir. 2016)). But *Advanced Disposal* is no help to the defendants because the ratification document in that case explicitly stated that its ratification would apply "*nunc pro tunc*," thereby providing the clear statement of retroactivity required by *Bowen*. *See Advanced Disposal*

---

14. *See* Defs.' Response and Reply Br. at 49–50 (quoting 1 Floyd R. Mechem, *Treatise on the Law of Public Offices and Officers* § 557, at 361 (1890)).

*Services East, Inc. v. NLRB*, 820 F.3d 592, 602 (3d Cir. 2016) ("On July 18, 2014, all five members of a *properly* constituted Board 'confirm[ed], adopt[ed], and ratif[ied] *nunc pro tunc* all administrative, personnel, and procurement matters approved by the Board or taken by or on behalf of the Board from January 4, 2012, to August 5, 2013, inclusive.'"); *see also* Minute of National Labor Relations Board Action, July 18, 2014, available at https://www.nlrb.gov/sites/default/files/attachments/pages/node-212/7-18-14.pdf ("We now confirm, adopt, and ratify *nunc pro tunc* all administrative, personnel, and procurement matters approved by the Board or taken by or on behalf of the Board from January 4, 2012, to August 5, 2013, inclusive."). In addition, the NLRB sets its policies almost exclusively through adjudication rather than rulemaking,[15] and the litigants in *Advanced Disposal* did not argue that the NLRB's "*nunc pro tunc*" ratification document qualified as an agency "rule" or that it could not operate retroactively.[16] Nor did the Court in *Advanced Disposal* consider or weigh in on this question. *See Plaut v. Spend-thrift Farm, Inc.*, 514 U.S. 211, 232 n.6 (1995) ("[T]he unexplained silences of

---

15.  *See* Emily Baver, *Setting Labor Policy Prospectively: Rulemaking, Adjudicating, and What the NLRB Can Learn from the NMB's Representation Election Procedure Rule*, 63 Admin. L. Rev. 853, 859 (2011) ("[T]he NLRB is unique among major federal agencies in making its policy almost exclusively through adjudication rather than rulemaking.").

16.  *See* Opening Br. of Petitioner/Cross-Respondent Advanced Disposal Servicecs East Inc., Nos. 15-2229 & 15-2321 (3rd Cir.) (no argument that the NLRB's ratification document of July 18, 2014, qualified as a "rule" under 5 U.S.C. § 551(4) or that it could not operate retroactively consistent with section 551(4)).

our decisions lack precedential weight."); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) ("The [issue] was not there raised in briefs or argument nor discussed in the opinion of the Court. Therefore, the case is not a binding precedent on this point."); *Hall v. Louisiana*, 884 F.3d 546, 550 (5th Cir. 2018) ("'[C]ases cannot be read as foreclosing an argument [with which] they never dealt.'" (quoting *Waters v. Churchill*, 511 U.S. 661, 678 (1994) (plurality opinion)); *see also Legal Services Corp. v. Velazquez*, 531 U.S. 533, 557 (2001) (Scalia, J., dissenting) ("Judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed.").

So even if this Court believes that the Secretary is authorized to ratify or directly exercise the prerogatives of ACIP, HRSA or the Task Force, it should *still* reject the district court's decision to allow the ratification memo to categorically immunize the defendants' agency actions from judicial attack to the extent they implement the preventive-care coverage mandates triggered by ACIP's recommendations or HRSA's guidelines. And it should remand for the district court to determine whether agency actions taken before January 21, 2022, should be vacated if they attempted to implement guidelines or recommendations issued by ACIP members and HRSA administrators who did not receive a constitutionally valid appointment.

## IV. The Secretary's Ratification Memo Failed To Go Through Notice-And-Comment Procedures And Is Arbitrary And Capricious

Finally, the Secretary's ratification memo cannot salvage the guidelines or recommendations of ACIP and HRSA because it never went through notice-and-comment rulemaking, as required by 5 U.S.C. § 553. It is also arbitrary and capricious. *See* Br. of Appellees/Cross-Appellants at 25 ("The defendants must also show how the Secretary's ratification memo can survive arbitrary-and-capricious review when it never explains its reasoning and treats the previous decisions as a fait accompli." (citing *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891, 1912 (2020), and *Butte County v. Hogen*, 613 F.3d 190, 195 (D.C. Cir. 2010)).[17]

The defendants do not argue that the Secretary's ratification memo fits within any statutory exception to notice-and-comment rulemaking. *See* Defs.' Response and Reply Br. at 26–27. Instead, they claim that the plaintiffs cannot raise this issue on appeal because their original complaint challenged the recommendations and guidelines of ACIP, HRSA, and the Task Force for failing to go through notice-and-comment procedures, yet the plaintiffs dropped this claim when they filed their amended complaint. *See id.* at 27; *see also* ROA.57-58 (original complaint asserting notice-and-comment claim against the recommendations and guidelines); ROA.219-245 (amended complaint excluding this claim). That is a non-sequitur. The plaintiffs' appeal is

---

17. The defendants do not address the plaintiffs' arbitrary-and-capricious objections to the ratification memo in their appellate brief.

*not* arguing that the recommendations or guidelines issued by ACIP, HRSA, or the Task Force should be vacated for failing to use notice-and-comment procedures. It is targeting the Secretary's ratification memo of January 21, 2022—which did not exist when the plaintiffs filed their original complaint on March 29, 2020, or their amended complaint on July 20, 2020. So of the course the pleadings never assert the notice-and-comment objections that the plaintiffs are now pressing against the Secretary's ratification memo. And the plaintiffs' decision to abandon their notice-and-comment attack against the recommendations and guidelines issued by ACIP, HRSA, and the Task Force does not foreclose them from launching a similar attack against an entirely different document that did not exist at the time the pleadings were filed.

The defendants also fault the plaintiffs for not raising their notice-and-comment objections to the Secretary's ratification memo in their summary-judgment reply brief,[18] after the defendants first raised the ratification memo as a defense to the plaintiffs' Appointments Clause claims.[19] *See* Defs.' Response and Reply Br. at 27–28. But the Fifth Circuit will not hesitate to consider "pure questions of law" for the first time on appeal when the refusal to

---

18.  ROA.1626-1674 (plaintiffs' summary-judgment response and reply).
19.  ROA.1052. The defendants also criticize the plaintiffs for omitting this argument from their initial summary judgment brief, *see* Defs.' Response and Reply Br. at 27, but that document was filed with the district court on November 15, 2021—more than two months before Secretary Becerra issued his ratification document on January 21, 2022. ROA.533-576.

consider those questions will lead to an "incorrect result." *See Murray v. Anthony J. Bertucci Constr. Co.*, 958 F.2d 127, 128 (5th Cir. 1992) ("'[W]hen a question is one of pure law, and when refusal to consider it will lead to an incorrect result or a miscarriage of justice, appellate courts are inclined to consider questions first raised on appeal.'" (citation omitted)); *Creel v. Johnson*, 162 F.3d 385, 390 n.3 (5th Cir. 1998) ("Creel contends we should not review this issue because the State did not argue it to the district court. We resolve the issue because uncertainty exists with respect to a pure question of law." (citing *Singleton v. Wulff*, 428 U.S. 106, 121 (1976)).

The Supreme Court of the United States likewise permits litigants to advance new arguments for the first time on appeal so long as they preserved their underlying "claim" for relief in the lower courts. *See Yee v. Escondido*, 503 U.S. 519, 534 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."); *Citizens United v. FEC*, 558 U.S. 310, 330–31 (2010) (same); *Kamen v. Kemper Financial Services*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."); *Jennings v. Rodriguez*, 138 S. Ct. 830, 844 (2018) (considering, though ultimately rejecting on the merits, an argument that was never raised below, rather than deeming it forfeited); *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2545–46 (2019) (Sotomayor, J., dissenting) (protesting the

majority's decision to resolve the case on "exigent circumstances," a ground that Wisconsin not only abandoned but affirmatively waived in the courts below).[20]

Whether the Secretary's ratification qualifies as a "rule" under section 551(4) of the APA—and whether it was required to go through notice-and-comment procedures under 5 U.S.C. § 553—are pure questions of law that this Court can resolve consistent with *Murray* and *Creel*. And the plaintiffs' arguments on these issues do not represent new "claims," but new arguments in support of the claim that they have consistently asserted throughout this litigation: That the preventive-care coverage mandates and the agency actions taken to implement them should be declared unconstitutional because the individuals who issued the "recommendations" and "guidelines" described in 42 U.S.C. § 300gg-13(a)(1)–(4) were not appointed in a manner consistent with Article II. *See Yee*, 503 U.S. at 534; *Citizens United*, 558 U.S. at 330–31; *Kamen*, 500 U.S. at 99. There is no reason to bar further consideration of this argument because it went unmentioned in the summary-judgment reply brief. *See Henslee v. Union Planters Nat'l Bank & Trust Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting) ("Wisdom too often never comes, and so one ought not to reject it merely because it comes

---

20. *See also Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2307 (2016) (allowing federal courts to issue the relief they think appropriate, regardless of whether a party requested or argued for it in the district court), *overruled on other grounds by Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022).

late."). Finally, the Court can (and should) remand this issue to the district court if it concludes that the ratification memo was insufficient to defeat the plaintiffs' Appointments Clause challenges to the guidelines and recommendations of ACIP and HRSA. *See Cutter*, 544 U.S. at 718 n.7 ("[W]e are a court of review, not of first view").

## CONCLUSION

The district court's judgment should be vacated to the extent it rejected the Appointments Clause challenges to 42 U.S.C. § 300gg-13(a)(2)–(4), and the case remanded for further proceedings on those claims. The judgment should otherwise be affirmed.

Respectfully submitted.

Gene P. Hamilton
Vice-President and General Counsel
America First Legal Foundation
611 Pennsylvania Ave SE #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

Dated: November 3, 2023

/s/ Jonathan F. Mitchell
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Appellees/Cross-Appellants*

## CERTIFICATE OF SERVICE

I certify that on November 3, 2023, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Fifth Circuit and served through CM/ECF upon:

Michael S. Raab
Alisa B. Klein
Daniel Aguilar
Attorneys, Appellate Staff
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-5432
michael.raab@usdoj.gov
alisa.klein@usdoj.gov
daniel.j.aguilar@usdoj.gov

*Counsel for Appellants/Cross-Appellees*

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Appellees/Cross-Appellants*

# CERTIFICATE OF COMPLIANCE
### with type-volume limitation, typeface requirements,
### and type-style requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 5,946 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Dated: November 3, 2023    *Counsel for Appellees/Cross-Appellants*

## CERTIFICATE OF ELECTRONIC COMPLIANCE

Counsel also certifies that on November 3, 2023, this brief was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, through the court's CM/ECF document filing system, https://ecf.ca5.uscourts.gov/

Counsel further certifies that: (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of VirusTotal and is free of viruses.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Appellees/Cross-Appellants*